27.8089

---

**MARTIN SCOTT,**

   **Plaintiff,**

**vs.**

**METRO GOV'T OF NASHVILLE AND**
**DAVIDSON COUNTY;, TRACKING**
**SOLUTIONS, INC.; MALLORY**
**WITHERS, in her individual capacity;**
**BRIAN CAVALIERE, in his individual**
**capacity; and TYLER LEWIS, in his**
**individual capacity,**

   **Defendants.**

**NO. 3:25-CV-01393**

---

### DEFENDANT TRACKING SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983) AND SUPPLEMENTAL STATE LAW CLAIMS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

---

Comes now this Defendant, Tracking Solutions, Inc. (hereinafter "this Defendant"), by and through counsel of record, and files this Motion to Dismiss Plaintiff's "Complaint for Violation of Civil Rights (42 U.S.C. §1983) and Supplemental State Law Claims" (ECF Doc. No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support, this Defendant states the following:

## SUMMARY OF ARGRUMENT

This Defendant is a private corporation. Plaintiff has improperly asserted federal claims against this Defendant pursuant to 42 U.S.C. § 1983 in **Count IV – Unreasonable Search and Seizure (42 U.S.C. §1983 – Fourth Amendment)** and **Count VI – Procedural Due Process and Right to a Hearing (42 U.S.C. §1983 – Fourth, Sixth and Fourteenth Amendments)** of the Complaint.[1] Plaintiff has additionally asserted a single state law claim against this Defendant in **Count XII - NEGLIGENCE AND NEGLIGENCE PER SE (Tennessee Common Law – Supplemental Jurisdiction 28 U.S.C. §1367)**.

However, Plaintiff has failed to state a claim in the Complaint upon which relief may be granted against this Defendant under §1983 in either Count IV or Count VI. "Section 1983 allows a plaintiff to seek redress from state actors for 'the deprivation of any rights, privileges, or immunities secured by the Constitution.'"[2] "To state a claim under § 1983, a plaintiff must allege (1) a deprivation of rights secured by the 'Constitution and laws' of the United States and (2) that a defendant caused harm while acting under color of state law."[3] Plaintiff's Complaint does not allege sufficient specific allegations against this Defendant to support a cause of action against this Defendant as a "state actor" pursuant to 42 U.S.C. § 1983 in either Count IV or Count VI. Plaintiff relies in the Complaint on two rulings (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937-39 (1982) and *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001)) in support of a finding that this Defendant was a "state actor". However, a review of those rulings, other 6th Circuit rulings and the allegations against this Defendant in the Complaint, support a finding that this

---

[1] *See* ECF Doc. No. 1, Complaint, Count IV and Count VI.
[2] *Willhite v. Myrick Law Firm*, No. 3:23-CV-95-TAV-JEM, 2023 WL 11915399, at *2 (E.D. Tenn Mar. 31, 2023) (*citing* 42 U.S.C. § 1983).
[3] Id. (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)).

Defendant was not a state actor and supports dismissal of both Couth IV and VI as to this Defendant pursuant to 12(b)(6) of the Federal Rules of Civil Procedure.[4]

Further, the only remaining cause of action against this Defendant is **Count XII - NEGLIGENCE AND NEGLIGENCE PER SE (Tennessee Common Law – Supplemental Jurisdiction 28 U.S.C. §1367)**, which is a state law claim.[5] However, in the absence of any remaining federal question claims against this Defendant to invoke §1331 subject-matter jurisdiction, the remaining state law cause of action against this Defendant -- **Count XII - NEGLIGENCE AND NEGLIGENCE PER SE (Tennessee Common Law – Supplemental Jurisdiction 28 U.S.C. §1367)** -- should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).[6]

## MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss a plaintiff's complaint "for failure to state a claim upon which relief can be granted."[7] When considering a 12(b)(6) motion to dismiss, while pleadings are to be liberally construed, essential elements not pled in the complaint cannot be assumed or supplied by the court.[8]

---

[4] *See Ashcroft*, 129 S. Ct. at 1949 (2009) ("A complaint must contain sufficient facts 'to "state a claim to relief that is plausible on its face"' to survive a motion to dismiss.")

[5] *See* ECF Doc. No. 1, Complaint, Count XII.

