# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARTIN SCOTT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:25-cv-01393 |
| | ) | |
| **METRO. GOV'T. OF NASHVILLE** | ) | **JURY DEMAND** |
| **AND DAVIDSON COUNTY,** | ) | |
| | ) | |
| **TRACKING SOLUTIONS, INC.,** | ) | |
| | ) | |
| **MALLORY WITHERS,** | ) | |
| *in her individual capacity* | ) | |
| | ) | |
| **BRIAN CAVALIERE,** | ) | |
| *in his individual capacity* | ) | |
| | ) | |
| **TYLER LEWIS,** | ) | |
| *in his individual capacity* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT TRACKING SOLUTIONS, INC.'S MOTION TO DISMISS

Plaintiff, by and through undersigned counsel, respectfully submits this Response in opposition to Defendant Tracking Solutions, Inc.'s ("Tracking Solutions") Motion to Dismiss filed on January 15, 2026, titled **Defendant Tracking Solutions, Inc.'s Motion to Dismiss Complaint for Violation of Civil Rights (42 U.S.C. § 1983) and Supplemental State Law Claims Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (hereafter "TS**

Motion to Dismiss"), pursuant to Local Rule 7.01(a)(3). In support thereof, Plaintiff states as follows:

## BACKGROUND

1. Plaintiff commenced this action by filing his Complaint on December 2, 2025.

2. On December 4, 2025, a copy of the Complaint and summons was served on Defendant Tracking Solutions, Inc., by Deputy Greg Speck of the Rutherford County Sheriff's Office.

3. Defendant Tracking Solutions filed its Motion to Dismiss on January 15, 2026.

## SUMMARY OF DEFENDANT'S MOTION AND PLAINTIFF'S RESPONSE

4. The gravamen of Defendant Tracking Solutions, Inc.'s Motion to Dismiss is that Plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6) as to Counts IV and VI of the Complaint, because Tracking Solutions asserts it is not a state actor for purposes of 42 U.S.C. § 1983. This contention is central: if correct, the lack of state action would doom Plaintiff's federal constitutional claims. Defendant further argues that, absent viable § 1983 claims, the Court should decline supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(c)(3) and dismiss them pursuant to Rule 12(b)(1).

5. Plaintiff respectfully submits that Defendant's position is fundamentally flawed. For the reasons set forth below, Tracking Solutions is a state actor—and a paradigmatic example of one—under well-established § 1983 precedent. The Complaint's well-pleaded allegations establish that Tracking Solutions exercised coercive authority over Plaintiff's pretrial liberty that existed only by virtue of state law, was delegated by Metro Nashville, and was performed in joint

participation with state officials within a custodial setting. These facts satisfy multiple tests for state action, including the public-function doctrine, the joint-action test, and the framework articulated in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). Defendant's cited authorities are either distinguishable or affirm the principles that compel denial of the motion. The § 1983 claims are therefore plausible, and the Court should retain supplemental jurisdiction over the state-law claims in the interest of judicial economy, convenience, fairness, and comity.

## STANDARD OF REVIEW

6.    A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the case. To survive dismissal, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555–56. Dismissal is appropriate only where the complaint's factual allegations, assumed true, fail to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

7.    Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction. A Rule 12(b)(1) challenge may be either facial—contesting jurisdiction based on the allegations of the complaint—or factual—contesting the existence of jurisdiction in fact. When a defendant mounts a facial attack, the Court must take the complaint's jurisdictional allegations as true and construe them in the light most favorable to the plaintiff. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a defendant brings a factual attack, the Court may

consider evidence outside the pleadings, and the plaintiff bears the burden of proving jurisdiction. *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014). In either posture, dismissal under Rule 12(b)(1) is proper only where the Court lacks statutory or constitutional power to adjudicate the claim. See, e.g., *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

8.     Finally, supplemental jurisdiction over state-law claims is governed by 28 U.S.C. § 1367. Even where § 1367(a) is satisfied, the Court "**may** decline to exercise supplemental jurisdiction" under § 1367(c), including when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) (emphasis added). Whether to retain supplemental jurisdiction is a discretionary decision guided by the familiar considerations of judicial economy, convenience, fairness, and comity.[1] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); see also *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

## STATEMENT OF FACTS

9.     Plaintiff incorporates by reference the well-pleaded factual allegations set forth in the Complaint (Dkt. No. 3:25-cv-01393), which are accepted as true for purposes of this motion.

