IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARTIN SCOTT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:25-cv-01393 ) |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, *et al.*, | ) Judge Trauger ) ) JURY DEMAND ) |
| Defendants. | ) |

## METRO NASHVILLE'S MOTION TO DISMISS AND MEMORANDUM OF LAW

Plaintiff uses his own arrest, GPS monitoring, and ultimate dismissal of criminal charges to speculate that Metro Nashville either failed to train judicial commissioners or that some other custom, policy, or practice caused him constitutional injury. That is not the case. Assuming that Plaintiff's constitutional rights were violated, he has failed to plead that Metro Nashville is responsible for those violations. To unlock the doors of discovery in a Section 1983 case against a municipality under an inaction theory, a plaintiff must plead prior constitutional violations. And Plaintiff cannot rely on the single incident theory of liability, because there was no obvious need for more training. Additionally, regardless of the theory, a plaintiff must allege more than threadbare assertions of unconstitutional policies, training, and practices. Plaintiff has failed to plead any of these required elements. Count IX fails for the additional reason that the right Plaintiff seeks to vindicate, the right to initiate personal criminal charges, does not exist under the First Amendment. Accordingly, his claims against Metro Nashville should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## FACTS

Plaintiff and co-defendant Mallory Withers were in a relationship between 2023 and 2024. (Compl. ¶ 11, D.E. 1.) That relationship soured. (*Id.*) According to Plaintiff, federal law required him to report Withers' income to the IRS and to inform her of the same. (*Id.* ¶¶ 14, 15.) The problem, however, is that Withers obtained an order of protection. (*Id.* ¶ 19.) So when Plaintiff contacted Withers about his notifications to the IRS, Withers reached out to Metro Nashville police officers. (*Id.* ¶ 19.) Withers also claimed that Plaintiff had stalked her and harassed her on social media. (*Id.* ¶¶ 22, 23.) MNPD officers arrested Plaintiff based on Withers allegations. (*Id.* ¶ 26.)[1]

As a condition of bail, a judicial commissioner required Plaintiff to wear a GPS device. (*Id.* ¶ 27.) Judicial commissioners possess the qualifications of a judge and must be licensed to practice law. *See* https://gscourt.nashville.gov/departments-services/night-court/[2] (noting that judicial commissioners are an extension of the general sessions court and possess the qualification of judge); Tenn. Code Ann. § 16-15-5005(a)(1) ("[A]ll persons occupying the office of general sessions judge shall be licensed to practice law in this state."). They are charged with conducting probable cause hearings, issuing warrants, and setting bail bonds. https://gscourt.nashville.gov/departments-services/night-court; Tenn. Code Ann. § 40-5-201. Here, after a preliminary hearing, a judge bound the charges over to the grand jury, who returned an indictment, and the case proceeded for months. (*Id.* ¶¶ 29, 35.)

---

[1] It is unclear how many times Plaintiff was arrested. Paragraph 26 states that "Plaintiff was arrested on the final set of charge," (Compl. ¶ 26), but no other arrests are identified.
[2] The Court may take judicial notice of the contents of a government website. *See, e.g.*, *Doss v. Corizon*, 636 F. Supp. 3d 807, 810 n.1 (W.D. Mich. 2022) (collecting cases); *Hlfip Holding, Inc. v. Rutherford Cnty., Tenn.*, No. 3:19-CV-00714, 2021 WL 4502833, at *10 (M.D. Tenn. Oct. 1, 2021) (same).

While his criminal prosecution for stalking and harassing Withers was on-going, Plaintiff sought to initiate charges against her. (*Id.* ¶ 30.) According to him, MNPD officers thwarted that process by bringing the assistant district attorney into the process. (*Id.*) The ADA directed officers not to "entertain" his evidence. (*Id.*) So Plaintiff's initiating documents were not accepted and nor evaluated by a judge. (*Id.* ¶ 31.) Ultimately, the criminal charges against Plaintiff were dismissed. (*Id.* ¶ 33.)

Based on the above, Plaintiff sued Metro Nashville, the GPS company (Tracking Solutions), Withers, and two MNPD officers. He uses his situation to extrapolate custom or practices of Metro Nashville that he alleges violated his First Amendment free speech and petitioning rights, Fourth Amendment right to be free from unreasonable seizure, Sixth Amendment right to counsel, Fourteenth Amendment right to due process and equal protection, and the Supremacy Clause. (*Id.* Counts IV–X.)

## MOTION TO DISMISS STANDARD

To survive a motion brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege in a complaint "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court reiterated in *Ashcroft v. Iqbal*, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (cleaned up). Further, the tenet that a court must accept as true all the well-pleaded factual allegations contained in a complaint is inapplicable to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted). A court need not accept as true a "legal conclusion couched as a factual allegation." *Id.* (citations omitted). Determining whether a complaint

states a plausible claim for relief on its face is a context-specific exercise that requires a court to "draw on its judicial experience and common sense." *Id.* at 679 (citations omitted).

