# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **MARTIN SCOTT,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:25-cv-01393 |
| ) | JUDGE TRAUGER |
| **METRO. GOV'T. OF NASHVILLE** ) | **JURY DEMAND** |
| **AND DAVIDSON COUNTY,** ) | |
| ) | |
| **TRACKING SOLUTIONS, INC.,** ) | |
| ) | |
| **MALLORY WITHERS,** ) | |
| *in her individual capacity* ) | |
| ) | |
| **BRIAN CAVALIERE,** ) | |
| *in his individual capacity* ) | |
| ) | |
| **TYLER LEWIS,** ) | |
| *in his individual capacity* ) | |
| ) | |
| Defendants. ) | |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS TYLER LEWIS AND BRIAN CAVALIERE'S MOTION TO DISMISS**

---

Plaintiff Martin Scott responds in opposition to Defendants Tyler Lewis and Brian Cavaliere's Motion to Dismiss (Doc. No. 34). The motion should be denied. In the alternative, Plaintiff will inquire whether any other party opposes amendment of the complaint and, if necessary, will move for leave to file a proposed Second Amended Complaint addressing Defendants' asserted pleading-specificity objections without changing the core claims, parties, or factual theory of the case.

1

# INTRODUCTION

Defendants' motion depends on a straw man. Plaintiff does not claim a free-standing constitutional right to dictate the manner of a police investigation. He claims the Fourth Amendment right not to be arrested and prosecuted on sworn warrant affidavits that were materially false or misleading when corrected for facts those affidavits omitted. The omitted facts were not collateral investigative leads. For Detective Lewis, the omitted December 17 mailing date meant that the alleged 1099 communication occurred before Plaintiff's December 20 arrest and before the no-contact bond condition existed. For Detective Cavaliere, the omitted facts meant that the 1099 allegation suffered the same defect, the Instagram allegation lacked authorship or contact, and the dating-app allegation was untethered to any court-imposed one-mile restriction. Corrected for those omissions, neither January affidavit established probable cause.

Defendants also misstate the First Amended Complaint. Count I is not an undifferentiated challenge to an entire criminal case. Paragraphs 71 through 76 identify the relevant affidavits and charges, including Lewis's January 17, 2025 no-contact bond-condition warrant and Cavaliere's January 20, 2025 aggravated-stalking warrant. Paragraphs 77 through 86 then allege the absence of probable cause for the categories of charged conduct, and paragraph 87 alleges the resulting deprivation of liberty. That is enough at the pleading stage, particularly after *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562-63 (2024), which requires a charge-specific analysis and rejects the premise that probable cause for one charge categorically defeats a malicious-prosecution claim based on another unsupported charge.

At most, Defendants have identified issues for discovery. They have not shown that the First Amended Complaint pleads itself out of court. Lewis and Cavaliere were not passive

mailboxes for Withers's accusations. They put their own names on sworn affidavits, supplied the formal criminal process that caused Plaintiff's second arrest, and carried forward a materially incomplete narrative that converted tax-reporting documents and unverified digital speculation into criminal charges.

## FACTUAL BACKGROUND RELEVANT TO THE DETECTIVES' MOTION

The First Amended Complaint alleges that Plaintiff and Withers had a paid sexual arrangement that deteriorated after Plaintiff notified Withers that he would issue IRS Forms 1099 reflecting payments made during the arrangement.[1] Internal police records recognized that the dispute involved money, gifts, and tax reporting.[2] The warrant materials nevertheless treated the Forms 1099 as criminal contact.[3]

The second Form 1099 is central to the January warrants. The First Amended Complaint alleges that the 2024 Form 1099 was mailed by a third-party vendor on December 17, 2024, before Plaintiff's December 20 arrest and before any no-contact bond condition existed.[4] Withers received the already-mailed form on December 26.[5] Detective Lewis then swore out a January 17, 2025 affidavit alleging a no-contact bond violation based on that receipt, but he did not disclose that the form had been mailed before bond conditions existed or that it had been sent by a third-party vendor.[6]

Detective Cavaliere swore out the January 20, 2025 aggravated-stalking affidavit. The First Amended Complaint alleges that Cavaliere proceeded without proof that Plaintiff created or

---

[1] First Am. Compl., Doc. 33 ¶¶ 14, 17-19.
[2] *Id*. at ¶ 20.
[3] *Id*. at ¶¶ 26-31, 67, 79-81, 94-105.
[4] *Id*. at ¶ 28.
[5] *Id*.
[6] *Id*. at ¶¶ 29-31, 74, 80-81, 99-101.

