# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| MARTIN SCOTT,<br>　　　Plaintiff,<br><br>v.<br><br>METROPOLITAN GOVERNMENT OF<br>NASHVILLE AND DAVIDSON<br>COUNTY, *et al.*,<br><br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　No. 3:25-cv-01393<br>)<br>)　Judge Trauger<br>)<br>)　JURY DEMAND<br>) |

## METRO NASHVILLE'S MOTION TO DISMISS THE AMENDED COMPLAINT AND MEMORANDUM OF LAW

Judicial Commissioners act as agents of the State, not Metro Nashville, when they set bail and impose conditions of release, like GPS monitoring. In the context of this case, Tennessee statutes define judicial commissioners' authority, dictate the factors that they consider, and require them to memorialize their decisions on forms prepared by the Tennessee Administrative Office of the Courts. Plaintiff nevertheless contends that Metro Nashville is liable because commissioners used the State-created checklist forms and, in his view, failed to make individualized findings required by the Fourth and Fourteenth Amendments. Further, these same commissioners denied him the right to counsel under the Sixth Amendment when they imposed these conditions. But Metro Nashville has no power to influence, direct, or revise those judicial determinations. For that reason, the commissioners' conduct cannot qualify as a Metro Nashville policy or custom that triggers Section 1983 liability. Accordingly, Plaintiff's claims against Metro Nashville should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

**I. Tennessee statutes govern imposing GPS monitoring for violating an order of protection.**

Tennessee's criminal justice process is controlled by state law. State law defines criminal conduct. *See generally* Tenn. Code Ann. Title 39 (setting forth general provisions of criminal law and specific offenses). And state law controls the process after a person is arrested and charged.

In criminal cases, magistrates may release a defendant[1] on their own recognizance or require bail. *Id.* § 40-11-104. Under state law, all "judges of the supreme, appellate, chancery, circuit, general sessions, and juvenile courts throughout the state, [and] judicial commissioners . . . in those officers' respective counties . . . are magistrates within the meaning of [Title 40]." *Id.* § 40-1-106. State law specifies the factors a magistrate must evaluate when setting bail. *Id.* § 40-11-118. The factors include: the defendant's length of residence in the community, employment, family ties, reputation, criminal history, the charged offense and preliminary evidence, potential danger to the community, and any other circumstance affecting the defendant's likelihood of appearing in court. *Id.* § 40-11-118(b)(1–9).

For certain offenses, such as violating an order of protection, state law also requires the magistrate to assess whether the defendant is a threat to the alleged victim, public safety, and if they are reasonably likely to appear in court. *Id.* § 40-11-150(a). Upon concluding that the defendant is a threat to the alleged victim, and that the defendant should be released, then the magistrate must choose at least one of seven statutorily defined conditions, including GPS monitoring. *Id.* § 40-11-150(b)(1). When evaluating these conditions, "the magistrate shall consider the likelihood that the defendant's participation

---

[1] "Defendant" in this section refers to a criminal defendant.

will deter the defendant from seeking to kill, physically injure, stalk, or otherwise threaten the alleged victim before trial." *Id.* § 40-11-152(f).

State law requires that the magistrate's decision be memorialized on a form prepared by the state agency, the Administrative Office of the Courts. *Id.* § 40-11-150(c)(1). When a magistrate orders a defendant to wear a GPS device, "the magistrate shall specifically describe the locations that the defendant has been ordered to refrain from going to or near and the minimum distances, if any, that the defendant must maintain from those locations." *Id.* § 40-11-152(c).

## II. Judicial Commissioners exercised power given to them by state law when they imposed GPS requirements on Plaintiff.

In 2023 and 2024, Plaintiff and co-defendant Mallory Withers were in a "compensated" relationship in which Plaintiff paid Ms. Withers for sexual encounters. (Am. Compl. ¶ 14, Doc. No. 33.) That relationship soured, and on November 14, 2024, Ms. Withers obtained an order of protection against Plaintiff. (*Id.* ¶¶ 14, 24.) Then, Ms. Withers filed affidavits alleging that Plaintiff repeatedly called her and sent texts from unknown numbers about her activities and locations. (*Id.* ¶ 22; Ex. N at 1–2.) Officers issued warrants for harassment and stalking. (Am. Compl. ¶ 22.)

