IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARTIN SCOTT,

   **Plaintiff,**

vs.

**METRO GOV'T OF NASHVILLE AND
DAVIDSON COUNTY;, TRACKING
SOLUTIONS, INC.; MALLORY
WITHERS, in her individual capacity;
BRIAN CAVALIERE, in his individual
capacity; and TYLER LEWIS, in his
individual capacity,**

                                   **NO.  3:25-CV-01393**

   **Defendants.**

---

### DEFENDANT TRACKING SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

---

Comes now this Defendant, Tracking Solutions, Inc. (hereinafter "this Defendant"), by and

through counsel of record, and files this Motion to Dismiss Plaintiff's "First Amended Complaint"

(ECF Doc. No. 33) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In support,

this Defendant states the following:

### SUMMARY OF ARRGUMENT

This Defendant is a private corporation.[1] Plaintiff has improperly asserted federal claims

against this Defendant pursuant to 42 U.S.C. § 1983, specifically in **Count IV – Unreasonable**

**Search and Seizure (42 U.S.C. §1983 – Fourth Amendment)** and in **Count VI – Procedural**

---

[1] *See* ECF Doc. No. 33, First Amended Complaint, ¶6.

**Due Process and Right to a Hearing (42 U.S.C. §1983 –Fourteenth Amendment)** of the First Amended Complaint.[2] Plaintiff has additionally asserted a single state law claim against this Defendant in **Count VIII - NEGLIGENCE AND NEGLIGENCE PER SE (Tennessee Common Law – Supplemental Jurisdiction 28 U.S.C. §1367)**.[3]

However, Plaintiff has failed to state a claim in the First Amended Complaint upon which relief may be granted against this Defendant under §1983 in either Count IV or Count VI. "Section 1983 allows a plaintiff to seek redress from state actors for 'the deprivation of any rights, privileges, or immunities secured by the Constitution.'"[4] "To state a claim under § 1983, a plaintiff must allege (1) a deprivation of rights secured by the 'Constitution and laws' of the United States and (2) that a defendant caused harm while acting under color of state law."[5] Plaintiff's First Amended Complaint does not allege sufficient specific allegations against this Defendant to support a cause of action against this Defendant as a "state actor" in either Count IV or Count VI. Plaintiff relies on two rulings (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937-39 (1982) and *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001)) in support of a finding that this Defendant was a "state actor". However, a review of those rulings, other 6th Circuit rulings and the allegations against this Defendant in the First Amended Complaint support a finding that this Defendant was not a state actor and supports dismissal of both Couth IV and VI as to this Defendant.[6]

---

[2] *See* ECF Doc. No. 33, First Amended Complaint, Count IV and Count VI.
[3] Id. Count VIII.
[4] *Willhite v. Myrick Law Firm*, No. 3:23-CV-95-TAV-JEM, 2023 WL 11915399, at \*2 (E.D. Tenn Mar. 31, 2023) (*citing* 42 U.S.C. § 1983).
[5] Id. (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)).
[6] *See Ashcroft*, 129 S. Ct. at 1949 (2009) ("A complaint must contain sufficient facts 'to "state a claim to relief that is plausible on its face"' to survive a motion to dismiss.")

2

Further, the only remaining cause of action against this Defendant is Count VIII - **NEGLIGENCE AND NEGLIGENCE PER SE (Tennessee Common Law – Supplemental Jurisdiction 28 U.S.C. §1367)**, which is purely a state law claim.[7] In the absence of any remaining federal question claims against this Defendant to invoke §1331 subject-matter jurisdiction, the remaining purely state law cause of action against this Defendant should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).[8]

<u>**MOTION TO DISMISS STANDARD**</u>

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss Plaintiff's Complaint "for failure to state a claim upon which relief can be granted."[9] When considering a 12(b)(6) motion to dismiss, while pleadings are to be liberally construed, essential elements not pled cannot be assumed or supplied by the Court.[10]

Separately, Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the court lacks subject-matter jurisdiction. "Subject matter jurisdiction concerns the court's power to hear a case, and thus, before reaching the merits of a case, a court should first determine whether jurisdiction exists."[11] "As courts of limited jurisdiction, federal courts may exercise only those

---

[7] *See* ECF Doc. No. 33, First Amended Complaint, Count VIII.

[8] *See Anders v. Purifoy*, No. 16-cv-2321-JDT-tmp, 2016 WL 1147290, at *2 (W.D. Tenn. May 18, 2016) (holding that plaintiff failed to state a Section 1983 claim against MALS because plaintiff failed to allege that MALS and other defendants were state actors or acted under color of state law); *West v. Atkins,* 487 U.S. 42, 48 (1988) ("In order for a private party's conduct to be under color of state law, it must be fairly attributable to the state."); *Adams v. Vandemark*, 85 F.2d 312, 315-16 (6th Cir. 1988) (holding that state regulation and substantial public funding of the activities of a private entity does not make the private entities actions attributable to the state for purposes of a Section 1983 claim).