[6] *See Anders v. Purifoy*, No. 16-cv-2321-JDT-tmp, 2016 WL 1147290, at *2 (W.D. Tenn. May 18, 2016) (holding that plaintiff failed to state a Section 1983 claim against MALS because plaintiff failed to allege that MALS and other defendants were state actors or acted under color of state law); *West v. Atkins,* 487 U.S. 42, 48 (1988) ("In order for a private party's conduct to be under color of state law, it must be fairly attributable to the state."); *Adams v. Vandemark*, 85 F.2d 312, 315-16 (6th Cir. 1988) (holding that state regulation and substantial public funding of the activities of a private entity does not make the private entities actions attributable to the state for purposes of a Section 1983 claim).

[7] Federal Rule of Civil Procedure 12(b)(6).

[8] *Harris v. White*, 479 F. Supp. 996 (D.C. Mass. 1979).

3

Separately, Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a complaint when the court lacks subject-matter jurisdiction. "Subject matter jurisdiction concerns the court's power to hear a case, and thus, before reaching the merits of a case, a court should first determine whether jurisdiction exists."[9] "As courts of limited jurisdiction, federal courts may exercise only those powers authorized by the Constitution and statute."[10] "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."[11]

Federal Courts may exercise supplemental jurisdiction over state-law claims if there are related federal law claims. However, once a Federal Court has dismissed a plaintiff's federal law claims, that Court should not address the remaining state law claims."[12] A District Court should decline to exercise supplemental jurisdiction over the remaining claims which sound in state law.[13]

### FACTUAL ALLEGATIONS IN COMPLAINT AGAINST THIS DEFENDANT

In the introduction to the Complaint, Plaintiff indicates that Plaintiff is bringing this action pursuant to 42 U.S.C. §1983 "to redress violations of his rights under the First, Fourth and Fourteenth Amendments to the United States Constitution", as well as asserting "supplemental

---

[9] *Stalley ex rel. United States v. Methodist Healthcare*, No. 06-2605 Ml/A, 2006 WL 8452338, at *2 (W.D. Tenn. Dec. 22, 2006) (*citing Steel Co. v. Citizens for a Better Env't, Case*, 523 U.S. 83, 94 (1998)).

[10] *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001) (citation omitted).

[11] *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (*citing Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)).

[12] *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).

[13] *See Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

4

state law claims under Tennessee law."[14] The Co-Defendants in the Complaint include the "Metropolitan Government of Nashville and Davidson County ("Metro") as well as law enforcement officers of the Metropolitan Nashville Police Department.[15] Plaintiff correctly identifies this Defendant as a private corporation.[16]

In the Complaint, Plaintiff specifically alleges that "Plaintiff became the target of a series of escalating criminal accusations, arrests and pre-trial restrictions by Co-Defendants…"[17] Plaintiff alleges that on January 29, 2025, after a long series of factual allegations not involving this Defendant, Plaintiff was arrested on multiple charges and that a Davidson County General Sessions Commissioner imposed GPS monitoring as a bail condition for his release.[18] Plaintiff then makes the following allegations involving this Defendant's actions:

> 27.  To obtain release, plaintiff was required to secure a GPS device from one of the two vendors operating inside the Davidson County booking area – Tracking Solutions or Nationwide. Officers told him he could not be released until the vendor physically attached a monitoring device to his person. Because Tracking Solutions was the first available, plaintiff was compelled to proceed with that company. Before attaching the device, Tracking Solutions required him to sign his "Monitoring Agreement and Release" which imposed undefined exclusion zones, sweeping liability waivers, and other restrictions never ordered by the court. In practice, execution of this private contract – and exceptions of its unauthorized terms – became a mandatory condition of regaining his liberty. Tracking Solutions had no written agreement with Metro as required by Tenn. Code Ann. §40-11-152(k), meaning Metro had

---

[14] *See* E.C.F. Doc. No. 1, "Complaint for Violation of Civil Rights (42 U.S.C. §1983) and Supplemental State Law Claims" ("hereinafter "Complaint"), p. 1, 2.
[15] Id., p. 2, 3.
[16] Id. ¶5.
[17] Id. ¶13.
[18] Id. ¶26.