10.     In particular, the Complaint alleges that:

A. Metro Nashville conditioned Plaintiff's pretrial release on electronic GPS monitoring.

---

[1] "Such supplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed. *Carlsbad Tech., Inc. v. HIF Bio*, Inc., 556 U.S. 635, 129 S. Ct. 1862, 1866-67, 173 L. Ed. 2d 843 (2009). Following such a dismissal, the district court in its discretion may properly choose whether to exercise § 1367(a) jurisdiction over the supplemental state-law claims; however, such a decision is 'purely discretionary.'" *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

B.  Plaintiff could not be released from custody unless and until a Tracking Solutions employee physically attached a GPS monitoring device to his ankle inside the Davidson County booking facility.

C.  Tracking Solutions operated within the jail, imposed movement restrictions and exclusion zones not ordered by any judicial officer, continuously monitored Plaintiff's location data on Metro's behalf, all with the discretion to report alleged "violations" directly to law enforcement, resulting in the threat or imposition of further detention or arrest.

D.  These functions were performed pursuant to Metro's delegation of pretrial supervision authority, without a required written contract as mandated by Tennessee law, and as an integral part of the State's custodial and release process.

11.     These allegations, taken as true, establish that Tracking Solutions exercised coercive power over Plaintiff's liberty that was possible only because it was clothed with the authority of state law and jointly participated with Metro in the deprivation.

**ARGUMENT**

a) **Plaintiff's Action Should Survive Dismissal Because Defendant Tracking Solutions is a State Actor.**

12.     Defendant Tracking Solutions, Inc. contends that it is not a state actor under 42 U.S.C. § 1983 and therefore cannot be liable for the alleged deprivation of Plaintiff's Fourth and Fourteenth Amendment rights. This position is incorrect. The Complaint's well-pleaded allegations establish that Tracking Solutions exercised coercive, custodial authority over Plaintiff's pretrial liberty—authority delegated by Metro Nashville and made possible only by state law—in a manner that satisfies the state-action requirement under *Lugar v. Edmondson Oil*

*Co.*, 457 U.S. 922 (1982), *West v. Atkins*, 487 U.S. 42 (1988), and related doctrines. Defendant's cited cases are either distinguishable on their facts or affirm the principles supporting liability here. The subsections below address each of Defendant's authorities in turn and demonstrate why dismissal is unwarranted.

### i)    *Anders v. Purifoy*

13.    Defendant relies on *Anders v. Purifoy*, No. 16-cv-2321-JDT-tmp, 2016 U.S. Dist. LEXIS 72580 (W.D. Tenn. May 18, 2016), to argue it is not a state actor. In *Anders*, the court recommended dismissal of § 1983 claims against a plaintiff's ex-wife, her attorneys from a nonprofit legal services organization, and the organization itself, arising from alleged misconduct in a private divorce proceeding. Id. at 1, 6–7. Those defendants—private individuals and a nonprofit advocate—exercised no custodial authority, imposed no physical restraints, conditioned no one's release from custody, and performed no functions tied to pretrial detention or release. They did not jointly participate with law enforcement or magistrates, operate inside a correctional facility, or implement state-imposed liberty restraints.