## ANALYSIS

Plaintiff's municipal liability claims against Metro Nashville fail at the pleading stage for three independent reasons. First, Plaintiff proceeds under inaction theories—failure to train and custom of tolerance—which require him to plead deliberate indifference by alleging prior constitutional violations. He has not done so. Second, even if Plaintiff could proceed under a single-incident theory of liability, his case does not qualify as the rare "obvious case" where a municipality's failure to train makes constitutional violations the predictable result. The decisions challenged here were made by a licensed attorney serving as a judicial commissioner, not a lay person unfamiliar with constitutional requirements. Third, Plaintiff's claims rest entirely on threadbare recitals of legal conclusions unsupported by factual allegations about Metro Nashville's actual training, policies, or customs. Finally, Count IX independently fails because the constitutional right Plaintiff seeks to vindicate—the right to initiate criminal charges against a private citizen—does not exist. For these reasons, all claims against Metro Nashville should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

    **I.   PLAINTIFF OMITS ANY FACTUAL ALLEGATIONS OF PRIOR CONSTITUTIONAL VIOLATIONS. BUT HE MUST INCLUDE THESE ALLEGATIONS TO SURVIVE A MOTION TO DISMISS HIS MUNICIPAL LIABILITY CLAIMS BASED ON DELIBERATE INDIFFERENCE.**

Counts IV–X include a municipal liability claim that requires Plaintiff to plead deliberate indifference. He has not done so because he has not pleaded any facts about any other constitutional violations. Absent factual allegations of prior similar constitutional violations, all the municipal liability claims fail.

Section 1983 "does not permit a municipal entity to incur liability under a theory of *respondeat superior*." *Miller v. Calhoun Cty.*, 408 F.3d 803, 813 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). Instead, a local government may be held liable under Section 1983 "only where its policy or custom causes the constitutional violation in question." *Id.*; *see also Zucker v. City of Farmington Hills*, 643 F. App'x 555, 570 (6th Cir. 2016) ("To succeed on a claim that a municipality has a policy or practice of constitutional violations, a plaintiff must identify an unconstitutional policy and must show that the policy led to a constitutional deprivation.").

There are four paths to show a municipal policy or custom: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Franklin v. Franklin Cnty., Ky.*, 115 F.4th 461, 470 (6th Cir. 2024) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

"There are important differences between" the four paths of municipal liability. *Arrington-Bey v. City of Bedford Heights, Ohio*, 858 F.3d 988, 994 (6th Cir. 2017). Under the first two paths — an official policy and action taken by a municipal policymaker — fault and causation are easier to pin on the municipality. *Id.* The other two paths — failure to train/supervise and custom of tolerance — are more tenuous because the acts of the municipality are further removed from the constitutional injury. *Id.* at 995. Thus, to prevent imposing *respondeat superior* liability, "rigorous requirements of culpability and causation" must be met. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415 (1997). Accordingly, when a plaintiff proceeds down paths three and four, one key requirement is that the municipality must have acted with deliberate indifference.

*Campbell v. Riahi*, 109 F.4th 854, 862 (6th Cir. 2024) (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996), and *Mosier v. Evans*, 90 F.4th 541, 549 (6th Cir. 2024)).

Plaintiff travels paths three (inadequate training) and four (custom of tolerance), and they both lead to a dead end. These are, in essence, inaction theories. *See, e.g.*, *Franklin*, 115 F.4th at 472 (outlining the elements of an "inaction" claim, which includes "the municipality's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official policy of inaction") (cleaned up). These theories require Plaintiff to plead deliberate indifference. *Campbell*, 109 F.4th at 862; *Franklin*, 115 F.4th at 472.

Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs.*, 520 U.S. at 410. "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse . . . .'" *St. John v. Hickey*, 411 F.3d 762, 776 (6th Cir. 2005) (quoting *Fisher*, 398 F.3d at 849). Thus, to avoid dismissal of his custom-of-tolerance theories set forth in Counts IV–X, Plaintiff must allege prior instances of unconstitutional conduct. *See, e.g.*, *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 495 (6th Cir. 2020) (dismissing failure to investigate and discipline claims because prior violations were not alleged); *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 693 (M.D. Tenn. 2020) (dismissing plaintiff's claim based on a custom of tolerance because "he has not alleged a pattern of repeated conduct as required to support municipal liability on this basis"), *aff'd sub nom. Spencer v. City of Henersonville, Tenn.*, No. 20-6168, 2021 WL 8016828 (6th Cir. Oct. 8, 2021); *Stanfield v. City of Lima*, 727 F. App'x 841, 852 (6th Cir. 2018) ("The mere existence of complaints, without more, is not sufficient evidence to allow a reasonable jury

to find the existence of a clear and persistent pattern of illegal activity."); *Wiggins v. Metro. Gov't of Nashville-Davidson Cty., Tennessee*, No. 3:14-CV-01950, 2017 WL 5444741, at *7 (M.D. Tenn. Nov. 14, 2017) (dismissing custom-of-tolerance claim because plaintiff failed to allege prior instances of unconstitutional conduct). This failure to plead prior instances of unconstitutional conduct also dooms Plaintiff's failure-to-train claims. *See Linden v. City of Southfield*, 75 F.4th 597, 605-06 (6th Cir. 2023).