3

operated the Instagram account, without any allegation that the account messaged or contacted Withers, without verifying the dating application's proximity display, and without verifying that Plaintiff's bond order imposed any one-mile geographic restriction.[7] The First Amended Complaint also alleges that the written bond order imposed no exclusion zones or one-mile restrictions.[8]

| Detective / charge pleaded | Corrected probable-cause problem alleged in the First Amended Complaint |
|---|---|
| Detective Tyler Lewis - January 17, 2025 warrant for violation of the no-contact domestic-violence bond condition (GS1059179). | The affidavit treated Withers's December 26 receipt of the 2024 Form 1099 as a knowing post-bond communication, but omitted that the form was mailed by a third-party vendor on December 17, before Plaintiff's December 20 arrest and before any no-contact bond condition existed. |
| Detective Brian Cavaliere - January 20, 2025 aggravated-stalking warrant (GS1059484). | The affidavit relied on the same 1099 narrative and on alleged Instagram and dating-application facts, but omitted that the 1099 had already been mailed before bond, that the Instagram account had not contacted Withers and was not tied to Plaintiff, and that the bond order did not impose a one-mile exclusion zone. |

Defendants fault Plaintiff for not identifying which MNPD officers assisted Withers with the December 2024 warrants. Plaintiff does not need those unknown officers to state claims against Lewis and Cavaliere for the January warrants they personally swore. Nor should Defendants be permitted to use Metro's control over the missing information as a pleading weapon. Plaintiff submitted pre-litigation public-records requests for the body-worn-camera footage that would show which officers interacted with Withers, but Metro has not produced the footage pursuant to those public records request. In fact, it has been over a year since the first requests for body-worn-camera footage were submitted. If the Court concludes that those

---

[7] *Id*. at ¶¶ 32-33, 75, 82-83, 102-103.
[8] *Id*. at ¶¶ 35, 39-41.

4

identities matter to any claim or amendment, the appropriate remedy is discovery or leave to amend - not dismissal of the detective-specific January-warrant claims already pleaded.

## LEGAL STANDARD

To survive Rule 12(b)(6) dismissal, a complaint must contain factual allegations sufficient to state a claim that is plausible on its face. In deciding that question, the Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor.[9] A complaint need not prove its claims or negate anticipated defenses at the pleading stage.[10] The question here is whether the First Amended Complaint plausibly alleges that Defendants Lewis and Cavaliere made, influenced, or participated in criminal proceedings without probable cause, caused a deprivation of liberty pursuant to legal process, and that the proceedings terminated in Plaintiff's favor.[11]

Qualified immunity does not alter that pleading-stage standard. Although Plaintiff ultimately bears the burden of showing that Defendants are not entitled to qualified immunity, "that burden is not high at the 12(b)(6) stage: Reading the complaint in the light most favorable to the plaintiff, it need only be 'plausible' that an official's acts violated a clearly established constitutional right."[12] And although qualified immunity may be raised on a motion to dismiss, "it is generally inappropriate . . . to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."[13] As the Sixth Circuit has repeatedly explained, an officer's entitlement to qualified

---

[9] See *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007).

[10] See *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

[11] See *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010); *King v. Harwood*, 852 F.3d 568, 582–83 (6th Cir. 2017).

[12] *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).

[13] *Id*. (quoting *Anders v. Cuevas*, 984 F.3d 1166, 1175 (6th Cir. 2021)).

immunity is a threshold issue to be resolved at the earliest appropriate point, but "that point is usually summary judgment and not dismissal under Rule 12," because factual development is "frequently necessary to decide whether the official's actions violated clearly established law."[14]

That distinction matters here. Defendants' qualified-immunity argument depends on recasting the First Amended Complaint as alleging only negligent investigation or disagreement with investigative methods.[15] But the First Amended Complaint alleges more: that Defendants Lewis and Cavaliere swore arrest-warrant affidavits that omitted objective, material facts necessary to the probable-cause determination.[16] The Sixth Circuit has long recognized that an officer violates clearly established Fourth Amendment law when he knowingly or recklessly includes false statements or omits material facts from a warrant affidavit and those misrepresentations or omissions are necessary to probable cause.[17] Accordingly, Defendants are not entitled to dismissal at the pleading stage by disputing Plaintiff's factual allegations, minimizing the omitted facts, or characterizing the claims as mere dissatisfaction with the investigation.

---

[14] *Id*. (quoting *Anders*, 984 F.3d at 1175); see also *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015).

[15] See Defs.' Mot. to Dismiss, Doc. 34, PageID ## 746–47, 750–52.

[16] See First Am. Compl., Doc. 33 ¶¶ 81–86, 96–104.

[17] See *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006); *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003); *Wesley*, 779 F.3d at 428–33; *King*, 852 F.3d at 582–83.