Plaintiff had earlier told Ms. Withers he would issue IRS 1099s for payments he made during their "arrangement." (*Id.* ¶¶ 14, 17.) After she received the first 1099 on December 10, 2024, she reported to MNPD that it violated the order of protection's no-contact provision. (*Id.* ¶ 26.) Plaintiff was arrested on December 20, 2024, and a commissioner imposed an additional domestic-violence no-contact bond condition. (*Id.* ¶ 25; Ex. N at 5.) On December 23, 2024, Ms. Withers filed two more affidavits based on the 1099, resulting in warrants for violating the order of protection and for harassment. (Am. Compl. ¶ 26.)

On January 17, 2025, she reported to Det. Lewis that she received a second 1099 on December 26, 2024, prompting him to swear out a warrant for violating the no-contact bond condition. (*Id.* ¶ 29; Ex. N at 5.) On January 20, 2025, she told Det. Cavaliere that Plaintiff harassed and stalked her through Instagram and a dating app, and he obtained an aggravated-stalking warrant. (*Id.* ¶ 32–33; Ex. N at 6.) Officers arrested Plaintiff again on January 29, 2025. (Am. Compl. ¶ 34.)

Before releasing Plaintiff, a judicial commissioner ordered GPS monitoring as a condition of release. (*Id.* ¶ 35.) In doing so, the judicial commissioner used the form created by the Administrative Office of the Courts, a state agency. Tenn. Code Ann. § 40-11-150(c)(1); Order Granting Bail in Abuse Cases, Ex. U to Am. Compl., Doc. No. 30-21; Administrative Office of the Courts form[2], attached hereto as Ex. 1. The state created form uses a checklist format to identify the required statutory considerations. (Order Granting Bail in Abuse Cases, Ex. U to Am. Compl., Doc. No. 30-21; Administrative Office of the Courts form.) It starts with "[p]ursuant to Tennessee Code Annotated, Section 40-11-150, the Court has reviewed the facts of the arrest and detention of the defendant and has determine that the defendant (check where applicable)." Then it provides a checklist of the statutory considerations. (*Id.*)

So while Plaintiff alleges that the commissioner did not make individualized findings or identify geographic restrictions, (Am. Compl. ¶ 35), the form shows otherwise. Consistent with the directives on the form, the commissioner checked the boxes to reflect that Plaintiff was a threat to the victim and that the defendant's participation in GPS monitoring would deter any future threats. (Order Granting Bail in Abuse Cases, Ex. U to

---

[2] The form can be found at:
https://tncourts.gov/sites/default/files/docs/Bail%20Order%20Form%20in%20Abuse%20Cases%206.25.2025%20%28PDF%29_UA.pdf

Am. Compl., Doc. No. 30-21). The order advised him to stay away from the home of the alleged victim and to stay away from any other location where the victim is likely to be. (*Id.*) The order does not identify additional places where the victim would likely be. (*Id.*).

Based on a public records request, Plaintiff determined that most Orders are using the check boxes on the form, and "only 35 contained any information identifying exclusion zones." (Am. Compl. ¶ 42.)

Before release, Plaintiff executed a GPS monitoring agreement and release with Tracking Solutions. (Agreement, Doc. No. 30-22.) The agreement set forth the program device rules, which included an acknowledgment that plaintiff would not enter exclusion zones that the Court had defined. (*Id.* at 1.) The court order defined the victim's residence as off-limits. (Doc. No. 30-21 at 2.) The Agreement with Tracking Solutions includes no additional location restrictions but states that the judge's order must be followed exactly and that only the judge had the authority to alter any conditions. (Agreement, Doc. No. 30-22 at 1.) Plaintiff signed the agreement acknowledging that "I have had sufficient opportunity to read this entire document and ask questions. I have read, understood, and agree to be bound by its terms." (*Id.* at 2.)