[9] Federal Rule of Civil Procedure 12(b)(6).

[10] *Harris v. White*, 479 F. Supp. 996 (D.C. Mass. 1979).

[11] *Stalley ex rel. United States v. Methodist Healthcare*, 2006 U.S. Dist. LEXIS 96839 at *2 (W.D. Tenn. Dec. 22, 2006) (*citing Steel Co. v. Citizens for a Better Env't, Case*, 523 U.S. 83, 94 (1998)).

3

powers authorized by the Constitution and statute."[12] "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."[13]

Federal Courts may exercise supplemental jurisdiction over state-law claims if there are related federal law claims. However, once a Federal Court has dismissed a plaintiff's federal law claims, that Court should not address the remaining state law claims."[14] A District Court should decline to exercise supplemental jurisdiction over the remaining claims which sound in state law.[15]

## FACTUAL ALLEGATIONS IN FIRST AMENDED COMPLAINT AGAINST THIS DEFENDANT

In the Introduction to the First Amended Complaint, Plaintiff alleges that Plaintiff is bringing this action pursuant to 42 U.S.C. §1983 "to redress violations of his rights under the First, Fourth and Fourteenth Amendments to the United States Constitution" as well as asserting "supplemental state-law claims under Tennessee law."[16] The Co-Defendants in the First Amended Complaint include the "Metropolitan Government of Nashville and Davidson County ("Metro") as well as law enforcement officers of the Metropolitan Nashville Police Department.[17] **Plaintiff correctly identifies this Defendant as a <u>private corporation</u>**.[18]

In the First Amended Complaint, Plaintiff alleges that on January 29, 2025, after making a long series of factual allegations regarding Plaintiff and Defendant Mallory Withers apparently

---

[12] *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001) (citation omitted).
[13] *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990) (*citing Rogers v. Stratton Indus., Inc*., 798 F.2d 913, 915 (6th Cir. 1986)).
[14] *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).
[15] *See Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).
[16] *See* E.C.F. Doc. No. 33, "First Amended Complaint", ¶1, p. 1-2.
[17] <u>Id</u>., ¶5, 8, 9
[18] <u>Id</u>., ¶6.

4

involving a paid sex arrangement, Plaintiff was arrested on multiple charges and a Davidson County General Sessions Commissioner imposed GPS monitoring as a bail condition for his release.[19] Plaintiff then makes the following allegations involving this Defendant's actions related to that GPS monitoring:

> 36. Plaintiff could not secure release unless a qualified private monitoring vendor attached a GPS device. At the time of Plaintiff's arrest, Tracking Solutions, Inc. and Nationwide Electronic Monitoring were the only two advertised vendors inside the booking facility. Between those two vendors, Tracking Solutions responded to Plaintiff's request for monitoring services. Therefore, Plaintiff enrolled with that vendor.

> 37. Tracking Solutions required Plaintiff to sign a "GPS Monitoring Agreement and Release" imposing undefined exclusion zones, additional restrictions, and liability waivers not ordered by any court. (Ex. V - Tracking Solutions Agreement).

> 38. Plaintiff never violated GPS monitoring conditions, and no violation was ever alleged against him.[20]

Later, in Count IV, Plaintiff alleges the following actions of this Defendant related to the GPS monitoring:

> 159. Second, Tracking Solutions may fairly be treated as a state actor because it exercised coercive authority over Plaintiff's liberty that existed only by virtue of the State's custodial power. Tracking Solutions operated inside the Davidson County jail and functioned as the mandatory gateway to Plaintiff's release from custody, serving as a de facto "qualified contract service provider" despite lacking a written agreement with Metro at the time, as required by Tenn. Code Ann. § 40-11-152(a)(2), (k). A Tracking Solutions employee physically attached a GPS monitoring device to Plaintiff's ankle, imposed movement restrictions and exclusion zones, continuously monitored his location data, and possessed the authority to report alleged violations directly to law enforcement as grounds for arrest or detention. Plaintiff could not refuse this authority, negotiate its terms, or secure release through any alternative means, other than nominally

---

[19] Id., ¶35.
[20] Id., §36-38.

selecting a different "qualified contract service provider," such as Nationwide.

160. Through this arrangement, Tracking Solutions functioned as Metro's de facto pretrial-supervision arm, exercising operational control over Plaintiff's movements and bodily restraint in a custodial setting. These activities—monitoring accused persons, enforcing pretrial release conditions, and reporting violations triggering arrest—are functions historically and exclusively associated with the State's administration of criminal justice.[21]

Further, in Count VI, Plaintiff also alleges the following:

209. Plaintiff could not secure release from custody unless a monitoring vendor attached a GPS device to his body and enrolled him in the vendor's monitoring system. Tracking Solutions operated inside the Davidson County jail facility and served as the mandatory gateway through which detainees were required to obtain monitoring devices as a condition of release.