5

delegated liberty restricting authority to an unapproved and unauthorized private vendor.[19]

Additionally, Plaintiff made additional allegations against this Defendant beginning in Paragraph 81 where Plaintiff alleges that this Defendant took the following actions:

A. administered the GPS device from inside the Davidson County booking area;

B. required plaintiff to sign a coercive "Monitoring Agreement and Release" containing terms never ordered by a judge;

C. unilaterally, imposed, undefined "exclusion zones," movement restrictions and reporting obligations;

D. monitored plaintiffs location data on Metro's behalf; and

E. reported alleged violations to law-enforcement as the basis for arrest or detention.[20]

*****

108. Tracking Solutions is equally liable because it acted under color of state law and directly participated in the unconstitutional deprivation of liberty. Plaintiff could not be released until it monitoring vendor attached a GPS device to his person. Tracking Solutions – operating inside the jail and functioning as Metro's de facto pretrial-supervision arm – required plaintiff to sign its "Monitoring Agreement and Release," which: (1) imposed exclusion zones never ordered by any judge, (2) added new liberty restrictions without judicial authorization, (3) required indemnification and waivers of rights as a condition of release, (4) threatened enforcement, detention, and violation reports based on those unauthorized terms, and (5) operated without the written municipal contract required by § 40-11-152(k).[21]

*****

206. Despite this, before permitting Plaintiff to obtain the monitoring device required for release from custody, Tracking Solutions compelled him to sign a "GPS Monitoring Agreement and Release" that:

---

[19] Id. ¶27.
[20] See ECF Doc. No. 1, Complaint, §81.
[21] Id., §108.

6

A. imposed undisclosed and undefined "exclusion zones" that were not contained in the magistrate's order and were never communicated to Plaintiff in any official capacity;

B. shifted all operational, legal, and financial liability to Plaintiff, including indemnification for Tracking Solutions' own mistakes, malfunctions, or errors;

C. contained sweeping release, waiver and covenant-not-to-sue provisions extending to Plaintiff's family members, heirs, and representatives;

D. Shortened the statute of limitations for any claim against the company to one year; and

E. Conditioned Plaintiff's release from custody on execution of this adhesion contract, despite the lack of any statutory or judicial authorization for such terms.[22]

*****

211. Tracking Solutions did not create the underlying monitoring requirement, but it independently caused an exacerbated, plaintiffs injuries by:

A. Implementing monitoring services without statutory authorization;

B. Imposing exclusion zones that were never ordered by a court;

C. Requiring Plaintiff to sign an unlawful, Release and Indemnification Agreement as a condition of liberty;

D. Operating as Metro's de facto pretrial-supervision arm, despite the lack of a required governmental contract; and

E. Reinforcing the appearance that Plaintiff was subject to heightened supervision or dangerousness designations unsupported by any judicial finding.[23]

---

[22] Id., §206.
[23] Id., §211.

7

Further, Plaintiff alleges that this Defendant unilaterally required plaintiff without court authorization "to sign a 'GPS Monitoring Agreement and Release'" that contained conditions not included in any judicial order.[24] Plaintiff alleges that this Defendant unilaterally "imposed restraints and obligations beyond those ordered by any judicial officer" on Plaintiff.[25] Further, Plaintiff alleges that this Defendant "independently caused and exacerbated Plaintiff's injuries" by implementing monitoring services without governmental authorization and imposing "exclusion zones" not ordered by any court or judicial officer.[26]

## §1983 CAUSES OF ACTION IN COMPLAINT AGAINST THIS DEFENDANT

While the Complaint contains 12 separate Counts, only 3 Counts are alleged against this Defendant, specifically **Count IV – Unreasonable Search and Seizure (42 U.S.C. §1983 – Fourth Amendment), Count VI – Procedural Due Process and Right to a Hearing (42 U.S.C. §1983 – Fourth, Sixth and Fourteenth Amendments),** and a third state law claim, **Count XII – Negligence and Negligence Per Se (Tennessee Common Law – Supplemental Jurisdiction, 28 U.S.C. §1367)**.[27]

The first §1983 cause of action against this Defendant is **Count IV – Unreasonable Search and Seizure (42 U.S.C. §1983 – Fourth Amendment)**.[28] In the heading for Count IV, Plaintiff identifies this Defendant as "**TRACKING SOLUTIONS, INC. (state actor under color of law)**".[29] Plaintiff alleges that Count IV "challenges the warrant list and the unsupported

---

[24] Id. ¶205, 206.
[25] Id. ¶208, 209.
[26] Id. ¶211.
[27] Id. Count IV, Count VI and Count XII.
[28] Id. Count IV.
[29] Id.