14.    *Anders* is inapposite. Unlike those defendants, Tracking Solutions allegedly acted as Metro's de facto pretrial-supervision arm: Plaintiff could not be released from custody until a Tracking Solutions employee physically attached a GPS device inside the Davidson County booking facility; the company imposed exclusion zones and movement restrictions not ordered by any judicial officer; it monitored location data on Metro's behalf; and it had discretion to report alleged "violations" to law enforcement as grounds for further detention or arrest.[2] These facts place Tracking Solutions within the line of cases recognizing state action where a private entity jointly participates in the execution or enforcement of a governmental deprivation of liberty. See *Lugar*, 457 U.S. at 937–39; see also *West*, 487 U.S. at 54–57. Nothing in *Anders*

[2] Complaint (No. 3:25-cv-01393), § 27.

involved joint participation in detention, pretrial release, or physical restraint of a criminal defendant. Accordingly, *Anders* does not control or undermine Plaintiff's well-pleaded allegations that Tracking Solutions acted under color of state law.

### ii) *West v. Atkins*

15. Defendant's reliance on *West v. Atkins*, 487 U.S. 42 (1988), is misplaced because *West* squarely supports finding state action here. The Court held that a private physician under contract to provide medical care to prisoners acted under color of state law when the State delegated its affirmative constitutional duty to provide that care. Id. at 54–57. The Court rejected arguments that professional discretion, private contractual status, or the terms of employment insulated the physician from § 1983 liability, explaining that "[d]efendants are not removed from the purview of § 1983 simply because they are professionals acting in accordance with professional discretion and judgment," id. at 52 (see also, footnote 10), and that "[i]t is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." Id. at 55–56. What mattered was that the physician was "fully vested with state authority to fulfill essential aspects of the duty placed on the State" by the Constitution. Id. at 56–57.

16. That reasoning applies with equal—if not greater—force here. The State bears an affirmative obligation under the Fourth and Fourteenth Amendments to ensure that pretrial restraints on liberty are reasonable, justified, and imposed only through lawful judicial process. See Tenn. Code Ann. §§ 40-11-150, -152 (placing exclusive authority over pretrial release conditions with judicial officers and the State). Metro delegated essential aspects of that constitutional and statutory duty to Tracking Solutions: Plaintiff could not be released from

7

custody unless Tracking Solutions physically attached a GPS device to his body inside the jail, imposed monitoring conditions and movement restrictions (some not ordered by any judge), and had discretion to report alleged violations that triggered immediate risk of arrest or detention. Plaintiff had no ability to refuse Tracking Solutions' authority, negotiate its terms, or seek an alternative path to release.

17.     Like the physician in *West*, Tracking Solutions occupied a custodial and supervisory role within the State's criminal justice system and was vested with state authority to fulfill essential aspects of the State's duty to supervise pretrial defendants and enforce liberty restraints that only the State has constitutional power to impose. The fact that Tracking Solutions operated pursuant to a contract—or, as alleged here, without the written contract required by statute—does not alter the analysis or shield it from § 1983 liability.[3] Contracting out pretrial supervision does not relieve the State of its constitutional obligations, nor does it deprive individuals subjected to those restraints of a federal remedy. *West*, 487 U.S. at 55–57.

### iii)     *Adams v. Vandemark*

18.     Defendant relies on *Adams v. Vandemark*, 855 F.2d 312 (6th Cir. 1988), to argue it is not a state actor. In *Adams*, the Sixth Circuit held that a nonprofit community action agency's internal employment decisions—terminating employees allegedly in retaliation for First Amendment activity—were not fairly attributable to the State. Id. at 316–17. The State neither compelled nor meaningfully participated in the discharges, and the conduct involved no coercive governmental power over third parties.

19.     *Adams* is inapposite. Unlike the purely internal, discretionary personnel decisions there, Tracking Solutions exercised coercive power over Plaintiff's physical liberty in direct

---

[3] TS's Motion to Dismiss, p. 15.

coordination with Metro's pretrial-release system: it operated inside the Davidson County booking facility, conditioned release on compliance with its directives, affixed a GPS device to Plaintiff's body, imposed movement restrictions and exclusion zones not ordered by any court, monitored location data on Metro's behalf, and reported alleged "violations" to law enforcement as grounds for detention or arrest. These are liberty-restricting functions traditionally belonging to the State, not comparable to internal business conduct.