Rather than offering examples of prior failures, or prior instances of other constitutional violations, Plaintiff offers only conclusions. He posits, "Upon information and belief, Metro routinely imposes GPS monitoring without individualized findings, hearings, or ability-to-pay determinations; . . . ." (Compl. Count IV ¶ 85.) The same allegation can be found in Count V for the right to counsel. (*Id.* Count V ¶ 95; and Count VI ¶ 111.) He then claims that Metro Nashville fails to train its officers on (1) the difference between protected speech and unlawful contact and (2) its "long-standing practice" of officers relying on complainants. (*Id.* Count VII ¶¶ 124–26.) Similarly, Plaintiff alleges that "Metro maintains a consistent practice of conditioning citizen access to judicial review on prosecutorial approval." (*Id.* Count VIII ¶ 138.) And that Metro Nashville "failed to train its officers on the constitutional and statutory requirements governing citizen-initiated Rule 3 affidavits." (*Id.* Count IX ¶ 157.) Finally, he alleges that Metro Nashville maintained a variety of customs related to criminal complaints and IRS requirements. (*Id.* Count X ¶ 176.) While there are multiple allegations, they share two common features: they are conclusory and are not backed up by any examples. Plaintiff's failure to link these conclusory allegations to concrete examples of MNPD tolerating prior constitutional violations is fatal to these claims. *Mosier*, 90 F.4th at 549.

## II. PLAINTIFF'S SITUATION IS NOT THE OBVIOUS CASE BECAUSE THE DECISIONS TO ISSUE A WARRANT AND REQUIRE A GPS TRACKING DEVICE WERE MADE BY AN EDUCATED, LICENSED JUDICIAL COMMISSIONER.

For Count VI, violation of Plaintiff's due process rights, Plaintiff tries a different tactic. Again, he reiterates that the failures of Metro Nashville are to impose GPS monitoring without the required notice, lack of written contracts, and lack of training to judicial commissioners. But for Count VI, he appears to be arguing that his is a rare single incident liability case. (Compl. ¶ 113 (citing *City of Canton v. Harris*, 489 U.S. 378, 389–90 (1989).) It is not. Judicial commissioners are licensed attorneys—the same highly trained professionals the Supreme Court has found do not present an obvious risk of constitutional violations. Thus, Count VI must be dismissed.

In *Canton,* the Supreme Court theorized that deliberate indifference could be established based on a single constitutional violation, if a city with an armed police force deployed officers into the public to arrest felons without training on the constitutional limits of using deadly force. 489 U.S. at 389–90. Thereafter, in *Connick v. Thompson,* 563 U.S. 51 (2011), the Supreme Court clarified just how narrow the circumstances are that will support single incident municipal liability. In *Connick,* an assistant district attorney committed a constitutional violation ("*Brady* violation") by failing to disclose a crime report that led to the plaintiff's conviction. 563 U.S. at 54. The district attorney's office did not have a pattern of this type of violation. The plaintiff argued that there was a failure to train on *Brady* nuances that was comparable to a complete lack of training. In rejecting the plaintiff's argument, the Court reasoned that attorneys are highly educated, skilled professionals. *Id.* at 64–67. Thus, "in light of this regime of legal training and professional responsibility, recurring constitutional violations are not the obvious consequence of failing to provide prosecutors with formal in-house training about how to obey the law." *Id.* at 66.

The same is true here. Plaintiff alleges that Metro Nashville "provides no training to magistrates or pretrial personnel on due process requirements or the statutory safeguards governing GPS monitoring." (Compl. ¶ 111.) But judicial commissioners are not lay people. Judicial commissioners possess the qualifications of a judge and must be licensed to practice law. https://gscourt.nashville.gov/departments-services/night-court/[3] (noting that judicial commissioners are an extension of the general sessions court and possess the qualification of judge); Tenn. Code Ann. § 16-15-5005(a)(1) ("[A]ll persons occupying the office of general sessions judge shall be licensed to practice law in this state."). To obtain a law license a person must graduate from college, law school, pass the bar exam, and pass a character and fitness exam. *See generally* TN. Sup. Ct. R. 7 (licensing of attorneys). Put differently, judicial commissioners, like "[a]ttorneys[,] are trained in the law and equipped with the tools to interpret and apply legal principles, understand constitutional limits, and exercise legal judgment." *Connick*, 563 U.S. at 64. Because of that, there is not the "obvious" constitutional danger that the Court alluded to in *Canton*. *Id.* at 67. So Plaintiff cannot rely on *Canton* to save his claim in Count VI.