**ARGUMENT**

I. **The First Amended Complaint ties the malicious-prosecution claim to specific charges and specific detectives.**

Defendants assert that Plaintiff "does not tie the malicious prosecution claim to any single criminal charge."[18] That is incorrect. Paragraphs 71 through 76 of the First Amended Complaint identify the affidavits and charging instruments by date and affiant: Withers on December 3, Withers on December 23, Lewis on January 17, and Cavaliere on January 20. The claims against Lewis and Cavaliere survive at least as to the two January warrants they personally swore. The First Amended Complaint alleges that Lewis swore the January 17 no-contact bond-condition warrant, Cavaliere swore the January 20 aggravated-stalking warrant, and both warrants directly resulted in Plaintiff's January 29 arrest and continuing liberty restraints.[19]

*Chiaverini v. City of Napoleon* confirms the proper framework. The Court asks whether a particular charge lacked probable cause and caused or prolonged a seizure; the existence of another charge with probable cause is not a categorical bar.[20] Thus, even if Defendants could show probable cause for some charge in the broader criminal case, that would not defeat Plaintiff's claim based on Lewis's unsupported January 17 charge or Cavaliere's unsupported January 20 charge. The analysis is charge-specific, and the First Amended Complaint provides the charge-specific allegations required at this stage.

Defendants are correct only in the narrow sense that the First Amended Complaint does not allege that Lewis or Cavaliere personally swore the December 2024 warrants. Plaintiff does not need that allegation to hold them liable for the January process they did initiate. The December allegations still matter as context. The January warrants did not arise in a vacuum.

[18] Defs.' Mot. to Dismiss, Doc. 34, at 7, PageID 745.
[19] First Am. Compl., Doc. 33 ¶¶ 29, 33-34, 71-76, 87.
[20] *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562-63 (2024).

7

They incorporated and carried forward the same 1099-as-criminal-contact narrative, and that narrative is central to the recklessness and materiality analysis. The detectives cannot insulate their January affidavits by pretending that the 1099 theory was merely "background" when their own warrant narratives used it as criminal evidence.[21]

## II. Count I plausibly alleges that Lewis and Cavaliere made, influenced, or participated in criminal proceedings.

A defendant participates in a prosecution when he knowingly or recklessly makes false statements or material omissions in reports or affidavits used to secure legal process.[22] That is exactly what the First Amended Complaint alleges. Lewis and Cavaliere did not merely receive a report from Withers. They swore affidavits that supplied the formal probable-cause basis for Plaintiff's second arrest.[23]

Defendants repeatedly re-label the claim as one for a "better investigation," but Plaintiff does not allege that the Constitution required Lewis and Cavaliere to conduct a perfect investigation, interview every witness, or follow Plaintiff's preferred investigative steps. Plaintiff alleges that the detectives could not swear to probable cause while omitting objective facts that negated essential predicates of the charged offenses. The distinction is dispositive. The Sixth Circuit recognizes that an officer need not conduct a mini-trial before seeking a warrant, but he also may not "turn a blind eye" to known or apparent exculpatory facts, nor may he omit facts that a magistrate would want to know before finding probable cause.[24]

---

[21] See Ex. A - Criminal Warrants.

[22] See *Gregory v. City of Louisville*, 444 F.3d 725, 758 (6th Cir. 2006); *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003); *Wesley*, 779 F.3d at 428–33; *King*, 852 F.3d at 582–83.

[23] First Am. Compl. ¶¶ 29, 33-34, 71-76, 96-105.

[24] See *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000); *Ahlers v. Schebil*, 188 F.3d 365, 372 (6th Cir. 1999); *Wesley*, 779 F.3d at 429-33.

**A. Lewis's corrected affidavit would not establish probable cause.**

Lewis's warrant depended on treating Withers's December 26 receipt of the 2024 Form 1099 as a knowing post-bond no-contact violation. The First Amended Complaint alleges the dispositive omitted fact: the form had been mailed by a third-party vendor on December 17, before Plaintiff's December 20 arrest and before any no-contact bond condition existed.[25] Tennessee law makes it an offense to knowingly violate a no-contact order issued before release on bond.[26] A document placed in the mail before the order existed cannot plausibly be a knowing violation of that later order unless the affidavit supplies facts showing some later intentional act by Plaintiff. Lewis's affidavit did not.

Corrected for the omitted facts, Lewis's affidavit would have said: the 2024 Form 1099 was generated and mailed by a third-party tax-reporting vendor on December 17, 2024; that mailing occurred before Plaintiff's December 20 arrest and before the no-contact bond condition existed; Withers received the already-mailed document on December 26; and Lewis had no facts showing that Plaintiff knowingly initiated any post-bond communication. That corrected affidavit would not establish probable cause for a knowing no-contact violation.

This was not an omission about a peripheral investigative lead. It was the temporal fact that determined whether the offense could exist at all. If the alleged criminal act was the mailing, the mailing date mattered. If the alleged criminal act was receipt, the affidavit still needed facts showing that Plaintiff knowingly caused a post-order communication, rather than that a third-party vendor completed delivery of a document already mailed before the order. A reasonable magistrate would want those facts before finding probable cause.

---

[25] First Am. Compl. ¶¶ 28-31, 80-81, 99-101.
[26] Tenn. Code Ann. § 39-13-113(i)(1).