### III. Plaintiff sued Metro Nashville for judicial acts that were governed by state law.

The claims against Metro Nashville all center on the imposition of the GPS monitoring. First, Plaintiff claims that the GPS monitoring condition violated his Fourth Amendment rights. (Am. Compl. ¶¶ 144–45.) He contends that the GPS monitoring was an unreasonable search because it was not supported by individualized findings and was imposed through constitutionally inadequate procedures. (*Id.* ¶¶ 146–47.) He challenges the use of preprinted forms and checklists that omit statutorily required considerations. (*Id.* ¶ 166.) The use of these forms "results in the routine imposition of electronic monitoring

without the individualized judicial findings required by state law and the Fourth Amendment." (*Id.*) Second, Plaintiff alleges that his Sixth Amendment rights were violated when he was denied counsel at the bail stage when the GPS monitoring was imposed. (*Id.* ¶ 176.) He again turns to the "checkbox forms" to support his claims. (*Id.* ¶ 191.) Finally, he alleges that his Fourteenth Amendment procedural due process rights were violated by the imposition of the GPS monitoring. (*Id.* ¶ 200.) Again, he turns to the form to support his claim. (*Id.* ¶ 205.)

Although Plaintiff asserts three separate constitutional claims against Metro Nashville, each one challenges a commissioner's judicial decision made while enforcing state law and using a state-issued form.

## MOTION TO DISMISS STANDARD

To survive a motion brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege in a complaint "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). As the Supreme Court reiterated in *Ashcroft v. Iqbal*, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557) (cleaned up). Further, the tenet that a court must accept as true all the well-pleaded factual allegations contained in a complaint is inapplicable to legal conclusions: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citations omitted). A court need not accept as true a "legal conclusion couched as a factual allegation." *Id.* (citations omitted). Determining whether a complaint states a plausible claim for relief on its face is a context-specific exercise that requires a court to "draw on its judicial experience and common sense." *Id.* at 679 (citations omitted).

## ANALYSIS

**I.** **Metro Nashville cannot be liable under Section 1983 because the challenged actions were State judicial acts.**

A municipality bears liability under 42 U.S.C. § 1983 only when a government custom, policy, or practice, carried out by an official whose actions represent municipal policy causes the constitutional injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). A plaintiff meets this standard by identifying the policy, connecting the policy to the county, and then establishing causation. "Municipal liability attached only where the policy or practice in question is 'attributable to the municipality.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 387 (6th Cir. 2014) (quoting *Heyerman v. Cnty. Of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012)).

Here, all of Plaintiff's claims collapse at the pleading stage because the decisions he challenges were made by judicial commissioners acting under state law, and no allegation ties his alleged injuries to any Metro Nashville policy or custom. A practice falls outside municipal liability when the actor was acting under state authority rather than municipal authority. *Johnson v. Turner*, 125 F.3d 324, 335–36 (6th Cir. 1997); *D'Ambrosi*, 747 F.3d at 386 ("Because he was acting as an agent of the state when prosecuting D'Ambrosio, Marino's conduct cannot have established a county policy, unconstitutional or otherwise."); *see also Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) (federal government's policies were at issue, not county's, when county employ was deputized as a federal agent.)

**II.** **Precedent confirms that judicial decisions made under State law cannot create municipal liability.**

*Johnson* squarely holds that a county cannot be liable for judicial acts taken under state authority. There, the plaintiff sought to hold Shelby County responsible for the actions of the county juvenile court judge's decisions and for a memo restating the judge's interpretation of state law. *Johnson*, 125 F.3d at 327. But because the county lacked

authority to change state law, direct the judge's interpretation of it, or control how the juvenile court implemented it, the judge's decisions could not constitute county policy. *Id.* at 336. Plus, the decisions of the judge were "judicial decisions reviewable on appeal to the Tennessee appellate courts." *Id.* Thus, *Johnson* establishes that actions taken pursuant to state judicial authority cannot expose a county to Section 1983 liability.