210. Before Plaintiff could obtain release, Tracking Solutions required him to sign its "Monitoring Agreement and Release." That agreement imposed additional restrictions and obligations not contained in the judicial order, including exclusion zones and operational monitoring rules created by the vendor itself. The agreement also required Plaintiff to accept financial obligations, indemnification provisions, and compliance terms enforced through the threat of violation reports to law enforcement.

211. Through this process, the actual terms governing Plaintiff's liberty were established not by a judicial officer but by a private company operating within the jail facility. Plaintiff's freedom from custody therefore depended on accepting a private contract that dictated the practical restrictions on his movement without prior judicial review.

212. By creating and enforcing the operational rules governing Plaintiff's liberty and conditioning release on acceptance of those terms, Tracking Solutions directly participated in the deprivation of liberty without adequate procedural safeguards.[22]

Finally, in Count VIII, Plaintiff alleges the following regarding the GPS monitoring:

---

[21] Id., §159-160.
[22] Id., ¶ 209-212.

259. Despite this, before permitting Plaintiff to obtain the monitoring device required for release from custody, Tracking Solutions compelled him to sign a "GPS Monitoring Agreement and Release" that:

A. Imposed undisclosed and undefined "exclusion zones" that were not contained in the magistrate's order and were never communicated to Plaintiff in any official capacity;

B. Shifted all operational, legal, and financial liability to Plaintiff, including indemnification for Tracking Solutions' own mistakes, malfunctions, or errors;

C. Contained sweeping release, waiver, and covenant-not-to-sue provisions extending to Plaintiff's family members, heirs, and representatives;

D. Shortened the statute of limitations for any claim against the company to one year; and

E. Conditioned Plaintiff's release from custody on execution of this adhesion contract, despite the lack of any statutory or judicial authorization for such terms.

260. Third, Plaintiff encountered Tracking Solutions while in DCSO booking, where only two GPS monitoring vendors—Tracking Solutions and Nationwide—were represented. While Plaintiff was taking the necessary steps to secure his release, Tracking Solutions was the only vendor that responded to his call. Because Plaintiff could not obtain release from custody without securing a monitoring device from one of the vendors operating inside the facility, he had no practical ability to avoid contracting with a monitoring company. Tracking Solutions required execution of its "Monitoring Agreement and Release" as a prerequisite to providing the device necessary for Plaintiff's release.

261. These facts plausibly allege that Plaintiff was coerced into signing the "Monitoring Agreement and Release" in order to secure his liberty, and that Tracking Solutions imposed restraints and obligations beyond those ordered by any judicial officer.

262. The unauthorized and undefined "exclusion zones" created a risk that Plaintiff would be perceived as violating conditions he did not know existed. By imposing obligations not present in the court's order, and by operating absent statutory authorization, Tracking Solutions created the appearance of violations out of conditions that did not lawfully exist.[23]

---

[23] Id., ¶ 259-262.

As addressed below, these allegations, even, if taken as true, do not make this Defendant a "state actor".[24]

## LAW AND ARGUMENT

### 1) The §1983 claims against this Defendant in both Count IV and Count VI should be dismissed because this Defendant, a private corporation, was not a state actor.

The Sixth Circuit has stressed that private actors may be liable under 42 U.S.C. §1983 **only in "rare circumstances"**.[25]   As legal support for asserting §1983 liability against a private corporation in Count IV, Plaintiff relies heavily upon *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937-39 (1982).[26] As legal support for asserting §1983 liability against a private corporation in Count VI, Plaintiff also cites to *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288 (2001).[27]  Plaintiff's reliance upon *Lugar* and/or *Brentwood Academy* as a basis for asserting §1983 liability on this Defendant is misplaced.

The Sixth Circuit has described the facts in *Lugar* as follows:

> Lugar involved the state of Virginia's pre-judgment attachment proceedings.  The plaintiff was a truck stop operator who fell behind on his payments to his supplier.  State law allowed the supplier to sequester the plaintiff's property through an *ex parte* petition, prior to a hearing.  Upon the supplier's petition, the clerk of court issued a writ of attachment and the county sheriff executed it.  The plaintiff sued the supplier, but not the state, under §1983, alleging the state law was "procedurally defective under the Fourteenth Amendment."  The court agreed that the supplier was a state actor **because it jointly participated** with state officials in the pre-judgment seizure.[28]

---

[24] *See* ECF Doc. No. 33, First Amended Complaint, Count IV and Count VI.

[25] *Leta v. TriHealth, Inc.*, 2024 U.S. App. Lexis 1548 at *7 (Sixth Cir. January 22, 2024) (emphasis added). A Western District Court likewise ruled that a private person may be considered to have acted under color of state law pursuant to §1983 only "under limited circumstances". *Stark v. City of Memphis*, 2020 U.S. District Lexis 250141 at *33 (W.D. Tenn. February 18, 2020).

[26] *See* ECF Doc. No. 33, First Amended Complaint,  § 157.

[27] Id., ¶ 213.

[28] *Kerns v. Chesapeake Expl., LLC*, 762 Fed. Appx. 289, 295 (Sixth Cir. 2019) (emphasis added).