8

imposition of continuous 24/7 GPS monitoring, physical search under the Fourth Amendment, imposed without individualized findings, probable cause, or statutory compliance enforced jointly by Metro and Tracking Solutions."[30]  Within Count IV, as cited above, Plaintiff provides the basis for asserting that this Defendant was a "state actor under color of law" with regard to the alleged unreasonable search and seizure:

<u>TRACKING SOLUTIONS ROLE AS A STATE ACTOR</u>

81.  Tracking Solutions acted under color of state law within the meaning of *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937-39 (1982). It:

A.  Administer the GPS device from inside the Davidson County booking area;

B.  Require plaintiff to sign a coercive "monitoring agreement and release" containing terms never ordered by a judge;

C.  Unilaterally impose undefined "exclusion zones", movement restrictions, and reporting obligations;

D.  Monitored plaintiff's location data on Metro's behalf; and

E.  Reported alleged violations to law enforcement as the basis for arrest or detention.[31]

The second §1983 cause of action against this Defendant is **"COUNT VI – PROCEDURAL DUE PROCESS AND RIGHT TO A HEARING (42 U.S.C. §1983 – Fourth, Sixth and Fourteenth Amendments)"**.[32]  Again, Plaintiff identifies this Defendant in Count VI as **"TRACKING SOLUTIONS, INC. (state actor under color of law)"**.[33]  Plaintiff alleges that

---

[30] <u>Id</u>. ¶73.
[31] <u>Id</u>. ¶81.
[32] <u>Id</u>. Count VI.
[33] <u>Id</u>.

9

Count VI "challenges Metro's and Tracking Solutions' joint deprivation of Plaintiff's Fourteenth Amendment right to notice and immunity for opportunity to be heard before the government imposed substantial liberty restraints, including GPS monitoring, via a process devoid of hearings, findings, and statutory safeguards."[34] As to the basis for asserting that this Defendant was acting as a state actor under the color of law with regard to Count VI, Plaintiff alleges the following:

> 109. By creating and enforcing the actual terms governing plaintiff's physical liberty – and by conditioning freedom on acceptance of a coercive, extra-judicial contract – Tracking Solutions jointly participated in deprivation of liberty without due process. This makes it a state actor under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937-39 (1982), and *Brentwood Academy v. TSSAA*, 531 U.S. 288, 296-96 (2001).[35]

## LAW AND ARGUMENT

1) **The §1983 claims against this Defendant in both Count IV and Count VI should be dismissed because this Defendant, a private corporation, was not a state actor.**

The Sixth Circuit has stressed that private actors may be liable under 42 U.S.C. §1983 only in "rare circumstances".[36] As legal support for asserting §1983 liability against a private corporation in Count IV, Plaintiff relies solely upon the *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937-39 (1982).[37] As legal support for asserting §1983 liability against a private corporation in Count VI, Plaintiff relies on *Lugar v. Edmonson Oil* and *Brentwood Acad. v. Tenn. Secondary*

---

[34] Id. ¶102.
[35] Id. ¶109.
[36] *Leta v. TriHealth, Inc.*, 2024 U.S. App. Lexis 1548 at *7 (Sixth Cir. January 22, 2024). A western district court likewise ruled that a private person may be considered to have acted under color of state law pursuant to §1983 only "under limited circumstances"…*Stark v. City of Memphis*, 2020 U.S. District Lexis 250141 at *33 (W.D. Tenn. February 18, 2020).
[37] *See* ECF Doc. No, 1, Complaint, §81.

10

*Sch. Ath. Ass'n*, 531 U.S. 288 (2001).[38] Plaintiff's reliance upon *Lugar* and/or *Brentwood Academy* as a basis for asserting §1983 liability on this Defendant is misplaced.