20. *Adams* itself reinforces this distinction. The court reaffirmed that the ultimate issue is whether the deprivation is "fairly attributable to the State," and that state action exists where the State exercises coercive power or provides significant encouragement such that the choice is deemed the State's. Id. at 314 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Plaintiff alleges precisely that here: Metro required GPS monitoring as a release condition, stationed Tracking Solutions inside the jail to implement it, and treated its reports as the trigger for enforcement—conduct "made possible only because the wrongdoer [was] clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326 (1941). Nor does *Adams* foreclose the public-function doctrine: while nonprofit employment administration is not traditionally exclusive to the State, id. at 314 n.6, continuous electronic monitoring, enforcement of pretrial conditions, supervision of accused persons' movements, and violation reporting leading to arrest are historically and exclusively state functions tied to police and judicial powers. *Adams* left open state-actor status where conduct is intertwined with governmental power over liberty interests, id. at 316–17—which is exactly this case. In short, *Adams* does not undermine Plaintiff's § 1983 claims; under *Lugar*, *West v. Atkins*, and *Adams's* own principles, the allegations plausibly establish action under color of state law.

21.     Defendant relies on *Leta v. TriHealth, Inc.*, 2024 U.S. App. LEXIS 1548 (6th Cir. Jan. 22, 2024), but that decision is inapposite. In *Leta*, the Sixth Circuit held that private medical providers who administered vaccinations to children in foster care were not state actors under § 1983. Id. at 6–8. The providers exercised no state-delegated authority, had no custodial control over the plaintiffs' liberty, did not condition release from custody, did not operate inside a jail, and performed no function the State was constitutionally obligated to undertake. Id. at 7–12. At most, they provided ordinary medical services and complied with requests from caregivers and caseworkers; such conduct—even when intersecting with a state system—did not transform private medical judgment into state action. Id.

22.     That reasoning supports Plaintiff, not Defendant. Unlike the TriHealth providers, Tracking Solutions was embedded within the Davidson County booking facility and functioned as a mandatory gateway to pretrial liberty: Plaintiff could not be released from custody unless Tracking Solutions physically attached a GPS device to his body and enforced the monitoring regime.[4] This authority—custodial and supervisory, implicating core Fourth Amendment protections against bodily intrusion and continuous surveillance—was not incidental or advisory; it existed only by virtue of state law and Metro's delegation of essential aspects of its constitutional duty to ensure lawful pretrial restraints. See Tenn. Code Ann. §§ 40-11-150, -152.

23.     *Leta* reaffirmed that private entities may be deemed state actors when their conduct is fairly attributable to the State, including through joint participation or delegated functions. Id. at 7–8. That framework distinguishes cases where the State delegates a constitutional duty and the private actor exercises authority within a custodial system (as in *West*, 487 U.S. at 54–57, where a contracted physician providing prison medical care was held to act

---

[4] Complaint (No. 3:25-cv-01393), § 27.

under color of state law due to the State's delegation of its Eighth Amendment obligation). That is precisely this case: Metro delegated installation, operation, enforcement, reporting, and creation of monitoring rules to Tracking Solutions, which voluntarily assumed that role as a condition of release. Unlike TriHealth's passive provision of information (insufficient for joint action), id. at 8, Tracking Solutions directly effectuated the restraint by attaching the device, imposing extra-judicial exclusion zones, and reporting "violations" that triggered arrest or detention—operational control over liberty, not mere cooperation. Contracting out pretrial surveillance does not relieve the State of its constitutional obligations or deprive individuals of § 1983 remedies. In short, *Leta* confirms the governing framework but underscores why Tracking Solutions plausibly acted under color of state law at the pleading stage.