### III. PLAINTIFF'S CLAIMS ALSO FAIL BECAUSE THEY ARE UNSUPPORTED BY ANY WELL-PLEADED FACTUAL ALLEGATIONS.

In addition to the reasons laid out above, Plaintiff's claims also fail because there are no well-pleaded factual allegations to support what Metro Nashville's training is or what unconstitutional behavior Metro Nashville engaged in. There are no allegations about what training is provided to judicial commissioners, or what additional training should have been done. All Plaintiff offers are conclusory statements that Metro Nashville provides no training. Similarly, there are no allegations about Metro Nashville's other customs or

---

[3] The Court may take judicial notice of the contents of a government website. *Doss v. Corizon*, 636 F. Supp. 3d 807, 810 n.1 (W.D. Mich. 2022) (collecting cases).

explanation of how they are unconstitutional. Thus, Plaintiff fails to state a municipal liability claim.

The Sixth Circuit recently affirmed dismissal of a complaint that failed to marshal any facts in support of the legal conclusions, and it should reach the same result here. *Linden*, 75 F. 4th 597, 606 (6th Cir. 2023). In that case, missing from the complaint were any facts about the content or extent of training that was being challenged. The same is true in Counts IV–X. Even though the Complaint spans more than 200 numbered paragraphs, there is no factual background given on the training or other customs. Plaintiff does not allege that pre-trial monitoring is *per se* unconstitutional. Just that a judicial commissioner got it wrong in his case. But that is not enough. In short, there is nothing substantive to Plaintiff's municipal liability claims in Counts IV–X. Therefore, the claims cannot proceed.

### IV. PLAINTIFF DOES NOT HAVE A CONSTITUTIONAL RIGHT TO HAVE A PERSON PROSECUTED.

Finally, Plaintiff does not have a constitutional right to file criminal charges. In Count IX, Plaintiff claims that Metro Nashville denied his First Amendment right to access to the courts by refusing to allow him to use Tenn. R. Crim. P. 3 to present an affidavit to a magistrate. (Compl. ¶¶ 143–60.) His claim fails, however, because no such constitutional right exists.

The Court should find that Plaintiff's asserted constitutional right does not exist for two reasons. First, the Supreme Court has unequivocally stated: "a private citizen lacks a judicially cognizable interest in the prosecutor or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). So while Plaintiff does have access to the courts, it does not extend to the right to have a prosecution initiated. *Mooneyhan v. Hawkins*, 129 F.3d 1267, 1997 WL 685423, at *7 (6th Cir. Oct. 29, 1997).

Second, the First Amendment does not protect the right to petition the courts on private matters. Plaintiff sought access for a private matter—exposing Withers as a liar—not on a matter of public concern. The Petition Clause of the First Amendment protects the right to petition to matters of public concern. *Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 426 (6th Cir. 2002) ("[A]ctions under the Petition Clause are limited to matters of public concern."). Plaintiff's quest to hold Withers accountable for her (alleged) lies is not a matter of public concern, it is personal. *Id.* (a plaintiff's request for an order of protection was personal, not public, notwithstanding that domestic violence is a matter of public concern).

Here, Plaintiff seeks to vindicate the right to initiate charges against Withers based on their personal history. But that right does not exist. Count IX should be dismissed.

## CONCLUSION

At base, "if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). But *Monell* requires more. *Monell* requires an "affirmative link between the policy and the particular constitutional violation alleged." *Id.* Plaintiff fails to plead a viable municipal liability theory for any Count in his Complaint. All Counts rely on an inaction theory, and those claims must be dismissed because Plaintiff omits any allegations about prior constitutional violations. That dooms an inaction theory. And this is not the rare, obvious case where Plaintiff is excused from pleading prior constitutional violations. Regardless of theory, Plaintiff's municipal liability claims fail because they are unsupported by factual allegations. Finally, Count IX fails for the independent reason that the constitutional right that Plaintiff seeks to vindicate does not exist. Metro Nashville therefore moves that all claims and all theories be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ (#9949)
DIRECTOR OF LAW

*/s/ Melissa S. Roberge*
Melissa S. Roberge (#26230)
  SENIOR COUNSEL
Michael R. Dohn (#37535)
  ASSISTANT METROPOLITAN ATTORNEY
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
melissa.roberge@nashville.gov
michael.dohn@nashville.gov