## B. Cavaliere's corrected affidavit would not establish probable cause.

Defendants describe Cavaliere's warrant as if it rested only on Instagram and a dating application. That description is incomplete. The First Amended Complaint alleges that the 1099 allegations became the common thread running through the charging instruments and that Cavaliere incorporated the same 1099-based narrative.[27] Cavaliere's aggravated-stalking theory therefore suffered from the same defect as Lewis's no-contact theory: the 2024 Form 1099 had already been mailed before Plaintiff was arrested and before bond conditions existed.

The remaining allegations do not cure the defect. Tennessee stalking requires a willful course of conduct involving repeated or continuing harassment, and aggravated stalking requires stalking plus an aggravating condition, such as knowingly violating a court-imposed prohibition of conduct toward the victim.[28] The First Amended Complaint alleges that the Instagram account did not message, notify, tag, or otherwise contact Withers; that Withers found the account herself; and that Cavaliere had no proof identifying Plaintiff as the creator or operator of the account.[29] The First Amended Complaint also alleges that the dating-application proximity display was not independently verified and, more importantly, that Plaintiff's written bond order imposed no one-mile exclusion zone.[30]

Corrected for those omissions, Cavaliere's affidavit would have said: the 1099 had already been mailed by a third-party vendor before bond; the Instagram account had not contacted Withers and was not shown to belong to Plaintiff; the dating-app proximity display had not been verified; and the written bond order did not impose a one-mile restriction. Those facts

---

[27] First Am. Compl. ¶¶ 67, 77, 80, 94-105.
[28] Tenn. Code Ann. § 39-17-315.
[29] First Am. Compl. ¶¶ 32-33, 82, 94, 103.
[30] *Id*. ¶¶ 33, 35, 39-41, 82-83, 102.

do not amount to probable cause for aggravated stalking. They are, at most, unverified digital speculation plus a non-criminal tax-document delivery.

### III.    <u>Defendants' victim-statement cases do not allow officers to launder a complainant's narrative into sworn probable cause.</u>

Defendants argue that Lewis and Cavaliere "simply reported information from an alleged victim to a neutral magistrate" and cite *Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003) for the proposition that "victim's statements are enough to establish probable cause."[31] That rule is real, but it has limits. A victim or eyewitness statement can support probable cause only when the information is reasonably trustworthy and there is no apparent reason to believe the witness is lying, mistaken, or unreliable.[32] Probable cause requires the totality of circumstances, including both inculpatory and exculpatory information.[33]

Withers could report that she received mail. But she could not supply the legal predicate that Plaintiff knowingly violated a later bond order unless the mailing date and source supported that inference. Withers could report that she saw an Instagram profile. But that did not establish Plaintiff's authorship, use, contact, surveillance, or threats. Withers could report that a dating application displayed Plaintiff as approximately one mile away. But that did not establish a crime unless a court had actually imposed a one-mile exclusion zone or the proximity otherwise satisfied the elements of stalking. The First Amended Complaint alleges that those objective predicates were absent, omitted, or unverified.

That is why Defendants' "failure to investigate" framing misses the point. Plaintiff is not asking the Court to constitutionalize best police practices. He is asking the Court to apply *Franks*, *Gregory*, *Wesley*, *Sykes*, and *King* to sworn affidavits that omitted element-negating

---

[31] Defs.' Mot. to Dismiss, Doc. 34, at 9, PageID 747.

[32] *Wesley*, 779 F.3d at 429-30; *Clark v. Abdallah*, 131 F.4th 432, 453 (6th Cir. 2025).

[33] *Gardenhire*, 205 F.3d at 318.

facts. The law does not permit an officer to avoid constitutional scrutiny by attributing a misleading criminal narrative to a complainant and then swearing that narrative into formal process without objective analysis of facts necessary to probable cause.

### IV.    *Garner* and *Johnson* do not support dismissal.

*Garner v. Harrod* and *Johnson v. Moseley* support only the unremarkable proposition that negligent or incompetent investigation, standing alone, is not a constitutional violation. They do not support the proposition that a detective may make deliberate or reckless material omissions in a warrant affidavit.

*Garner* involved a due-process theory that the plaintiffs had a constitutional right to a minimally competent investigation.[34] The Sixth Circuit rejected that broad theory, but *Garner* itself recognized the separate rule applicable here: a warrant or later process does not shield an officer who deliberately or recklessly supplies false or misleading material information.[35] *Garner* is also procedurally and factually different. It was decided at summary judgment after grand-jury indictments, and the Sixth Circuit held that the plaintiffs failed to present evidence that the defendants deliberately or recklessly supplied false information, including false testimony, to the grand jury.[36] Here, by contrast, the First Amended Complaint identifies the affidavits Lewis and Cavaliere personally swore and the objective facts omitted from those affidavits.