The same result is warranted here. Like the plaintiff in *Johnson*, the hook for Metro Nashville's liability is the actions of judicial commissioners implementing state law using a state created form. Start with judicial commissioners' authority. State law, not any county policy, allows them to set bail. Tenn. Code Ann. §§ 40-11-104, 40-1-106. Similarly, state law dictates what a judicial commissioner must consider in setting bail. *Id.* § 40-11-118. When setting bail for order-of-protection violations, like the judicial commissioner did here, state law requires them to consider more factors. *Id.* § 40-11-150(a). If the criminal defendant is a threat to the alleged victim, like Plaintiff was, then the commissioner must impose additional conditions. *Id.* § 40-11-150(b). Judicial commissioners have discretion to choose from several conditions, including GPS monitoring. *Id.* § 40-11-150(b)(1–7). State law then commands them to "[i]ssue a written order for conditional release containing the conditions of the release on a *form prepared by the administrative office of the courts.*" *Id.* § 40-11-150(c)(1) (emphasis added). All of these duties flow directly from state statutes, not any Metro Nashville policy.

Next, Metro Nashville has no authority to direct judicial commissioners in how to determine bail or otherwise interfere with their criminal judicial function. As explained above, that authority flows from state law, not any Metro policy. And Plaintiff has not alleged otherwise. Plaintiff's main critique is that the judicial commissioners substitute a checklist form for individualized findings. (Am. Compl. ¶¶ 146–47, 166, 176, 191, 205.) But

the Tennessee General Assembly directed the State Administrative Office to create the form; it is not a form promulgated by Metro Nashville. Tenn. Code Ann. § 40-11-150(c); Administrative Office of Courts Form, Ex. 1. And judicial commissioners are directed by state law to use it. *Id.*

Finally, the imposition of bail conditions is reviewable by the Tennessee appellate court. Tenn. Code Ann. § 40-11-144 governs review of bail decisions and permits a criminal defendant to seek review via a writ of certiorari to the next higher court. Tennessee's Rules of Appellate Procedure also permit review of bail decisions before or after convictions to ensure the expeditious review of release orders. Tenn. R. App. P. 8(a). At base, Plaintiff challenges a judicial decision made under state law and reviewable by the Tennessee courts, not any policy choice of Metro Nashville.

In short, the same factors that compelled the conclusion in *Johnson* are present here. And the reasoning is not unique to the Sixth Circuit. Multiple circuits hold that actions of judges implementing state law cannot be a basis for Section 1983 liability against a county. *Daves v. Dallas Cnty., Texas*, 22 F.4th 22, 538 (5th Cir. 2022); *Little v. City of Valley, Alabama*, No. 24-10120, 2025 WL 3280951, at *3 (11th Cir. Nov. 25, 2025); *Eggar v. City of Livingston*, 40 F.3d 312, 315–16 (9th Cir. 1994). There is no reason for this Court to depart from the reasoning of *Johnson* or the other cases. Thus, Metro Nashville's motion to dismiss should be granted.

**CONCLUSION**

Because the actions Plaintiff challenges were judicial determinations made under state law, using state-mandated procedures, and subject to review in the Tennessee courts, they cannot be attributed to Metro Nashville as a municipal policy or custom. Plaintiff identifies no Metro decisionmaker, no Metro rule, and no Metro practice that caused the

alleged constitutional violations. His claims therefore fall outside the scope of Section 1983

liability for Metro Nashville and must be dismissed.

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ (#9949)
DIRECTOR OF LAW

*/s/Melissa S. Roberge*
Melissa S. Roberge (#26230)
  SENIOR COUNSEL
Michael R. Dohn (#37535)
  ASSISTANT METROPOLITAN ATTORNEY
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
melissa.roberge@nashville.gov
michael.dohn@nashville.gov
*Counsel for the Metropolitan Government*