8

Sixth Circuit district courts in recent years have provided guidance on when *Lugar* does or does not support a finding that a private entity is a state actor. In *Burkhalter v. City of East Ridge*, a Tennessee Eastern District Court, addressing *Lugar,* noted the need for active involvement of a state official in the private corporation's actions to invoke §1983 liability:

> But *Lugar* offers no comfort. There, an oil company sued a truck stop operator on a debt in state court while simultaneously seeking pre-judgment attachment of the truck stop owner's property under state law. *Lugar*, 457 U.S. at 924. A state court clerk authorized attachment, and a county sheriff executed. Id. The truck stop operator then sued the oil company under §1983 and challenged the state's pre-judgment attachment procedure. Id. at 925. ***The state court held that the oil company was a state actor <u>because the oil company "invoke[ed] the aide of state officials to take advantage of state created" procedures</u>***. *See Lugar*, 457 U.S. at 942.[29]

Conversely, there are no allegations in the First Amended Complaint that this Defendant invoked the aid of any state officials. In fact, the allegations are that this Defendant acted independently and unilaterally and without government supervision, permission or authority.

  **2) <u>This Defendant is not a state actor under any recognized *Lugar* test.</u>**

Applying *Lugar*, the 6th Circuit presently uses four "narrow tests" to determine if the "conduct of a private party will be deemed to constitute state action".[30] Those four tests are (1) the Public Function test, (2) the State Compulsion test, (3) the Nexus test and (4) the Entwinement test.[31] A review of the allegations in the First Amended Complaint as to this Defendant do not

---

[29] *Burkhalter v. City of Each Ridge*, 2025 U.S. Dist. Lexis 85100 at *9-10 (E.D. TN May 5, 2025) (emphasis added).
[30] *Hubbard v. Abbott Bailbonds Agency LLC*, 2021 U.S. Dist. LEXIS 78228, at *4 (W.D. Mich. Apr. 23, 2021).
[31] Id. at *4-5.

support any finding that this Defendant was engaged in state action under any of those 4 tests and supports dismissal of both §1983 claims (Count IV and Count VI) as to this Defendant.

### a) **The Public Function test**

The Public Function test addresses private actors performing functions "'traditionally the exclusive prerogative of the State.' *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49-50."[32] 6th Circuit courts have stressed this to be a narrow exception:

> This is a narrow exception. "Only functions like holding elections, exercising eminent domain, and operating a company-owned town, fall under this category of state action." *Id.* (internal citations and quotations omitted).[33]

There are no allegations that this Defendant's actions fit into this narrow exception involving exclusive governmental functions. Accordingly, the Public Function Test does not support any finding of this Defendant as a state actor.

### b) **State Compulsion Test**

The State Compulsion Test addresses situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution."[34] "The State Compulsion test requires proof that the state significantly encouraged or coerced the private actor, either overtly or covertly, to take a particular action so that the choice is actually that of the state. *Tahfs*, 316 F.3d at 591."[35]

---

[32] Id. at *5.
[33] Id. at *4.
[34] Id. at *4, *quoting NBC v. Commc'ns Workers of America*, 860 F.2d 1022, 1026 (11th Cir. 1988).
[35] *Nance v. Nance*, 2025 U.S. Dist. LEXIS 211203, at *12-15 (W.D. Tenn. Oct. 27, 2025).

10

An illustrative case is *Hubbard v. Abbott Bailbonds Agency LLC*, 2021 U.S. Dist. LEXIS 78228, at *6 (W.D. Mich. Apr. 23, 2021) which involved the question of whether bail bondsmen were state actors.[36] In *Hubbard,* a 6th Circuit District Court found "[b]ail bondsmen are not state actors under the state compulsion test because states do not coerce them to make arrests, let alone arrests that involve excessive force or that result in injury to third parties."[37] Likewise, in the present action, there are no allegations in the First Amended Complaint that the state coerced this Defendant to perform any GPS monitoring on Plaintiff. Thus, the State Compulsion test also does not support a finding that this Defendant was a state actor.

    c)  **Nexus Test**

The Nexus Test focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise."[38] "Merely because a business is subject to state regulation does not by itself convert its action into state action. Rather, **it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct** to be attributed to the state for purposes of section 1983. *Id.* (citation omitted)."[39]

The analysis in *Hubbard* related to the actions of bail bondsmen is again instructive here. In *Hubbard*, a 6th Circuit District Court recognized that

> "the majority of circuits".... "have focused on whether the bondsmen enlisted the assistance of law enforcement officers in arresting their principals and, in the absence of allegations that law enforcement officers provided affirmative assistance or joined

---

[36] *Hubbard v. Abbott Bailbonds Agency LLC*, 2021 U.S. Dist. LEXIS 78228, at *6 (W.D. Mich. Apr. 23, 2021)
[37] Id. at *6.
[38] *Jackson v. Metropolitan Edison,* 419 U.S. 345, 357-58 (1974).
[39] *Hubbard v. Abbott Bailbonds Agency LLC*, 2021 U.S. Dist. LEXIS 78228, at *7 (emphasis added).