The Sixth Circuit has described the facts in *Lugar* as follows:

> *Lugar* involved the state of Virginia's pre-judgment attachment proceedings. The plaintiff was a truck stop operator who fell behind on his payments to his supplier. State law allowed the supplier to sequester the plaintiff's property through an *ex parte* petition, prior to a hearing. Upon the supplier's petition, the clerk of court issued a writ of attachment and the county sheriff executed it. The plaintiff sued the supplier, but not the state, under §1983, alleging the state law was "procedurally defective under the Fourteenth Amendment." The court agreed that the supplier was a state actor **because it jointly participated** with state officials in the pre-judgment seizure.[39]

Sixth Circuit District Courts in recent years have provided guidance of when *Lugar* supports and does not support finding a private entity to be a state actor. In *Burkhalter v. City of East Ridge*, a Tennessee Eastern District Court, addressing *Lugar,* again noted the active involvement of state official in the private corporation's actions invoke §1983 liability:

> But *Lugar* offers no comfort. There, an oil company sued a truck stop operator on a debt in state court while simultaneously seeking pre-judgment attachment of the truck stop owner's property under state law. *Lugar*, 457 U.S. at 924. A state court clerk authorized attachment, and a county sheriff executed. Id. The truck stop operator then sued the oil company under §1983 and challenged the state's pre-judgment attachment procedure. Id. at 925. ***The state court held that the oil company was a state actor because the oil company "invoke[ed] the aide of state officials to take advantage of state created" procedures***. *See Lugar*, 457 U.S. at 942.[40]

---

[38] Id., ¶109.
[39] *Kerns v. Chesapeake Expl., LLC*, 762 Fed.Appx. 289, 295 (Sixth Cir. 2019) (emphasis added).
[40] *Burkhalter v. City of Each Ridge*, 2025 U.S. Dist. Lexis 85100 at *9-10 (E.D. TN May 5, 2025).

11

Conversely, there are no allegations in the Complaint that this Defendant invoked the aid of any state officials. In fact, the allegations are that this Defendant acted independently and unilaterally and without government supervision, permission or authority.

### 2)  This Defendant is not a state actor under recognized *Lugar* test.

Addressing *Lugar*, the 6th Circuit presently uses four "narrow tests" to determine if the "conduct of a private party will be deemed to constitute state action".[41] Those four tests are the Public Function test, the State Compulsion test, the Nexus test and the Entwinement test.[42] A review of the allegations in the Complaint as to this Defendant do not support any finding that this Defendant was engaged in state action under any of those 4 tests and supports dismissal of both §1983 claims as to this Defendant.

### a)  The Public Function test

The Public Function test addresses private actors performing functions 'traditionally the exclusive prerogative of the State.' *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49-50."[43] 6th Circuit courts have stressed this to be a limited exception:

> This is a narrow exception. "Only functions like holding elections, exercising eminent domain, and operating a company-owned town, fall under this category of state action." *Id.* (internal citations and quotations omitted).[44]

---

[41] *Hubbard v. Abbott Bailbonds Agency LLC*, No. 1:20-cv-294, 2021 U.S. Dist. LEXIS 78228, at *4 (W.D. Mich. Apr. 23, 2021).
[42] Id. at *4-5.
[43] Id. at *5.
[44] Id. at *4.

12

There are no allegations that this Defendant's actions fit into this narrow exception involving exclusive governmental functions. Accordingly, the Public Function Test does not support a finding of this Defendant as a state actor.

### b) State Compulsion Test

The State Compulsion Test addresses situations 'in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution.'"[45] "The state compulsion test requires proof that the state significantly encouraged or coerced the private actor, either overtly or covertly, to take a particular action so that the choice is actually that of the state. *Tahfs*, 316 F.3d at 591."[46]

An illustrative case is *Hubbard v. Abbott Bailbonds Agency LLC*, 2021 U.S. Dist. LEXIS 78228, at *6 (W.D. Mich. Apr. 23, 2021) which involved the question of whether bail bondsmen were state actors.[47] In *Hubbard,* a 6th Circuit District Court found "[b]ail bondsmen are not state actors under the state compulsion test because states do not coerce them to make arrests, let alone arrests that involve excessive force or that result in injury to third parties."[48] Likewise, in the present action, there are no allegations in the Complaint that the state coerced this Defendant to perform any GPS monitoring on Plaintiff. Rather, the allegations in this Complaint cited above allege that this Defendant acted independently, unilaterally and without supervision from any

---

[45] Id. at *4.
[46] *Nance v. Nance*, 2025 U.S. Dist. LEXIS 211203, at *12-15 (W.D. Tenn. Oct. 27, 2025).
[47] *Hubbard v. Abbott Bailbonds Agency LLC*, 2021 U.S. Dist. LEXIS 78228, at *6 (W.D. Mich. Apr. 23, 2021)
[48] Id. at *6.