### v) *Stark v. City of Memphis*

24.     Defendant relies on *Stark v. City of Memphis*, 2020 U.S. Dist. LEXIS 250141 (W.D. Tenn. Feb. 18, 2020), but that case is inapposite and, properly understood, supports Plaintiff's theory of state action. In *Stark*, the court addressed whether a police officer (Mr. Stark) acting in his personal capacity—as well as private litigants in a divorce proceeding—qualified as state actors under § 1983. Id. at *32–35. The court reaffirmed that private parties do not become state actors merely by invoking judicial processes or engaging in private misconduct, absent joint participation with the State or exercise of authority made possible by state law. Id. at *32–33 (citing *Kerns v. Chesapeake Expl.*, LLC, 762 F. App'x 289, 294 (6th Cir. 2019)). Crucially, *Stark* distinguished between actors who merely interact with the State and those who "could not have behaved as [they] did without the authority of [their] office," recognizing that state action turns on the nature of the act, function, and authority—not

formal employment status alone. *Id.* at \*32 (quoting *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001)).

25.    Tracking Solutions falls squarely on the opposite side of the line from the *Stark* defendants. Unlike those parties—who merely complained to police, filed papers, or litigated privately—Tracking Solutions operated inside the Davidson County booking facility, physically restrained Plaintiff's body by attaching a GPS device, administered continuous surveillance, imposed liberty restrictions, and enforced compliance through reporting that triggered arrest or detention. Plaintiff could not be released from custody unless and until Tracking Solutions acted—conduct no ordinary citizen could perform. *Stark* recognizes state-actor status where private entities jointly participate with officials or are vested with authority to carry out governmental functions. *Id.* at 32-33. The Complaint alleges precisely that: Metro conditioned release on GPS monitoring, delegated implementation to Tracking Solutions, and allowed it to define, administer, and enforce operative restraints—placing Tracking Solutions in a custodial and supervisory role traditionally reserved to the State. Accordingly, *Stark* does not support dismissal; it reinforces the principle that where a private entity exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law," § 1983 applies. See *Classic*, 313 U.S. at 326. Plaintiff has plausibly alleged exactly that.

### vi)    *Kerns v. Chesapeake Expl., LLC*

26.    Defendant's reliance on *Kerns v. Chesapeake Exploration, L.L.C.*, 762 F. App'x 289 (6th Cir. 2019), is misplaced. In *Kerns*, the Sixth Circuit held that a private drilling company was not a state actor under § 1983 when it allegedly effectuated a regulatory taking after

obtaining a mandatory pooling order from a state official under Ohio law. Id. at 292–95. The deprivation (drilling) was committed solely by the private party; the State neither carried out nor directly participated in the conduct. The court emphasized that a private party's "mere use of the State's dispute resolution machinery," without overt and significant assistance from state officials in executing the deprivation, does not constitute action under color of state law. Id. at 295 (internal quotation omitted).

27.  *Kerns* does not apply here. Unlike the drilling company, where state involvement ended at issuing a regulatory order and the private entity acted independently thereafter, Tracking Solutions operated as an integral component of the State's pretrial detention and release system. Plaintiff could not obtain release from custody unless Tracking Solutions physically attached a GPS device inside the jail—a custodial environment controlled entirely by the State. Tracking Solutions did not merely invoke state procedures; it implemented, administered, and enforced liberty-restricting conditions that the State itself was constitutionally obligated to impose (if at all) through lawful judicial process. See Tenn. Code Ann. §§ 40-11-150, -152. In doing so, it exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Classic*, 313 U.S. at 326. *Kerns* reaffirmed the *Lugar* test—deprivation caused by a state-created right or privilege and the private party fairly said to be a state actor—and distinguished cases of mere regulatory benefit from delegation of core constitutional responsibilities. Here, the State delegated operational enforcement of GPS monitoring to Tracking Solutions without a required contract or judicial parameters, outsourcing a core governmental function. That delegation places this case outside *Kerns* and squarely within § 1983 liability.