*Johnson* is equally distinguishable. There, the complaint alleged in collective terms that officers should have known there were reasons to doubt a complainant if a proper investigation had been conducted.[37] The Sixth Circuit emphasized that the complaint did not allege that the complainant's accusations were false, did not allege that the officers actually knew of reasons to

---

[34] *Garner v. Harrod*, 656 F. App'x 755, 760-61 (6th Cir. 2016).
[35] *Id*. at 759.
[36] *Garner*, 656 F. App'x at 758–60.
[37] *Johnson v. Moseley,* 790 F.3d 649, 656 (6th Cir. 2015).

doubt probable cause, and did not allege that the officers participated in the prosecution in a false or misleading way.[38] The First Amended Complaint here alleges the missing facts *Johnson* lacked: Withers's narrative was materially false or incomplete; Lewis and Cavaliere swore their own affidavits; the affidavits omitted objective facts that negated probable cause; and those affidavits caused Plaintiff's January 29 arrest and continuing liberty restraints.[39]

Defendants' blameworthiness argument fails for the same reason.[40] The First Amended Complaint does not rely on bare labels such as "reckless disregard"; it pleads the factual context showing why the detectives' conduct was blameworthy.[41] Lewis swore to probable cause for a knowing post-bond no-contact violation without first ascertaining the fact necessary to make that charge possible: whether the alleged communication was mailed after the bond condition existed.[42] The First Amended Complaint alleges it was not.[43] Cavaliere likewise swore to probable cause for aggravated stalking without facts tying Plaintiff to the Instagram account, without any communication from that account to Withers, and without any court-imposed one-mile geographic restriction to give the dating-app allegation criminal significance.[44] The blameworthy conduct is not that the detectives investigated poorly; it is that they affirmatively placed their names on sworn affidavits asserting probable cause while lacking—and omitting—facts necessary to establish probable cause. That is more than negligence or innocent mistake. It is, at minimum, reckless participation in the initiation of criminal process.[45]

---

[38] *Id*. at 656-57.

[39] See First Am. Compl., Doc. 33 ¶¶ 29, 32–34, 63, 71–76, 80–87, 94–96, 105.

[40] Defs.' Mot. to Dismiss, Doc. 34, at 9, PageID 747.

[41] See First Am. Compl., Doc. 33 ¶¶ 28–34, 80–84, 96–104.

[42] *Id.* at 33 ¶¶ 28–31, 74, 80–81, 99–101.

[43] *Id.* at 33 ¶¶ 28–29, 80–81, 99–101.

[44] *Id.* at 33 ¶¶ 32–33, 39–41, 75, 82–84, 102–03.

[45] See *Gregory*, 444 F.3d at 758; *Sykes*, 625 F.3d at 314–17; *Wesley*, 779 F.3d at 429–33; *King*, 852 F.3d at 582–83.

Defendants therefore overread their authorities. *Garner* and *Johnson* may defeat a claim based solely on negligent investigation. They do not defeat a claim based on materially misleading sworn affidavits.

## V.  Plaintiff's allegations regarding his attempts to present affidavits against Withers are relevant to Cavaliere's non-neutral participation.

Defendants mischaracterize the point of these allegations. Plaintiff does not claim a constitutional right to compel the prosecution of Withers.[46] Nor does Plaintiff contend that the refusal to prosecute Withers, standing alone, proves that Cavaliere initiated Plaintiff's prosecution. The point is narrower and directly responsive to Defendants' argument that Cavaliere was merely a passive or neutral conduit for Withers's allegations.

The First Amended Complaint plausibly alleges that Cavaliere was not neutral. After Plaintiff's preliminary hearing, Plaintiff presented affidavits alleging that Withers fabricated evidence and made false reports.[47] Rather than ensuring that Plaintiff's sworn allegations were presented to a neutral magistrate, Cavaliere communicated with the District Attorney's Office about Plaintiff's efforts, stated that Plaintiff had been placed on Night Court's "radar" to ensure no warrants would be obtained against Withers, and received a response asking him to continue documenting Plaintiff's attempts and suggesting that the State might pursue more warrants against Plaintiff if he continued.[48]

Those facts matter because Defendants themselves argue that Plaintiff must plead blameworthy participation beyond passive or neutral involvement.[49] Cavaliere's alleged conduct

---

[46] See *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).
[47] See First Am. Compl., Doc. 33 ¶¶ 43–44.
[48] First Am. Compl., Doc. 33 ¶¶ 43–48.
[49] See Defs.' Mot. to Dismiss, Doc. 34, at 9–10, PageID 747–48.

supports the reasonable inference that he was not a neutral recorder of facts, but an officer aligned with Withers's criminal narrative and hostile to competing evidence that she fabricated or falsely reported facts. That partiality is relevant to whether Cavaliere recklessly accepted Withers's January 20 accusations, omitted facts negating probable cause, and swore an unfounded aggravated-stalking affidavit.