11

bondsmen in effecting the apprehension as joint actors, these courts have not found state action."[40] *See Lopez v. Zouvelos*, No. 13-CV-6474 MKB, 2015 U.S. Dist. LEXIS 128392, 2015 WL 5657361, at *8 (E.D.N.Y. Sept. 23, 2015) (collecting cases); *see, e.g., Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204-05 (5th Cir. 1996) (bail bondsmen not state actors because they did not proport to act pursuant to a warrant and did not enlist the assistance of law enforcement).[41]

The District Court in *Hubbard* rejected the creation of a symbiotic or nexus relationship "… because bail bondsmen have a legitimate, independent motivation for their actions; they are motivated by financial gain rather than an intent to assist law enforcement. *United States v. Poe*, 556 F.3d 1113, 1124 (10th Cir. 2009)."[42] The District Court in *Hubbard* further stressed the unilateral, independent actions of a bail bondsman do not give rise to actions under the color of law.

> In short, the Court agrees with the federal courts that have held that bail bondsmen are not state actors when they apprehend fugitives without the assistance or participation of law enforcement. Here, Hubbard alleges no involvement by the state at all in the events giving rise to his injuries. Thus, there is no basis for inferring that Defendants acted under color of state law.[43]

Likewise, in the present matter, this Defendant is a for-profit private corporation with the legitimate motivation of seeking "financial gain" in performing its services.[44] Further, Plaintiff alleges that this Defendant unilaterally required Plaintiff "to sign a 'GPS Monitoring Agreement and Release'" that contained conditions not included in any judicial order and "imposed restraints

---

[40] Id. at *7-8.
[41] Id. at *6.
[42] Id. at *8.
[43] Id. at *8 (emphasis added).
[44] Id., *See* ECF Doc. No. 33, First Amended Complaint, ¶6.

<div align="center">12</div>

and obligations beyond those ordered by any judicial officer" on Plaintiff.[45]   Further, Plaintiff alleges that this Defendant "independently caused and exacerbated Plaintiff's injuries" by implementing monitoring services without governmental authorization and imposing "exclusion zones" not ordered by any court or judicial officer.[46]

Based on the complete lack of any allegations of government involvement in this Defendant's alleged business actions, and the alleged independent and unilateral actions of this Defendant, the Nexus Test also does not allow this Defendant to be considered a state actor.

### d)  The Entwinement Test

"To satisfy the 'Entwinement Test', a plaintiff must show that the defendant is "'entwined with governmental policies' or that the government be 'entwined in [the private entity's] management or control.'"[47]   However, "mere cooperation simply does not rise to the level of merger required for a finding of state action."[48]   Further, "[t]he crucial inquiry under the entwinement test is whether the 'nominally private character' of the private entity 'is overborne  by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it.'"[49]

The Supreme Court's ruling in *Brentwood Academy* is instructive as to why the Entwinement Test is also inapplicable.  First, the United States Supreme Court in *Brentwood*

---

[45] Id. ¶ 261.
[46] Id. ¶ 259, 261.
[47] *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009), *quoting Brentwood*, 531 U.S. at 296  (citing *Evans v. Newton*, 382 U.S. 296, 299 (1966).
[48] *Lansing v. City of Memphis*, 202 F.3d 821, 831 (6th Circ. 2000).
[49] *Vistein*, 342 Fed. Appx. at 128, *quoting Brentwood*, 531 U.S. at 298.

*Academy* stressed that there was overwhelming public school involvement in the TSSAA membership:

> Respondent Tennessee Secondary School Athletic Association (Association) is a not-for-profit membership corporation organized to regulate interscholastic sport among the public and private high schools in Tennessee that belong to it. No school is forced to join, but without any other authority actually regulating interscholastic athletics, **it enjoys the memberships of almost all the State's public high schools (some 290 of them or 84% of the Association's voting membership)**, far outnumbering the 55 private schools that belong.[50]

The Supreme Court further stressed that its ruling was based not only on the overwhelming public school membership, but also on the overwhelming and involvement of public school and state officials in TSSAA actions and decisions:

> In *National Collegiate Athletic Ass'n* v. *Tarkanian,* 488 U.S. 179, 102 L. Ed. 2d 469, 109 S. Ct. 454, this Court anticipated that state action could be found when there is public entwinement in the management or control of an organization **whose member public schools** are all within a single State. Pp. 6-9.
>
> (b) The necessarily fact-bound inquiry leads to the conclusion of state action here. **The Association's nominally private character is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings**, and there is no substantial reason to claim unfairness in applying constitutional standards to it. To the extent of 84% of its membership, the Association is an organization of public schools represented by their officials acting in their official capacity to provide an integral element of secondary public schooling, interscholastic athletics. **There would be no recognizable Association without the public school officials, who overwhelmingly determine and perform all but the Association's purely ministerial acts.** To complement the entwinement from the bottom up, the State has provided entwinement from the top down: State Board members sit ex officio on the Association's governing bodies and Association employees participate in the state retirement

---

[50] *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 291, (2001) (emphasis added).