13

governmental agency.   The State Compulsion test also does not support a finding that this Defendant was a state actor.

### c)  **Nexus Test**

The Nexus test focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357-58."[49] "Merely because a business is subject to state regulation does not by itself convert its action into state action. Rather, **it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct** to be attributed to the state for purposes of section 1983." *Id.* (citation omitted)."[50]

The analysis in *Hubbard* related to the actions of bail bondsmen is again instructive here. In *Hubbard*, the 6th Circuit District Court recognized that

> "the majority of circuits".… "have focused on whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals and, in the absence of allegations that law enforcement officers provided affirmative assistance or joined bondsmen in effecting the apprehension as joint actors, these courts have not found state action."[51] *See Lopez v. Zouvelos*, No. 13-CV-6474 MKB, 2015 U.S. Dist. LEXIS 128392, 2015 WL 5657361, at *8 (E.D.N.Y. Sept. 23, 2015) (collecting cases); *see, e.g., Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204-05 (5th Cir. 1996) (bail bondsmen not state actors because they did not proport to act pursuant to a warrant and did not enlist the assistance of law enforcement).[52]

---

[49] Id. at *4.
[50] Id. at *6-7 (Emphasis added).
[51] Id. at *7-8.
[52] Id. at *6.

14

The 6th Circuit District Court in *Hubbard* rejected the creation of a symbiotic or nexus relationship "… because bail bondsmen have a legitimate, independent motivation for their actions; they are motivated by financial gain rather than an intent to assist law enforcement. *United States v. Poe*, 556 F.3d 1113, 1124 (10th Cir. 2009)."[53] The 6th Circuit District Court in *Hubbard* further stressed the unilateral, independent actions of a bail bondsman do not give rise to actions under the color of law.

> …with the federal courts that have held that bail bondsmen are not state actors when they apprehend **fugitives without the assistance or participation of law enforcement**. Here, Hubbard alleges no involvement by the state at all in the events giving rise to his injuries. Thus, there is no basis for inferring that Defendants acted under color of state law.[54]

Likewise, in the present matter, this Defendant is a for-profit private corporation with the legitimate motivation of seeking "financial gain" in performing its services. Further, the Complaint makes no allegations of any "involvement by the state" in this Defendant performing its actual actions. In fact, the Complaint stresses the independent, unilateral actions of this Defendant without governmental authority or supervision.[55] In **Count XII – Negligence and Negligence *Per Se*** solely against this Defendant, Plaintiff alleges that this Defendant "had no written agreement with Metro or Davidson County" to equip Plaintiff with a GPS device and thus had no "legal authorization to supervise" Plaintiff.[56] Further, Plaintiff alleges that this Defendant unilaterally required plaintiff "to sign a 'GPS Monitoring Agreement and Release'" that contained conditions

---

[53] Id. at *8.
[54] Id. at *8.
[55] *See* Complaint, § 27, 81, 108, 206, 211.
[56] *See* Complaint, ¶204.

15

not included in any judicial order.[57]  Plaintiff alleges that this Defendant unilaterally "imposed restraints and obligations beyond those ordered by any judicial officer" on Plaintiff.[58]  Further, Plaintiff alleges that this Defendant "independently caused and exacerbated Plaintiff's injuries" by implementing monitoring services without governmental authorization and imposing "exclusion zones" not ordered by any court or judicial officer.[59]

Based on the complete lack of any allegations of government involvement in this Defendant's business actions, and the alleged independent and unilateral actions of this Defendant, the Nexus test also does not allow this Defendant to be considered a state actor.

### d)  The Entwinement test

The Entwinement test is satisfied under the following factual circumstances: "To satisfy the "Entwinement Test", a plaintiff must show that the defendant is 'entwined with governmental policies' or that the government is 'entwined in [the private entity's] management or control."[60]  However, "mere cooperation simply does not rise to the level of merger required for a finding of state action."[61]  Further, "[t]he crucial inquiry under the entwinement test is whether the 'nominally private character' of the private entity 'is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it.'"[62]

---

[57] Id. ¶205, 206.
[58] Id. ¶208, 209.
[59] Id. ¶211.
[60] *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009).
[61] *Lansing v. City of Memphis*, 202 F.3d 821, 831 (6th Circ. 2000).
[62] *Vistein*, 342 Fed. Appx. at 128, *quoting Brentwood*, 531 U.S. at 298.