28.     Defendant relies on *Burkhalter v. City of East Ridge*, 2025 U.S. Dist. LEXIS 85100 (E.D. Tenn. May 5, 2025), to argue that private parties do not become state actors merely because their conduct intersects with government enforcement. That reliance is misplaced. In *Burkhalter*, the court dismissed § 1983 claims against private business owners who submitted affidavits supporting a nuisance-abatement petition initiated by the district attorney. Id. at 7–11. The complaint alleged that the businesses did not control the proceeding, did not direct law-enforcement action, shared no "meeting of the minds" with officials, and that the State—not the private parties—was the driving force. Id. at 8–10. The court held that merely providing information was insufficient for joint participation or state action. Id. at 9–10.

29.     This case is fundamentally different. Unlike the *Burkhalter* defendants—who passively submitted affidavits later acted upon by public officials—Tracking Solutions directly exercised coercive authority over Plaintiff's physical liberty: Plaintiff could not be released from custody unless Tracking Solutions physically attached a GPS device inside the Davidson County booking facility; it imposed exclusion zones and reporting obligations never ordered by any judicial officer; and it had discretion to report alleged "violations" to law enforcement as the basis for arrest or detention. These allegations describe direct participation in the deprivation itself, not tangential information provision. *Burkhalter* reaffirmed the core *Lugar* principle: a private entity is a state actor when it "invokes the aid of state officials to take advantage of state-created procedures." Id. at 10 (citing *Lugar*, 457 U.S. at 942). Here, Tracking Solutions functioned as Metro's de facto pretrial-supervision arm, wielding authority that existed only because of state law, court orders, and jail-based enforcement. The deprivation was "made possible only because the wrongdoer [was] clothed with the authority of state law." *Classic*, 313

U.S. at 326. Far from foreclosing Plaintiff's claims, *Burkhalter* underscores why Tracking Solutions' embedded, custodial role falls within the "rare circumstances" where private conduct is fairly attributable to the State.

**b) Defendant Tracking Solutions is a State Actor Under the *Lugar* Test.**

30.     Section 1983 liability extends to private parties who exercise power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Classic*, 313 U.S. at 326; *Ex parte Virginia*, 100 U.S. 339, 346–47 (1880); *Lugar*, 457 U.S. at 929. As the Supreme Court explained in *Lugar*, misuse of such delegated power constitutes action "under color of" state law even where the actor exceeds or abuses its authority. *Lugar*, 457 U.S. at 929.

31.     Although *Lugar* arose in the context of prejudgment attachment, its holding is not limited to that setting. Rather, the Court articulated a general framework for determining when private conduct is fairly attributable to the State for purposes of the Fourteenth Amendment and § 1983. Id. at 937. Under that framework, a constitutional deprivation is attributable to the State where two conditions are satisfied: (1) the deprivation is caused by the exercise of a right or privilege created by the State, a rule of conduct imposed by the State, or a person for whom the State is responsible; and (2) the party charged with the deprivation may fairly be said to be a state actor—either because it is a state official, because it acted together with or obtained significant aid from state officials, or because its conduct is otherwise chargeable to the State. Id. Both requirements are met here.

32.     The deprivation at issue—the physical attachment of a GPS device to Plaintiff's body, continuous electronic surveillance, the imposition of movement restrictions, and the threat

of arrest for alleged "violations"—was caused by the exercise of authority created entirely by Tennessee law and the State's pretrial release system. See Tenn. Code Ann. §§ 40-11-150, -152 ("The magistrate who imposes a condition…shall…[o]rder the qualified electronic monitoring provider to notify the appropriate entities pursuant to the written protocol required under subdivision (a)(2)(B).").

33.     Plaintiff could not be released from custody unless a GPS device was attached to his person. Tracking Solutions' authority to restrain Plaintiff's liberty existed only because the State conditioned release on compliance with electronic monitoring and authorized vendors to implement that condition. See T.C.A. § 40-11-152. Tracking Solutions acted pursuant to a state-imposed rule of conduct governing pretrial detention and release.