The relevance is especially clear because the January 20 aggravated-stalking warrant depended on unverified accusations supplied by Withers: an Instagram account not shown to belong to Plaintiff or to have contacted Withers, a dating-application proximity allegation untethered to any court-imposed one-mile restriction, and the same 1099 narrative that suffered from the pre-bond mailing defect.[50] Cavaliere's later effort to keep Withers insulated from neutral judicial review does not create liability by itself, but it reinforces the First Amended Complaint's plausible allegation that his earlier warrant was not the product of neutral probable-cause assessment.

**VI.** **The preliminary hearing and indictment do not break causation at the pleading stage.**

Defendants argue that the preliminary-hearing probable-cause finding and true bill defeat the claim against Lewis. That argument assumes the independence that the First Amended Complaint disputes. A later probable-cause determination breaks the causal chain only if it is independent of the officer's misrepresentations, omissions, or other wrongdoing.[51] The First Amended Complaint alleges the opposite: Lewis's materially incomplete 1099 narrative supplied the basis for the warrant and remained central to the later 1099-based bind-over and indictment.[52]

---

[50] See First Am. Compl., Doc. 33 ¶¶ 32–33, 82–84, 102–03.
[51] See *Howell v. Cox*, 758 F. App'x 480, 483 (6th Cir. 2018).
[52] See First Am. Compl., Doc. 33 ¶¶ 29–31, 54–55, 80–81, 85, 99–105.

15

Sixth Circuit law does not allow an officer to cleanse tainted process by pointing to later proceedings that relied on the same taint. The relevant issue was not simply whether a court later found probable cause; it was whether the officers misstated or omitted material facts to create probable cause in the first place.[53] In *King*, the court likewise held that a grand-jury indictment does not conclusively bar a malicious-prosecution claim where law enforcement set the prosecution in motion through false statements, fabricated evidence, or material omissions outside the grand-jury testimony itself.[54]

Plaintiff does not seek to impose liability on Lewis for immunized grand-jury testimony.[55] The actionable conduct is the pre-grand-jury sworn warrant affidavit and the materially incomplete 1099 narrative Lewis used to obtain legal process.[56] The later preliminary-hearing and indictment proceedings cannot defeat the claim at Rule 12 where the First Amended Complaint plausibly alleges that the same materially incomplete 1099 narrative supplied the basis for the January 17 warrant and the later 1099-based charges.[57]

The argument is even weaker as to Cavaliere. The First Amended Complaint alleges that the aggravated-stalking charge tied to Cavaliere's January 20 warrant was dismissed in General Sessions Court and was not returned by the grand jury.[58] Defendants cannot rely on an indictment presumption for a charge that was not indicted.

---

[53] *Wesley*, 779 F.3d at 429–33.
[54] *King*, 852 F.3d at 587–89.
[55] See *Rehberg v. Paulk*, 566 U.S. 356, 369-70 (2012).
[56] See First Am. Compl., Doc. 33 ¶¶ 29–31, 74, 80–81, 99–101, 105.
[57] See *Id*. at ¶¶ 29–31, 54–55, 80–81, 85, 99–105.
[58] See *Id*. at ¶¶ 85, 131.

16

**VII.** **Count II states, at minimum, a Fourth Amendment manufactured-probable-cause claim.**

Defendants argue that Count II merely repackages Count I and that "fabrication" requires detective-created false evidence in the narrowest sense. That argument is too narrow. Count II does not depend on the proposition that the detectives invented every falsehood themselves. It alleges that they adopted Withers's materially false or incomplete narrative, laundered it into sworn warrant affidavits, and used it to obtain legal process without first possessing reasonable proof of the facts necessary to satisfy the elements of the charged offenses.[59]

That is not a challenge to the detectives' preferred investigative methods. Plaintiff does not claim a constitutional right to dictate how Lewis or Cavaliere investigated Withers's accusations. He claims a Fourth Amendment right not to be arrested and prosecuted on manufactured probable cause.[60] The constitutional problem is not that the detectives failed to investigate in Plaintiff's preferred manner; it is that they swore criminal allegations into formal process without reasonable proof of threshold facts necessary to probable cause.

Lewis's affidavit illustrates the point. To accuse Plaintiff of knowingly violating a no-contact bond condition by sending a Form 1099, Lewis needed reasonably trustworthy information that the alleged communication was sent after the bond condition existed. The First Amended Complaint alleges the opposite: the 2024 Form 1099 was mailed by a third-party vendor on December 17, 2024, before Plaintiff's December 20 arrest and before any no-contact bond condition attached.[61] Lewis also lacked proof that Plaintiff personally mailed the document rather than that a third-party tax-reporting vendor generated and mailed it. Those facts were not peripheral. They determined whether the alleged offense could have occurred at all. By

---

[59] See First Am. Compl., Doc. 33 ¶¶ 63, 66–67, 71–76, 80–84, 96–105.
[60] See *Codrington v. Dolak*, 142 F.4th 884, 893 (6th Cir. 2025); *Clark*, 131 F.4th at 447; *King*, 852 F.3d at 587-91.
[61] First Am. Compl., Doc. 33 ¶¶ 28–31, 80–81, 99–101.