> system. Entwinement to the degree shown here requires that the Association be charged with a public character and judged by constitutional standards.[51]

The Supreme Court found the TSSAA to be a state actor because the TSSAA (the private actor) was "overborne" with public school and state involvement:

> Just as we foresaw in *Tarkanian*, the "necessarily fact-bound inquiry," *Lugar*, 457 U.S. at 939, leads to the conclusion of state action here. **The nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings**, and there is no substantial reason to claim unfairness in applying constitutional standards to it.[52]

Unlike in *Brentwood Academy*, there are no allegations of public or state entwinement in this private corporation's business either coming up from or down from any public or state entity. In fact the allegations throughout the First Amended Complaint allege independent, unilateral and supervised actions by this Defendant.

Another instructive Sixth Circuit ruling regarding the Entwinement Test (and the Nexus Test) comes from *Reguli v. Guffee*.[53] In *Reguli*, Plaintiff's daughter appeared in Juvenile Court for unruliness.[54] At a juvenile hearing, a Juvenile Court Referee entered an Order with numerous restrictions, including that Plaintiff's daughter was required to attend a group called "Teen Peace Anger Management Program."[55] Plaintiff contended that a defendant Michael LaBo, a moderator for that Teen Peace program, improperly removed plaintiff's daughter from the Teen Peace group setting to personally interview her.[56] In that interview, plaintiff's daughter told Defendant LaBo

---

[51] *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 290, 121 S. Ct. 924, 927, 148 L.Ed.2d 807, 814 (2001).
[52] <u>Id</u>. at 298.
[53] *Reguli v. Guffee*, 2009 U.S. Dist. LEXIS 12952, at *2-5 (M.D. Tenn. Feb. 19, 2009).
[54] <u>Id</u>. at 203.
[55] <u>Id</u>. at 3.
[56] <u>Id.</u>

15

she had been hit and choked by Plaintiff and Defendant LaBo then reported that information to the Tennessee Department of Children's Services ("DCS").[57]

Plaintiff brought a lawsuit, including §1983 claims against Defendant LaBo.[58] Plaintiff contended that Defendant LaBo was a state actor because his daughter's attendance at the Teen Peace program would not have occurred but for the court order and attendance was court-ordered and mandatory.[59]  The Middie District Court rejected this argument.[60]  Despite a court appearance and a court order (as similarly alleged in the present case), the District Court did not find sufficient entwinement to make Defendant LaBo's actions to be state actions:

> The Court finds that the actions of Defendant LaBo, as an employee of a non-profit organization, did not have a sufficiently close nexus to the state to be fairly treated as those of the state itself. As noted above, Teen Peace operates independently of coercive power or direction of the state.[61]

Likewise, in the present action, despite Plaintiff similarly having a court appearance and being subject to a court order, there are no allegations in the First Amended Complaint that this Defendant did not operate independently of any governmental coerce power or direction.

Since *Brentwood Academy*, Sixth Circuit rules have stressed the overwhelming public involvement (84% of TSSAA's voting membership were public schools) as the basis for applying the Entwinement Test to find the TSSAA to be a state actor:

> In *Brentwood,* the challenged entity, which the Court held was properly subject to suit under § 1983, was the Tennessee Secondary School Athletic Association, "a not-for-profit membership and corporation organized to regulate interscholastic sport among the public and private high schools in Tennessee that belong to

---

[57] Id. at *4.
[58] Id. at *12.
[59] Id. at *4-5.
[60] Id. ("The Court finds no such entwinement here.")
[61] Id.

16

it." *Brentwood,* 531 U.S. at 291. In *Brentwood,* public high schools constituted "84% of the Association's voting membership," *Brentwood,* 531 U.S. at 291.[62]

This overwhelming public involvement not merely in TSSAA membership, but also in TSSAA operations, was again stressed as the basis for ruling that the TSSAA was a state actor:

> As the Supreme Court concluded in *Brentwood,* we conclude in this case that "[t]he nominally private character of [Region VII] is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it." 531 U.S. at 298.[63]

In the First Amended Complaint, there are no allegations of any entwinement of public institutions or public officials in this Defendant's actions. Accordingly, under *Brentwood Academy* and the facts alleged in the First Amended Complaint, the Entwinement Test also does not support a finding that this Defendant was a state actor.

**3) <u>Count VIII – Plaintiff's Negligence and Negligence *per se* (Tennessee common law – Supplemental Jurisdiction 28 U.S.C. §1367) alleging a state law cause of action should be dismissed for lack of subject matter jurisdiction.</u>**

In addition to bringing two separate §1983 actions against this Defendant (Count IV and VI), addressed above, Plaintiff has alleged a state law claim for negligence and negligence *per se* against this Defendant in Count VIII.[64] As addressed above, this Defendant is requesting this Court to dismiss both of those §1983 causes of action against this Defendant, leaving only this remaining state law claim (Count VIII) against this Defendant.