16

Plaintiffs cannot rely on *Brentwood Academy* to support an Entwinement basis for finding state action on this Defendant's part. First, the Supreme Court in *Brentwood Academy* stressed the overwhelming public school involvement in the TSSAA membership:

> Respondent Tennessee Secondary School Athletic Association (Association) is a not-for-profit membership corporation organized to regulate interscholastic sport among the public and private high schools in Tennessee that belong to it. No school is forced to join, but without any other authority actually regulating interscholastic athletics, **it enjoys the memberships of almost all the State's public high schools (some 290 of them or 84% of the Association's voting membership)**, far outnumbering the 55 private schools that belong.[63]

The Supreme Court further stressed that its ruling was based not only on the overwhelming public school membership, but the overwhelming and involvement of public school and state officials in TSSAA action and decisions:

> In *National Collegiate Athletic Ass'n* v. *Tarkanian,* 488 U.S. 179, 102 L. Ed. 2d 469, 109 S. Ct. 454, this Court anticipated that state action could be found when there is public entwinement in the management or control of an organization **whose member public schools** are all within a single State. Pp. 6-9.
>
> (b) The necessarily fact-bound inquiry leads to the conclusion of state action here. **The Association's nominally private character is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings**, and there is no substantial reason to claim unfairness in applying constitutional standards to it. To the extent of 84% of its membership, the Association is an organization of public schools represented by their officials acting in their official capacity to provide an integral element of secondary public schooling, interscholastic athletics. **There would be no recognizable Association without the public school officials, who overwhelmingly determine and perform all but the Association's purely ministerial acts.** To complement

---

[63] *Brentwood Acad.* v. *Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 291, (2001) (emphasis added).

the entwinement from the bottom up, the State has provided entwinement from the top down: State Board members sit ex officio on the Association's governing bodies and Association employees participate in the state retirement system. Entwinement to the degree shown here requires that the Association be charged with a public character and judged by constitutional standards.[64]

The Supreme Court further found the TSSAA to be a state actor because the TSSAA (the private actor) was "overborne" with public school and state involvement:

Just as we foresaw in *Tarkanian*, the "necessarily fact-bound inquiry," *Lugar*, 457 U.S. at 939, leads to the conclusion of state action here. **The nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings**, and there is no substantial reason to claim unfairness in applying constitutional standards to it.[65]

Unlike in *Brentwood Academy*, there are no allegations of public or state entwinement in this private corporation's business either coming up or down by any public or state entity. In fact the allegations in the Complaint allege independent, unilateral and supervised actions by this Defendant.[66] Accordingly, the Entwinement test does not support a finding of any state action.

Another instructive Sixth Circuit ruling regarding the Entwinement test comes from *Reguli v. Guffee*.[67] In *Reguli*, Plaintiff's daughter appeared in Juvenile Court for unruliness.[68] At a juvenile hearing, a Juvenile Court Referee entered an Order with numerous restrictions, including

---

[64] *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 290, 121 S. Ct. 924, 927, 148 L.Ed.2d 807, 814 (2001).
[65] Id. at 298.
[66] *See* ECF Doc. No. 1, Complaint, ¶27, 81, 108, 206, 211.
[67] 2009 U.S. Dist. LEXIS 12952, at *2-5 (M.D. Tenn. Feb. 19, 2009).
[68] Id. at 203.

that Plaintiff's daughter was required to attend a group called "Teen Peace Anger Management Program." Plaintiff contends that Defendant Michael LaBo, a moderator for that Teen Peace program, improperly removed plaintiff's daughter from the Teen Peace group setting to personally interview her.[69] In that interview, plaintiff's daughter told Defendant LaBo she had been hit and choked by Plaintiff and Defendant LaBo then reported that information to the Tennessee Department of Children's Services ("DCS").[70]