34.     As in *Lugar*, where the creditor's deprivation of property was made possible by state attachment procedures, Tracking Solutions' deprivation of liberty was made possible only because Tennessee law and Metro's practices vested it with authority to enforce a condition of pre-trial release. See *Lugar*, 457 U.S. at 933 (holding that "private use of the challenged state procedures with the help of state officials constitutes state action").

35.     The second prong of *Lugar*—whether the defendant may fairly be said to be a state actor—is likewise satisfied. The Supreme Court has made clear that this inquiry is fact-bound and may be satisfied in multiple ways, including where a private party acts jointly with state officials, exercises apparent state authority, or performs functions chargeable to the State. *Lugar*, 457 U.S. at 937–39.

36.     Critically, *Lugar* distinguishes cases such as *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972), where the challenged discrimination could not be ascribed to any governmental decision, from cases where the private party's conduct is infused with the authority of the State.

*Lugar*, 457 U.S. at 937–38. Here, unlike *Moose Lodge*, Tracking Solutions' conduct was inseparable from the State's decision to restrain Plaintiff's liberty as a condition of release.

37.     Nor is this case analogous to *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149 (1978), where the Court held that a warehouseman's private sale of goods pursuant to the Uniform Commercial Code did not alone render the warehouseman a state actor. Id. at 938-39. As *Lugar* explains, *Flagg Brothers* turned on the absence of "something more" beyond private reliance on a state statute. *Lugar*, 457 U.S. at 939. That "something more" varies with context and includes public function, state compulsion, nexus, and joint action tests. Id. That "something more" is present here.

PUBLIC FUNCTION TEST

38.     Tracking Solutions wielded apparent authority normally reserved to the State thus satisfying the public function test. It operated inside the Davidson County booking facility, conditioned Plaintiff's release from jail, physically restrained him through electronic surveillance, imposed and enforced exclusion zones, and had discretion to report alleged violations to law enforcement for detention or arrest.[5] These are not ordinary commercial activities; they are custodial and supervisory functions historically and exclusively performed by the State in the administration of pretrial detention and release.

39.     As the Supreme Court has recognized, state action exists where a private party is "clothed with the authority of state law" and exercises power that carries the weight of the State. *Classic*, 313 U.S. at 326; *Lugar*, 457 U.S. at 929. Tracking Solutions' authority did not derive from private agreement or professional discretion; it derived from the State's coercive power over Plaintiff's liberty.

---

[5] Complaint (No. 3:25-cv-01393), § 27.

JOINT ACTION TEST

40.    Tracking Solutions also qualifies as a state actor under *Lugar's* joint-action analysis. The State imposed GPS monitoring as a condition of release; Tracking Solutions implemented and enforced that condition; and law enforcement relied on Tracking Solutions' monitoring and reports to police Plaintiff's compliance. T.C.A. § 40-11-152(i). This coordinated deprivation mirrors the joint participation identified in *Lugar*, where private parties invoked state procedures with the assistance of state officials to effectuate a deprivation. *Lugar*, 457 U.S. at 933.

41.    Indeed, Tracking Solutions' defense—that it acted "independently" and "unilaterally" without government supervision, permission, or authority—misstates the Complaint and underscores the constitutional problem. The allegations establish that Tracking Solutions exercised apparent and delegated authority from Metro (via an informal "hand-shake" arrangement that should have been formalized in a written contract under Tennessee law), operated with limited supervision while performing functions traditionally reserved to the State (custodial supervision, physical restraint, and enforcement of pretrial conditions), and wielded coercive power over Plaintiff's liberty as an integral part of the State's release system. Section 1983 does not permit the State to avoid constitutional accountability by delegating such coercive authority to private actors and then disclaiming responsibility for how that authority is exercised. See *Monroe v. Pape*, 365 U.S. 167, 172 (1961); *Lugar*, 457 U.S. at 937; see also, *Classic*, 313 U.S. at 326 (misuse of official authority still carries "the weight of the State" and constitutes action under color of law).