17

recklessly failing to ascertain and disclose those threshold facts, Lewis converted a pre-bond vendor mailing into a knowing post-bond violation.

Cavaliere's affidavit suffers from the same defect. The First Amended Complaint alleges that Cavaliere relied on the same defective 1099 narrative, then added digital allegations that lacked the factual predicates necessary for aggravated stalking.[62] Cavaliere had no proof tying Plaintiff to the Instagram account, no message or communication from that account to Withers, and no verified conduct directed toward Withers through the account.[63] He also had no court-imposed one-mile geographic restriction to support the dating-application proximity allegation.[64] Those omissions matter because unverified authorship, no contact, and no geographic restriction do not establish aggravated stalking. They establish suspicion, not probable cause based on specific articulable facts.

Defendants' reliance on *Stemler* and *Mills* does not resolve Count II because those cases articulate the due-process/trial-fairness formulation of a fabrication claim. Plaintiff's criminal case did not proceed to trial.[65] Where a plaintiff was arrested and charged based on fabricated evidence but never tried or convicted, the claim is properly understood under the Fourth Amendment.[66] Under that Fourth Amendment framework, the question is whether fabricated or materially false evidence was presented to a grand jury or to a judge determining probable cause.[67]

That is what the First Amended Complaint alleges. The fabricated or manufactured evidence was not limited to a planted document or an invented quotation. It was the materially

---

[62] See First Am. Compl., Doc. 33 ¶¶ 67, 75, 80, 82–84, 102–03.

[63] *Id.* at ¶¶ 32–33, 82, 94, 103.

[64] *Id.* at ¶¶ 35, 39–41, 83, 102.

[65] *Id.* at 33 ¶¶ 3, 56, 107.

[66] *Codrington*, 142 F.4th at 893.

[67] *Id.*; *Clark*, 131 F.4th at 447.

false probable-cause narrative placed into sworn affidavits: that Plaintiff knowingly communicated with Withers after bond by sending a 1099, when the pleaded facts show the document had already been mailed by a third-party vendor before bond conditions existed; and that Plaintiff committed aggravated stalking through an Instagram account and dating-app radius, when the pleaded facts show no verified authorship, no communication, no directed conduct, and no one-mile restriction.[68]

Nor can Defendants avoid Count II by saying Withers supplied the original falsehoods. A police officer cannot escape liability by adopting a complainant's accusation, stripping it of facts that defeat probable cause, and presenting the resulting narrative to a magistrate as sworn probable cause.[69] The First Amended Complaint alleges that Lewis and Cavaliere did exactly that. They did not merely receive Withers's accusations; they placed their own names on affidavits, swore to criminal significance, and caused legal process to issue.

At minimum, Count II states a Fourth Amendment manufactured-probable-cause theory. If the Court concludes that Count II overlaps with Count I, that is not a reason to dismiss the underlying allegations with prejudice. The same allegations support the malicious-prosecution claim by showing how materially false or incomplete affidavits manufactured probable cause. Alternatively, if Plaintiff does not obtain the written consent of all opposing parties to file the proposed Second Amended Complaint, Plaintiff will file a separate motion for leave to amend Count II to clarify that it proceeds under the Fourth Amendment, not a post-trial Fourteenth Amendment theory, and to plead any additional public-record facts the Court deems necessary regarding presentation of the 1099 narrative to probable-cause bodies.

---

[68] See First Am. Compl., Doc. 33 ¶¶ 29–33, 35, 39–41, 80–84, 91, 94–105.
[69] See *Gregory*, 444 F.3d at 758; *Sykes*, 625 F.3d at 314–17; *Wesley*, 779 F.3d at 429–33; *King*, 852 F.3d 582–83, 587–88.

## VIII. <u>Qualified immunity should be denied.</u>

Defendants are not entitled to qualified immunity because the First Amended Complaint plausibly alleges that Lewis and Cavaliere violated Plaintiff's clearly established Fourth Amendment right not to be arrested and prosecuted pursuant to legal process obtained through deliberately or recklessly false or misleading warrant affidavits. The First Amended Complaint alleges that both detectives swore affidavits omitting objective facts necessary to probable cause, and that those omissions caused Plaintiff's January 29 arrest and resulting liberty restraints.[70] That is a constitutional violation under *Gregory*, *Vakilian*, *Wesley*, *Sykes*, and *King*, and it was clearly established long before 2025.[71]

First, the First Amended Complaint plausibly alleges that Lewis and Cavaliere violated Plaintiff's Fourth Amendment rights. Lewis swore to a knowing post-bond no-contact violation based on Withers's December 26 receipt of the 2024 Form 1099, but the First Amended Complaint alleges that the document had been generated and mailed by a third-party vendor on December 17—before Plaintiff's December 20 arrest and before any no-contact bond condition existed.[72] In order to find probable cause in good faith for a bond violation, Lewis had to have reasonably trustworthy information that the alleged communication was sent after the bond condition attached. He omitted the very fact necessary to that determination. Corrected for that omission, the affidavit would not establish probable cause because it would show only that Withers received an already-mailed tax document after bond conditions were imposed, not that Plaintiff knowingly initiated a prohibited post-bond communication.