---

[62] *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 179 (6th Cir. 2008).
[63] <u>Id</u>.
[64] *See* ECF Doc. No. 33, First Amended Complaint, Count VIII.

"Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims."[65] "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues."[66] At this initial stage of the litigation, the interests of judicial economy and the avoidance of multiplicity of litigation do not weigh in favor of exercising supplemental jurisdiction over Plaintiff's remaining state-law claim against this Defendant.

Accordingly, upon dismissal of the two §1983 claims against this Defendant (Count IV and VI), Plaintiff's sole remaining state law negligence claim against this Defendant (Count VIII) should be dismissed for lack of subject matter jurisdiction as to this Defendant.

### 4) <u>**Plaintiff voluntarily contracted with this Defendant.**</u>

In the First Amended Complaint, Plaintiff makes conclusory allegations that this Defendant was "the mandatory gateway to Plaintiff's release from custody…"[67] However, based upon the allegations in the Plaintiff's First Amended Complaint, there was nothing mandatory about Plaintiff entering into a contract with this Defendant. In the First Amended Complaint, Plaintiff alleges that after his January 29th arrest, a "judicial commissioner imposed GPS monitoring as a condition of release" for Plaintiff.[68] As alleged in the First Amended Complaint, this Defendant was only one of at least two possible vendors for which Plaintiff could enter into a GPS monitoring contract.[69] Plaintiff was free to contact with the other named vendor (Nationwide Electronic Monitoring) or find a separate GPS monitoring vendor.[70] However, simply because this Defendant

---

[65] *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).
[66] *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).
[67] *See* ECF Doc. No. 33, First Amended Complaint, ¶159, 209.
[68] Id. ¶35.
[69] Id. ¶36.
[70] Id.

18

responded to Plaintiff's request, Plaintiff voluntarily "enrolled with that vendor."[71] While Plaintiff makes conclusory statements that "Plaintiff could not refuse this authority" of this Defendant, that is directly inconsistent with the voluntary nature of Plaintiff's actions in entering into a contract with this Defendant as opposed to any other GPS monitoring provided.[72]

Accordingly, Plaintiff cannot now allege a 42 U.S.C. §1983 violation of the Fourteenth Amendment after Plaintiff voluntarily entered into a contract for GPS monitoring with this Defendant. The GPS monitoring voluntarily entered into by Plaintiff cannot be considered unreasonable. Any alleged violation was not unilaterally caused by this Defendant as Plaintiff entered into a voluntary contract with this Defendant.[73]

Likewise, with regard to the allegations against this Defendant in Count VI involving Procedural Due Process and the right to a hearing under 42 U.S.C. §1983; Plaintiff voluntarily entered into a GPS monitoring contract with this Defendant. Plaintiff was free to choose any other private corporation to provide GPS monitoring services but voluntarily entered into a contract with this Defendant. Accordingly, because Plaintiff voluntarily contracted with this Defendant for GPS monitoring services, Plaintiff cannot subsequently now allege that the actions of this Defendant violated Plaintiff's Fourteenth Amendment procedural due process rights and right to a hearing. Accordingly, for these reasons as well, both Count IV and Count VI of the First Amended Complaint as to this Defendant should be dismissed as a matter of law.

    **5)**   **<u>Plaintiff has no standing to bring a declaratory judgment action or seek injunctive relief from this Defendant.</u>**

---

[71] <u>Id</u>.

[72] <u>Id</u>. ¶159.

[73] *West v. Akins*, 487 U.S. 42, 48 (1988) (State action requirement for §1983).

In Count VI – Procedural Due Process and Right to Hearing (42 U.S.C. §1983 – Fourteenth Amendment), Plaintiff argues that Plaintiff has "standing to seek declaratory injunctive relief because Metro's pre-trial monitoring practices remain in effect and continue to govern the initial-appearance process for criminal defendants in Davidson County."[74] Further, "Plaintiffs must establish standing for each form of relief they seek, and the type of harm alleged impacts the available relief."[75] However, Plaintiff has no standing to seek declaratory and/or injunctive relief from this Defendant. The law on standing for a plaintiff to bring an injunctive or declaratory relief is well-established, specifically that a Plaintiff "must show that he is under threat of suffering 'injury in fact' that is concrete and particularized, and the threat must be actual and imminent[.]"[76]

Further, past "exposure to legal conduct unaccompanied by any continuing present adverse effect, will not suffice to establish a present case or controversy."[77] As the Sixth Circuit has made clear, past "harm allows a plaintiff to seek damages, but it does not entitle plaintiff to seek injunctive or declaratory relief."[78]

Plaintiff cannot establish that Plaintiff is under any threat of suffering any injury in fact as a result of any possible future actions of this Defendant. As such, Plaintiff lacks standing to bring or seek any injunctive or declaratory relief from this Defendant. For that reason as well, Count VI

---

[74] *See* ECF Doc. No. 33, First Amended Complaint, ¶222.
[75] *Hague v. Kent County*, 2024 U.S. Dist. Lexis 161331 (W.D. Mich. September 9, 2024), *quoting Simpson – Vlach v. Michigan Dept. of Education*, 2023 U.S. App. Lexis 11542 at *4 (Sixth Cir. May 10, 2023).
[76] *Tarrify Props. LLC v. Cuyahoga County*, 2022 U.S. Dist. Lexis 167083 at *5 (N.D. Ohio September 15, 2022) *quoting Sumpter v. Wayne County*, 868 F3d 473, 490-91 (Sixth Cir. 2017).
[77] Id.
[78] Id. *quoting Kanuszewski v. Michigan Dept. of Health*, 927 F.3d 396, 406 (6th Cir. 2019) (*quoting City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983) (internal citations omitted).