Plaintiff brought a lawsuit, including §1983 claims against Defendant LaBo. Plaintiff contended that Defendant LaBo was a state actor under the nexus test because his daughter's attendance at the Teen Peace program would not have occurred but for the court order and attendance was court-ordered and mandatory.[71] The Middie District Court rejected the Entwinement test argument.[72] Despite a Court appearance and a Court Order (as similarly alleged in the present case), the District Court did not find sufficient entwinement to make Defendant LaBo's actions to be state actions:

> The Court finds that the actions of Defendant LaBo, as an employee of a non-profit organization, did not have a sufficiently close nexus to the state to be fairly treated as those of the state itself. As noted above, Teen Peace operates independently of coercive power or direction of the state.[73]

---

[69] Id.
[70] Id. at *4.
[71] Id. at *4-5.
[72] Id. ("The Court finds no such entwinement here.")
[73] Id.

Likewise, in the present action, despite Plaintiff similarly having a court appearance and being subject to a court order, there are no allegations in the Complaint that this Defendant did not operate independently of any governmental coerce power or direction.

Since *Brentwood Academy*, the Sixth Circuit has stressed the overwhelming public involvement (84% of TSSAA's voting membership were public schools) as the basis for applying the entwinement test to find the TSSAA to be a state actor:

> In *Brentwood,* the challenged entity, which the Court held was properly subject to suit under § 1983, was the Tennessee Secondary School Athletic Association, "a not-for-profit membership and corporation organized to regulate interscholastic sport among the public and private high schools in Tennessee that belong to it." *Brentwood,* 531 U.S. at 291. In *Brentwood,* public high schools constituted "84% of the Association's voting membership," *Brentwood,* 531 U.S. at 291.[74]

This overwhelming public involvement not merely in TSSAA membership, but also in TSSAA operations, was again stressed as the basis for making the TSSAA a state actor:

> As the Supreme Court concluded in *Brentwood,* we conclude in this case that "[t]he nominally private character of [Region VII] is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it." 531 U.S. at 298.[75]

In the Complaint, there are no allegations of any entwinement of public institutions or public officials in this Defendant's actions. Accordingly, under *Brentwood Academy* and the facts alleged

---

[74] *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 179 (6th Cir. 2008).
[75] Id.

in the Complaint, the Entwinement test also does not support a finding that this Defendant was a state actor.

### 3) <u>Count XII – Plaintiff's Negligence and Negligence *per se* (Tennessee common law – Supplemental Jurisdiction 28 U.S.C. §1367) alleging a state law cause of action should be dismissed for lack of subject matter jurisdiction.</u>

In addition to bringing two separate §1983 actions against this Defendant (Count IV and VI), addressed above, Plaintiff has alleged a state law claim for negligence and negligence *per se* against this Defendant in Count XII.[76] As addressed above, this Defendant has moved this Court to dismiss both of those §1983 causes of action against this Defendant, leaving only this remaining state law claim (Count XII) against this Defendant.

"Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."[77] "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues."[78] At this initial stage of the litigation, the interests of judicial economy and the avoidance of multiplicity of litigation do not weigh in favor of exercising supplemental jurisdiction over Plaintiff's remaining state-law claim against this Defendant.

Accordingly, upon dismissal of the two §1983 claims against this Defendant (Count IV and VI), Plaintiff's sole remaining state law negligence claim against this Defendant (Count XII) should be dismissed for lack of subject matter jurisdiction.

---

[76] *See* ECF Doc. No. 1, Complaint, Count XII.
[77] *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).
[78] *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

## CONCLUSION

Based upon the foregoing law and argument, this Defendant asserts that neither the *Lugar* nor *Brentwood Academy* rulings support a finding that the §1983 allegations in the Complaint against this Defendant (Count IV and VI) state a claim for which relief can be granted. Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), Count IV and VI should be dismissed as to this Defendant. Following that, this Court should dismiss the remaining state law claim (Count XII) against this Defendant pursuant to Federal Rule of Civil Procedure 12(b)(1) and U.S.C. §1331.

Dated: January 15, 2026

Respectfully submitted,

**McNABB, BRAGORGOS, BURGESS & SORIN, PLLC**

*/s/ R. Scott McCullough*
R. SCOTT McCULLOUGH - #19499
RICHARD SORIN - #17569
Attorney for Tracking Solutions, Inc.
81 Monroe, Sixth Floor
Memphis, Tennessee 38103
Telephone: (901) 624-0640
Fax: (901) 624-0650
smccullough@mbbslaw.com

22