42.    In sum, Tracking Solutions exercised power possessed by virtue of state law, made possible only because it was clothed with the authority of the State, and did so with

apparent authority in a custodial and supervisory role traditionally reserved to the government. The deprivation of Plaintiff's liberty was caused by state-created rules and enforced through joint participation with state actors.[6] Under *Lugar* and its progeny, that conduct is fairly attributable to the State and actionable under § 1983.

### c) <u>Conclusion.</u>

43.     For the foregoing reasons, Plaintiff has plausibly alleged that Defendant Tracking Solutions, Inc. acted under color of state law when it exercised coercive authority over his pretrial liberty—authority that existed only by virtue of state-created bail procedures, judicially imposed (or purportedly imposed) conditions of release, and Metro's delegation of custodial and supervisory functions traditionally reserved to the government. The Complaint's well-pleaded facts establish state action under multiple recognized tests: the public function doctrine, the joint action/nexus test, and the framework articulated in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). Tracking Solutions was not a mere private vendor providing optional services; it functioned as Metro's de facto pretrial supervision arm, conditioning Plaintiff's release from custody on physical restraint and continuous surveillance, imposing restrictions beyond any judicial directive, and triggering enforcement actions through reports that carried the weight of state authority.

44.     Defendant's cited authorities—whether *Anders*, *West v. Atkins* (which in fact supports Plaintiff's position), *Adams v. Vandemark*, *Leta v. TriHealth*, *Stark v. City of Memphis*, *Kerns*, or *Burkhalter*—are either distinguishable on their facts or affirm the very principles that compel denial of dismissal here. None involved a private entity embedded within a jail facility, wielding mandatory custodial power over an arrestee's body and movement as an indispensable

---

[6] T.C.A. § 40-11-152(a)(2) names and describes the role Tracking Solutions assumed with the government. ("Qualified contract service provider").

condition of pretrial release, or performing functions that the State itself bears an affirmative constitutional duty to oversee and execute lawfully.

45.     Section 1983 does not permit the State to avoid constitutional accountability by delegating coercive authority to private actors and then disclaiming responsibility for how that authority is exercised. See *Monroe*, 365 U.S. at 172; *Lugar*, 457 U.S. at 937 (state action exists where official authority lends the weight of the State to the deprivation). Accepting the Complaint's allegations as true—as this Court must at the 12(b)(6) stage—Plaintiff has stated a plausible claim for relief under § 1983. Dismissal is therefore unwarranted.

46.     Should the Court deny Defendant Tracking Solutions, Inc.'s Motion to Dismiss as to the § 1983 claim (over which the Court has original federal-question jurisdiction under 28 U.S.C. § 1331), Plaintiff respectfully requests that the Court exercise its discretion under 28 U.S.C. § 1367(a) to retain supplemental jurisdiction over the related state-law claims. These claims arise from the same nucleus of operative facts as the federal claim, including the same alleged deprivation of liberty through GPS monitoring and enforcement. Retaining jurisdiction promotes judicial economy (by avoiding duplicative litigation in state court), convenience (the case is already pending in federal court with discovery and motions practice underway), fairness (Plaintiff should not be forced to split closely related claims across forums), and comity (no novel or complex issues of Tennessee law predominate that would warrant abstention). See *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). The discretionary factors under § 1367(c) weigh strongly in favor of retention, particularly since the Court would not be dismissing all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c)(3).

47.     Plaintiff respectfully requests that the Court deny Defendant Tracking Solutions, Inc.'s Motion to Dismiss in its entirety.


Date filed: January 27, 2026.

Respectfully submitted,



s/Cody Johnson/
Cody Johnson, Esq.
BPR No. 037568
Turklay Law, PLLC
Attorney for Plaintiff
102 E Main Street Suite A
Lebanon, TN 37087
P: (629) 200-7774
Cody@TurklayLaw.com