---

[70] See First Am. Compl., Doc. 33 ¶¶ 29, 32–34, 71–76, 80–87, 96–105, 108.
[71] See *Gregory*, 444 F.3d at 758; *Vakilian*, 335 F.3d at 517; *Wesley*, 779 F.3d at 428–33; *Sykes*, 625 F.3d at 308–09, 316–17; *King*, 852 F.3d at 582–83.
[72] First Am. Compl., Doc. 33 ¶¶ 28–31, 80–81, 99–101.

20

Cavaliere's affidavit suffers from the same problem. The First Amended Complaint alleges that his aggravated-stalking affidavit incorporated the same defective 1099 narrative and added unverified digital allegations that did not establish the elements of aggravated stalking.[73] The Instagram allegation lacked facts tying Plaintiff to the account or showing that the account contacted, messaged, threatened, surveilled, or otherwise directed conduct toward Withers.[74] The dating-application allegation likewise lacked the necessary legal predicate because the written bond order imposed no one-mile exclusion zone or comparable geographic restriction.[75] Corrected for those omissions, Cavaliere's affidavit would not establish probable cause for aggravated stalking; it would show a pre-bond vendor mailing, an unattributed online profile, and an unverified proximity display untethered to any court-imposed restriction.

Second, the right was clearly established. Plaintiff need not identify a prior case involving a Form 1099-NEC, an Instagram profile, and a dating-application radius. The clearly established rule is the warrant-affidavit rule: an officer may not deliberately or recklessly make material false statements or omissions to obtain legal process.[76] Probable cause must be based on reasonably trustworthy information and must account for the totality of the circumstances, including both inculpatory and exculpatory facts.[77] An officer may not "turn a blind eye" to facts favorable to the accused or omit facts that any reasonable officer would understand to be "the kind of thing the judge would wish to know."[78]

That rule gave Lewis and Cavaliere fair notice. No reasonable officer needed a case with identical facts to understand that a post-bond no-contact violation requires facts showing a

---

[73] See First Am. Compl., Doc. 33 ¶¶ 67, 75, 80, 82–84, 102–03.
[74] First Am. Compl., Doc. 33 ¶¶ 32–33, 82, 94, 103.
[75] Id. ¶¶ 35, 39–41, 83, 102.
[76] *Gregory*, 444 F.3d at 758; *Vakilian*, 335 F.3d at 517; *Wesley*, 779 F.3d at 428–33; *King*, 852 F.3d at 582–83.
[77] *Wesley*, 779 F.3d at 429.
[78] *Id*. at 429, 433.

post-bond communication. No reasonable officer needed a dating-app case to understand that proximity is not criminal without an actual geographic restriction or facts otherwise satisfying the stalking statute. And no reasonable officer needed an Instagram case to understand that an online profile does not establish aggravated stalking absent facts tying the suspect to the profile and showing conduct directed toward the complainant.

At a minimum, the detectives' knowledge, recklessness, and the materiality of the omitted facts are fact-bound issues inappropriate for resolution on a Rule 12 record. The First Amended Complaint plausibly alleges that Lewis and Cavaliere omitted objective facts necessary to probable cause and obtained legal process on materially misleading affidavits. Because "police officers cannot, in good faith, rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court," qualified immunity should be denied.[79]

## CONCLUSION

Defendants' motion should be denied. The First Amended Complaint plausibly alleges that Lewis and Cavaliere swore materially misleading warrant affidavits, that the corrected affidavits would not establish probable cause, that the January warrants caused Plaintiff's second arrest and continuing liberty restraints, and that the criminal proceedings terminated in Plaintiff's favor. Alternatively, if the Court concludes that additional specificity is required as to the January warrant affidavits, the omitted facts, causation, or Count II's Fourth Amendment theory, Plaintiff respectfully requests that dismissal with prejudice be denied and that Plaintiff be permitted to seek leave to file a targeted Second Amended Complaint.

---

[79] *Gregory*, 444 F.3d at 758; *Wesley*, 779 F.3d at 433.

22

Date filed: May 3, 2026.

Respectfully submitted,


s/Cody Johnson/
Cody Johnson, Esq.
BPR No. 037568
Turklay Law, PLLC
Attorney for Plaintiff
102 E Main Street Suite A
Lebanon, TN 37087
P: (629) 200-7774
Cody@TurklayLaw.com