– Procedural Due Process and Right to Hearing (42 U.S.C. §1983 – Fourteenth Amendment) should be dismissed as to this Defendant.

**6)      Plaintiff suffered no injury as a result of any alleged actions of this Defendant.**

As addressed above, Plaintiff asserts that Plaintiff was injured and seeks damages as a result of additional conditions placed on Plaintiff allegedly by this Defendant in excess of court order.  However, according to Plaintiff's own allegations, Plaintiff was not even aware of the additional alleged conditions and suffered no violation as a result.  As directly alleged by Plaintiff, Plaintiff never violated any GPS monitoring conditions placed on him allegedly by this Defendant:

> 38.      Plaintiff never violated GPS monitoring conditions, and no violation was every alleged against him.[79]

Further, Plaintiff was not even aware of any additional restrictions being placed on Plaintiff until a preliminary hearing when the GPS monitor was removed:

> This testimony was Plaintiff's first notice that geographic restrictions on allegedly been imposed in connection with his monitoring.  Following the hearing, the Court ordered that the GPS monitor be removed the same day.[80]

Only after the GPS monitoring system was removed did Plaintiff allegedly seek "information regarding the exclusion zones that had allegedly been applied during his monitoring period."[81]

Despite admitting in the First Amended Complaint that Plaintiff had no knowledge of the alleged "exclusion zones" until the date the GPS monitoring system was removed, and that Plaintiff suffered no violations as a result, Plaintiff still alleges injury from a condition "arising from unauthorized liberty restrictions", "heightened exposure to accusations of 'zone violations'

---

[79] *See* ECF Doc. No. 33, First Amended Complaint, ¶38.
[80] Id. ¶39.
[81] Id. ¶49.

and related legal jeopardy" and "loss of liberty through coercive adherence to conditions never imposed by the judiciary."[82]   In Count IV, Plaintiff alleges injury due to exposure to arrest for undefined 'zone' violations …"[83]   In Count VI, Plaintiff alleges injury because Plaintiff was "subjected to undefined and unauthorized exclusion zones" and "exposed to potential 'violations' of terms he was never told existed …"[84]

As the Sixth Circuit has clearly ruled, an "injury in fact must be real, not abstract, actual, not theoretical, concrete, not amorphous."[85]   Taking Plaintiff's allegations in the First Amended Complaint regarding the alleged imposition by this Defendant of additional "exclusion zones" in excess of any court order, Plaintiff's own allegations demonstrate that Plaintiff suffered no injury in fact that was real, actual, or concrete.[86]   Plaintiff was never subject to any violation of any "exclusion zone" while being GPS monitored.[87]   It is undisputed that this Defendant did not order the imposition of GPS monitoring.   That was a court order.   Plaintiff's allegations as to this Defendant involve the imposition of "exclusion zones" allegedly not contained in any Court Order. However, taking all of Plaintiff's allegations as true, Plaintiff suffered absolutely no injury in fact as a result of any alleged "exclusion zone" allegedly imposed on Plaintiff by this Defendant.

Accordingly, Plaintiff has not alleged any injury in fact as a result of any additional "exclusion zones" allegedly placed by this Defendant.  As such, Plaintiff has not alleged any injury in fact as a result of this Defendant's actions and this Defendant should be dismissed as a matter of law.

---

[82] *See* ECF Doc. No. 33, First Amended Complaint, ¶266.
[83] *See* ECF Doc. No. 33, First Amended Complaint, ¶197(D).
[84] Id., ¶221.
[85] *Huff v. Telecheck Servs.*, 923 F.3d 458, 462 (6th Cir. 2019).
[86] Id.
[87] *See* ECF Doc. No. 33, First Amended Complaint, ¶38.

22

## CONCLUSION

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), this Defendant should

be dismissed from this lawsuit.


Dated:  May 4, 2026

<div style="margin-left: 40%;">

Respectfully submitted,

**McNABB, BRAGORGOS, BURGESS &
SORIN, PLLC**


*/s/ R. Scott McCullough*
R. SCOTT McCULLOUGH - #19499
RICHARD SORIN - #17569
Attorneys for Tracking Solutions, Inc.
81 Monroe, Sixth Floor
Memphis, Tennessee 38103
Telephone: (901) 624-0640
Fax: (901) 624-0650
smccullough@mbbslaw.com

</div>

23