# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARTIN SCOTT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:25-cv-01393 |
| | ) | JUDGE TRAUGER |
| **METRO. GOV'T. OF NASHVILLE** | ) | **JURY DEMAND** |
| **AND DAVIDSON COUNTY,** | ) | |
| | ) | |
| **TRACKING SOLUTIONS, INC.,** | ) | |
| | ) | |
| **MALLORY WITHERS,** | ) | |
| *in her individual capacity* | ) | |
| | ) | |
| **BRIAN CAVALIERE,** | ) | |
| *in his individual capacity* | ) | |
| | ) | |
| **TYLER LEWIS,** | ) | |
| *in his individual capacity* | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT TRACKING SOLUTIONS, INC.'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Plaintiff Martin Scott respectfully submits this Response in Opposition to Defendant Tracking Solutions, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint. For the reasons stated below, the motion should be denied.

## INTRODUCTION

1. Tracking Solutions' renewed motion rests on the same premise as its first motion to dismiss: because Tracking Solutions is a private corporation, it cannot be liable under 42

U.S.C. § 1983.[1] That premise is wrong because private status is not dispositive when the private defendant exercises coercive authority made possible by state law, participates in the State's deprivation of liberty, or performs a delegated governmental function within the state system.[2]

2.     The First Amended Complaint does not allege that Tracking Solutions was an ordinary vendor selling optional services to a willing customer.[3] It alleges that Plaintiff was in state custody, that a judicial commissioner imposed GPS monitoring as a condition of release, that Plaintiff could not obtain release unless a monitoring vendor attached a GPS device to his body, and that Tracking Solutions operated inside the Davidson County booking facility as the practical gateway between continued detention and release.[4]

3.     The First Amended Complaint alleges that Tracking Solutions required Plaintiff to sign its "GPS Monitoring Agreement and Release" before providing the device required for release, imposed or enforced restrictions and exclusion zones not contained in the judicial order, monitored Plaintiff's location data, and possessed authority to report alleged violations to law enforcement as grounds for arrest or detention.[5] The agreement itself confirms that Tracking Solutions' role was tied to the criminal court process: it states that all movements would be tracked by GPS and stored as an "official court record," prohibits Plaintiff from entering off-limits or exclusion zones, requires Plaintiff to acknowledge he was under Tracking Solutions' supervision, and provides that extended noncompliance with the agreement would be reported to the Court.[6] Those allegations plausibly plead state action under *Lugar*, *West*, the public-function

---

[1] ECF No. 40-1, PageID ## 819–826; see also, ECF No. 41.
[2] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937–39 (1982); *West v. Atkins*, 487 U.S. 42, 55–57 (1988).
[3] ECF No. 33 ¶¶ 35–39, 157–163, 209–213, 251–262.
[4] ECF No. 33 ¶¶ 35–37, 157–160, 209–212, 259–261.
[5] ECF No. 33 ¶¶ 37, 159–160, 209–212, 259–262.
[6] ECF No. 33, Ex. V, GPS Monitoring Agreement and Release, p. 1; Ex. V, Promissory Note for Payments of Electronic Monitoring Fees, p. 4.

doctrine, and the joint-action/nexus doctrine.[7] Furthermore, the nominal availability of Nationwide did not create a meaningful alternative because Plaintiff's only way to explore that option was to remain in custody and hope another vendor would respond or offer materially different terms.[8]

4.      Tracking Solutions' injury argument fails because a plaintiff need not plead that a GPS-zone violation was reported to plead injury from the physical attachment of a GPS device, continuous location tracking, compelled monitoring fees, loss of liberty, reputational harm, emotional distress, and exposure to violation accusations based on restrictions never ordered by a court.[9] Tracking Solutions' supplemental-jurisdiction argument fails because 28 U.S.C. § 1367 is action-wide, not defendant-by-defendant, and Count VIII arises from the same GPS-monitoring facts as Plaintiff's federal claims.[10]

5.      The motion should be denied in its entirety.

### STANDARD OF REVIEW

6.      A Rule 12(b)(6) motion tests the legal sufficiency of the complaint, not the merits. To survive dismissal, the complaint need only contain sufficient factual matter, accepted as true, to state a plausible claim for relief.[11] At this stage, the Court must accept well-pleaded factual allegations as true and draw all reasonable inferences in Plaintiff's favor.[12]

---

[7] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937–39 (1982); *West v. Atkins*, 487 U.S. 42, 55–57 (1988).
[8] ECF No. 33 ¶¶ 36, 260.
[9] ECF No. 33 ¶¶ 37–39, 60, 155, 173, 221, 259–262; *Grady v. North Carolina*, 575 U.S. 306, 309–10 (2015).
[10] 28 U.S.C. § 1367(a), (c)(3); ECF No. 33 ¶¶ 35–42, 143–223, 251–262.
[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[12] *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).

7. Tracking Solutions' Rule 12(b)(1) challenge is facial because it argues Count VIII should be dismissed only if the federal claims against Tracking Solutions are dismissed. On a facial Rule 12(b)(1) challenge, the Court takes the complaint's jurisdictional allegations as true and construes them in Plaintiff's favor.[13] Supplemental jurisdiction is governed by 28 U.S.C. § 1367, which applies to claims forming part of the same Article III case or controversy in the same civil action.[14]

## STATEMENT OF RELEVANT ALLEGATIONS

8. The First Amended Complaint alleges that Plaintiff was arrested on January 29, 2025, on additional charges procured by Defendants Lewis and Cavaliere.[15] At Plaintiff's initial appearance after that arrest, a Davidson County judicial commissioner imposed GPS monitoring as a condition of release by checking a box on a standardized form.[16] The commissioner made no individualized findings supporting GPS monitoring and did not identify any exclusion zones or geographic restrictions in the written order.[17]

9. Plaintiff could not secure release unless a qualified private monitoring vendor attached a GPS device to his body.[18] At the time of Plaintiff's arrest, Tracking Solutions and Nationwide Electronic Monitoring were the only two advertised vendors inside the booking facility.[19] Between those two vendors, Tracking Solutions responded to Plaintiff's request for monitoring services, and Plaintiff enrolled with Tracking Solutions.[20]

---

[13] *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).
[14] 28 U.S.C. § 1367(a), (c)(3).
[15] ECF No. 33 ¶ 34.
[16] ECF No. 33 ¶ 35.
[17] *Id*.
[18] ECF No. 33 ¶ 36.
[19] *Id*.
[20] *Id*.

10.     Tracking Solutions required Plaintiff to sign a "GPS Monitoring Agreement and Release" imposing undefined exclusion zones, additional restrictions, and liability waivers not ordered by any court.[21] Plaintiff never violated GPS monitoring conditions, and no GPS violation was ever alleged against him by Tracking Solutions.[22]

11.     During the March 27, 2025 preliminary hearing, Withers testified that Plaintiff was prohibited from being in two locations, including her residence, under the GPS monitoring system.[23] The written bail order contained no exclusion zones, and Withers's testimony was Plaintiff's first notice that geographic restrictions had allegedly been imposed in connection with his monitoring.[24] Plaintiff's bail order contained no findings of fact supporting any determination that Plaintiff posed a threat to Withers.[25] The bail order likewise contained no findings supporting GPS monitoring, no indication that Plaintiff's ability to pay was assessed, no indication that Withers was consulted, and no identification or disclosure of any exclusion zones.[26] The General Sessions Court ordered the GPS monitor removed the same day.[27]

12.     Plaintiff obtained approximately 1,300 Davidson County Orders Granting Bail for Abuse Cases entered between July 2024 and September 2025, and only 35 contained any information identifying exclusion zones.[28] In the remaining orders, the sections designated for exclusion-zone information were left blank.[29] The vast majority of the forms contained no individualized findings of fact supporting either GPS monitoring or bail.[30]

---

[21] ECF No. 33 ¶ 37.
[22] ECF No. 33 ¶ 38.
[23] ECF No. 33 ¶ 39.
[24] *Id*.
[25] ECF No. 33 ¶ 40.
[26] ECF No. 33 ¶ 41.
[27] ECF No. 33 ¶ 39.
[28] ECF No. 33 ¶ 42.
[29] *Id*.
[30] *Id*.

13.  In May 2025, Plaintiff contacted Tracking Solutions seeking information regarding the exclusion zones that had allegedly applied during his monitoring period.[31] Tracking Solutions responded that the information constituted "victim information" and could be obtained only by subpoena.[32] On May 21, 2025, Tracking Solutions' owner stated that the company would not provide exclusion-zone information to defendants absent a court order.[33]

14.  The Metropolitan Clerk's Office reported that it searched its contract database and found no recorded contract with Tracking Solutions.[34] A bonding company involved in Plaintiff's release confirmed that bonding companies are not notified of GPS exclusion zones and had received no documentation identifying any such zones in Plaintiff's case.[35] General Sessions Administrator Kyle Sowell stated on May 28, 2025, that Metro Procurement was still in the process of awarding the monitoring contract and that there was no written agreement to provide.[36]

15.  Plaintiff alleges that the criminal prosecutions caused two arrests, brief periods of incarceration, attorney's fees, bond-related expenses, GPS monitoring fees, loss of firearm possession during the pendency of the charges, reputational harm, and emotional distress.[37]

## ARGUMENT

### a) THE FIRST AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT TRACKING SOLUTIONS ACTED UNDER COLOR OF STATE LAW.

16.  Section 1983 imposes liability on a defendant who, under color of state law, deprives a person of rights secured by the Constitution or federal law.[38] Private status alone does

---

[31] ECF No. 33 ¶ 49.
[32] *Id*.
[33] *Id*.
[34] ECF No. 33 ¶ 50.
[35] ECF No. 33 ¶ 51.
[36] ECF No. 33 ¶ 53.
[37] ECF No. 33 ¶ 60.
[38] 42 U.S.C. § 1983.

not defeat § 1983 liability because private conduct may constitute state action when the conduct is fairly attributable to the State.[39] The Supreme Court has described the state-action inquiry as "necessarily fact-bound."[40] The Sixth Circuit recognizes multiple tests for private-party state action, including public function, state compulsion, nexus or symbiotic relationship, and entwinement.[41] Those tests are not rigid silos because the ultimate inquiry remains whether the challenged conduct may fairly be attributed to the State.[42] The First Amended Complaint plausibly pleads state action under several overlapping theories.[43]

### i) *Tracking Solutions performed a delegated governmental function within Tennessee's pretrial-release system.*

17. Tracking Solutions argues that Plaintiff's § 1983 claims fail because Tracking Solutions is a private corporation.[44] That argument overlooks the First Amended Complaint's allegations that Tracking Solutions administered GPS monitoring for pretrial defendants under color of state law and provided GPS monitoring services for Metro and Davidson County criminal courts.[45] The First Amended Complaint alleges that Plaintiff was in custody and could not obtain release unless a monitoring vendor attached a GPS device to his body.[46] The First Amended Complaint alleges that Tracking Solutions operated inside the Davidson County jail and functioned as the mandatory gateway through which Plaintiff obtained release from custody.[47] The First Amended Complaint alleges that Tracking Solutions physically attached the device, continuously monitored Plaintiff's location data, imposed movement restrictions and

---

[39] *Lugar*, 457 U.S. at 937.
[40] *Lugar*, 457 U.S. at 939.
[41] *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014).
[42] *Brentwood*, 531 U.S. at 295–96.
[43] ECF No. 33 ¶¶ 35–39, 49–53, 57, 157–163, 209–213, 251–262.
[44] ECF No. 40-1, PageID ## 819–826.
[45] ECF No. 33 ¶ 6.
[46] ECF No. 33 ¶¶ 35–36, 158–160, 209–212.
[47] ECF No. 33 ¶¶ 36, 159, 209.

exclusion zones, and possessed authority to report alleged violations directly to law enforcement as grounds for arrest or detention.[48]

18.     Those allegations place Tracking Solutions inside the State's pretrial-release machinery, not outside it.[49] Tennessee's GPS-monitoring statute confirms the governmental nature of the function because it governs court-ordered GPS monitoring of criminal defendants and integrates monitoring providers into the enforcement of judicially imposed pretrial conditions.[50] Tennessee law defines a "qualified contract service provider" by reference to a written agreement with the issuing court and monitoring requirements imposed through the criminal-release process.[51] Tennessee law requires that, when GPS monitoring is ordered, the magistrate specifically describe the locations the defendant is prohibited from approaching and the minimum distances the defendant must maintain.[52] Tennessee law requires the monitoring entity to notify law enforcement or dispatch when a defendant violates a monitoring condition.[53] Tennessee law further requires the county or municipality to enter into a written agreement with a qualified contract service provider before GPS monitoring services are provided under the statutory framework.[54]

19.     Those statutory provisions matter because the First Amended Complaint alleges that Tracking Solutions assumed the role of pretrial-monitoring provider without the required written agreement and then exercised operational authority over Plaintiff's liberty.[55] The State

---

[48] ECF No. 33 ¶ 159.
[49] ECF No. 33 ¶¶ 35–39, 157–163, 209–213.
[50] Tenn. Code Ann. § 40-11-152(a), (c), (f), (k).
[51] Tenn. Code Ann. § 40-11-152(a)(2).
[52] Tenn. Code Ann. § 40-11-152(c).
[53] Tenn. Code Ann. § 40-11-152(f).
[54] Tenn. Code Ann. § 40-11-152(k).
[55] ECF No. 33 ¶¶ 50, 53, 159, 162, 257.

may not avoid constitutional accountability by delegating a coercive governmental function to a private entity and then characterizing the resulting conduct as private.[56]

20.     In *West*, the Supreme Court held that a private physician acted under color of state law when the State delegated a function within the state prison system and the physician exercised authority in that state-created custodial context.[57] The relevant question under *West* is the function performed within the state system, not whether the defendant is formally a public employee.[58] The same principle applies here because the First Amended Complaint alleges that Tracking Solutions exercised coercive authority over Plaintiff's body, movements, location data, and pretrial liberty only because the State's criminal process made that authority possible.[59]

### ii)     *The First Amended Complaint satisfies Lugar.*

21.     *Lugar* asks whether the deprivation was caused by the exercise of a state-created right, privilege, or rule of conduct and whether the private party may fairly be treated as a state actor.[60] The first *Lugar* requirement is satisfied because Plaintiff's GPS monitoring arose from Tennessee's statutory pretrial-release framework and a judicial order imposing GPS monitoring as a condition of release.[61] Tracking Solutions' authority to restrain Plaintiff's liberty existed only because the State conditioned release on GPS monitoring and made private vendors part of the mechanism for implementing that condition.[62]

22.     The second *Lugar* requirement is satisfied because Tracking Solutions allegedly operated inside the jail, attached the device required for release, created or enforced monitoring

---

[56] *West*, 487 U.S. at 55–57.
[57] *Id*.
[58] *Id*. at 55–56.
[59] ECF No. 33 ¶¶ 35–39, 157–163, 209–213.
[60] *Lugar*, 457 U.S. at 937.
[61] ECF No. 33 ¶¶ 35, 157–158; Tenn. Code Ann. §§ 40-11-150, 40-11-152.
[62] ECF No. 33 ¶¶ 35–37, 157–160, 209–212.

9

terms, monitored Plaintiff's location, and could report alleged violations to law enforcement.[63] Tracking Solutions' argument that it acted "independently" or "unilaterally" does not defeat state action because the abuse of authority made possible by state law is itself action under color of law.[64] The First Amended Complaint alleges that exact kind of abuse because Tracking Solutions allegedly imposed undefined exclusion zones and contractual obligations beyond those ordered by a judicial officer while exercising authority Plaintiff could not refuse without remaining in custody.[65] Tracking Solutions therefore exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."[66]

### iii) The public-function doctrine supports state action.

23.    The public-function doctrine applies when a private entity performs a function traditionally and exclusively reserved to the State.[67] Tracking Solutions argues that GPS monitoring is not comparable to elections, eminent domain, or operating a company town.[68] That framing is too abstract because the function alleged here is not merely "technology services" or "monitoring services."[69] The function alleged here is the physical restraint, continuous surveillance, and enforcement of pretrial liberty conditions against an accused person whose release from custody depended on compliance with those conditions.[70]

24.    The First Amended Complaint alleges that Tracking Solutions monitored accused persons, enforced pretrial release conditions, and reported alleged violations that could trigger arrest or detention.[71] Supervising criminal defendants' pretrial liberty and enforcing conditions

---

[63] ECF No. 33 ¶¶ 36–39, 49, 57, 159–160, 209–212, 259–262.
[64] *Lugar*, 457 U.S. at 929; *United States v. Classic*, 313 U.S. 299, 326 (1941).
[65] ECF No. 33 ¶¶ 37, 159–162, 209–212, 259–262.
[66] *Classic*, 313 U.S. at 326.
[67] *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352–53 (1974).
[68] ECF No. 40-1, PageID ## 827–828.
[69] ECF No. 33 ¶¶ 35–39, 157–163, 209–213.
[70] ECF No. 33 ¶¶ 35–39, 157–163, 209–213.
[71] ECF No. 33 ¶¶ 159–160, 209–212.

10

backed by arrest or detention are governmental functions embedded in the administration of criminal justice.[72] Tracking Solutions was not alleged to have sold Plaintiff a consumer location device in a private transaction.[73] Tracking Solutions was alleged to have implemented and enforced a state-imposed condition of release within a custodial pretrial system.[74] Those allegations plausibly satisfy the public-function doctrine at the pleading stage.[75]

*iv)* ***The joint-action and nexus doctrines support state action.***

25. The nexus or joint-action doctrine asks whether the State is sufficiently involved in the challenged conduct such that the conduct may fairly be treated as that of the State.[76] Tracking Solutions argues that Plaintiff alleges only unilateral private conduct.[77] The First Amended Complaint alleges more.[78] The State imposed GPS monitoring as a condition of release, Plaintiff remained in custody until a vendor attached the monitoring device, Tracking Solutions operated inside the jail facility, Tracking Solutions provided the device required for release, Tracking Solutions monitored Plaintiff's location, and Tracking Solutions possessed authority to report violations to law enforcement.[79] That is not mere cooperation with the government.[80] It is alleged direct participation in the deprivation itself.[81]

26. The First Amended Complaint also alleges that Tennessee law expressly integrates electronic-monitoring providers into enforcement of pretrial liberty restrictions and requires formal written relationships between governmental entities and monitoring vendors.[82]

[72] ECF No. 33 ¶¶ 35–39, 157–163, 209–213; Tenn. Code Ann. §§ 40-11-150, 40-11-152.
[73] ECF No. 33 ¶¶ 35–39, 157–163, 209–213.
[74] ECF No. 33 ¶¶ 35–39, 157–163, 209–213.
[75] *Jackson*, 419 U.S. at 352–53; *Lugar*, 457 U.S. at 939.
[76] *Brentwood*, 531 U.S. at 295–96; *Lugar*, 457 U.S. at 937.
[77] ECF No. 40-1, PageID ## 829–831.
[78] ECF No. 33 ¶¶ 35–39, 49–53, 57, 157–163, 209–213, 259–262.
[79] ECF No. 33 ¶¶ 35–37, 157–160, 209–212.
[80] ECF No. 33 ¶¶ 35–39, 157–163, 209–213.
[81] ECF No. 33 ¶¶ 35–39, 157–163, 209–213.
[82] ECF No. 33 ¶ 162; Tenn. Code Ann. § 40-11-152(k).

The absence of a written agreement does not sever Tracking Solutions from the state-action analysis; it reinforces Plaintiff's allegation that Tracking Solutions exercised pretrial-supervision authority in a manner not accompanied by the statutory safeguards Tennessee law requires.[83] A private actor cannot avoid § 1983 liability by claiming that it exercised delegated governmental power in an unauthorized or procedurally defective manner.[84]

### v) The entwinement doctrine supports allowing the claim to proceed.

27. The entwinement doctrine asks whether the nominally private character of the actor's challenged conduct is overborne by the involvement of public institutions or public officials in the private actor's composition, workings, or challenged function.[85] Tracking Solutions emphasizes that *Brentwood* involved pervasive public-school involvement in the Tennessee Secondary School Athletic Association. ECF No. 40-1, PageID ## 831–835. Plaintiff need not prove *Brentwood*-level institutional entwinement at the pleading stage because state action may be shown through other routes, including *Lugar* joint participation, *West* delegation, public function, and nexus.[86]

28. In any event, the First Amended Complaint plausibly alleges functional entwinement because Tracking Solutions allegedly operated inside the booking facility, implemented a judicially imposed release condition, exercised authority over the practical terms of Plaintiff's liberty, monitored Plaintiff on behalf of the pretrial system, and reported alleged violations to law enforcement.[87] Tracking Solutions' challenged conduct was therefore not

---

[83] ECF No. 33 ¶¶ 50, 53, 162, 257.
[84] See generally, *Lugar*, 457 U.S. at 929; *Classic*, 313 U.S. at 326.
[85] *Brentwood*, 531 U.S. at 295–98.
[86] *Lugar*, 457 U.S. at 937–39; *West*, 487 U.S. at 55–57; *Brentwood*, 531 U.S. at 295–96.
[87] ECF No. 33 ¶¶ 35–39, 49, 57, 159–160, 209–212.

12

detached from the State's criminal-release system.[88] The challenged conduct was part of the mechanism through which Plaintiff moved from state custody to conditional release.[89]

### b) **TRACKING SOLUTIONS' AUTHORITIES ARE DISTINGUISHABLE.**

29.     Tracking Solutions relies on substantially the same private-actor authorities it raised in its first motion to dismiss. Plaintiff previously addressed those authorities in detail in his response to Tracking Solutions' original motion, explaining why *Anders*, *West*, *Adams*, *Leta*, *Stark*, *Kerns*, and *Burkhalter* either support Plaintiff or are distinguishable from a jail-based pretrial-monitoring case.[90] Plaintiff incorporates those arguments by reference to the extent they remain applicable to the First Amended Complaint and supplements them below with the First Amended Complaint specific allegations now before the Court.

30.     Tracking Solutions' authorities do not involve a private company embedded in a jail-based pretrial-release system, physically attaching a GPS device to an accused person as a condition of release, administering continuous location surveillance, imposing or enforcing operational restrictions, and reporting alleged violations to law enforcement. The First Amended Complaint alleges precisely those facts.[91]

31.     *Anders* involved private divorce-related actors and a legal-services organization, not a private entity exercising custodial authority over a criminal defendant's pretrial release.[92] Tracking Solutions' alleged conduct is materially different because the First Amended Complaint alleges that Tracking Solutions operated inside the jail, conditioned release on compliance with

---

[88] ECF No. 33 ¶¶ 35–39, 157–163, 209–213.
[89] ECF No. 33 ¶¶ 35–37, 157–160, 209–212.
[90] See ECF No. 14, PageID ## 125–139.
[91] ECF No. 33 ¶¶ 35–39, 157–163, 209–213, 259–262.
[92] See ECF No. 14, PageID ## 126–127.

its terms, attached a GPS device to Plaintiff's body, imposed restrictions not ordered by a court, monitored location data, and could report violations as grounds for arrest or detention.[93]

32.     *West* supports Plaintiff rather than Tracking Solutions because *West* held that a private physician acted under color of state law when the State delegated a function within the state prison system and the physician exercised that function in a custodial context.[94] As Plaintiff previously explained, the relevant question is the function performed within the state system, not the defendant's formal private status.[95] Tracking Solutions' alleged role is analogous because Plaintiff could not obtain release unless Tracking Solutions performed a state-integrated pretrial-supervision function by attaching the GPS device and administering the monitoring regime.[96]

33.     *Adams* involved internal employment decisions by a nonprofit community action agency, not direct coercive control over a criminal defendant's body, movements, and pretrial liberty.[97] Tracking Solutions' alleged conduct involved physical restraint, location surveillance, release conditions, and violation reporting tied to arrest or detention, which are not comparable to internal personnel decisions.[98]

34.     *Leta* involved private medical providers administering vaccinations to children in foster care, not a private entity operating in a jail facility and implementing conditions of criminal pretrial release.[99] Tracking Solutions' alleged authority was custodial and coercive

---

[93] ECF No. 33 ¶¶ 36–37, 159–160, 209–212, 259–262.
[94] *West v. Atkins*, 487 U.S. 42, 55–57 (1988).
[95] See ECF No. 14, PageID ## 127–128.
[96] ECF No. 33 ¶¶ 35–37, 159–160, 209–212.
[97] See ECF No. 14, PageID ## 128–129.
[98] ECF No. 33 ¶¶ 36–39, 159–160, 209–212.
[99] See ECF No. 14, PageID ## 130–131.

14

because Plaintiff could not obtain release without the device and could be exposed to arrest or detention based on alleged monitoring violations.[100]

35. *Stark* involved private conduct and personal-capacity conduct, not a private entity allegedly carrying out pretrial-supervision authority inside a jail-based release system.[101] Tracking Solutions' alleged conduct was possible only because the State placed Plaintiff in custody and conditioned his release on electronic monitoring.[102]

36. *Kerns* involved a private drilling company's use of regulatory procedures, not a private actor physically implementing a state-imposed restraint on an accused person's liberty.[103] Tracking Solutions did not merely benefit from regulation or invoke state procedures; it allegedly implemented, administered, and enforced the pretrial liberty restriction itself.[104]

37. *Burkhalter* involved private business owners who submitted affidavits supporting a nuisance-abatement petition, not a private company that allegedly executed the deprivation by physically attaching a GPS device and controlling the conditions of release.[105] Tracking Solutions' alleged role was not passive information provision; it was direct participation in a pretrial restraint on Plaintiff's liberty.[106]

c) **PLAINTIFF DID NOT "VOLUNTARILY" CONTRACT AWAY HIS CONSTITUTIONAL RIGHTS.**

38. Tracking Solutions argues that Plaintiff voluntarily contracted with it because Nationwide was also advertised in the booking facility and because Plaintiff "enrolled" with Tracking Solutions.[107] That argument fails because it draws inferences against Plaintiff at the

---

[100] ECF No. 33 ¶¶ 36–37, 159–160, 209–212.
[101] See ECF No. 14, PageID ## 131–132.
[102] ECF No. 33 ¶¶ 35–37, 157–160, 209–212.
[103] See ECF No. 14, PageID ## 132–133.
[104] ECF No. 33 ¶¶ 35–39, 159–160, 209–212.
[105] See ECF No. 14, PageID ## 133–134.
[106] ECF No. 33 ¶¶ 36–39, 159–160, 209–212.
[107] ECF No. 40-1, PageID ## 835–837.

pleading stage.[108] The First Amended Complaint alleges that Plaintiff was in custody and could not secure release unless a monitoring vendor attached a GPS device.[109] The First Amended Complaint alleges that Tracking Solutions was the vendor that responded while Plaintiff was taking the necessary steps to secure release.[110] The First Amended Complaint alleges that Tracking Solutions required execution of its "Monitoring Agreement and Release" as a prerequisite to providing the device necessary for release.[111] The First Amended Complaint alleges that Plaintiff had no practical ability to avoid contracting with a monitoring company because he could not obtain release without securing the monitoring device.[112] Those allegations plausibly plead coercion, not voluntary commercial choice.[113]

39. The relevant choice was not whether Plaintiff preferred Tracking Solutions or Nationwide in an open marketplace.[114] The relevant choice was whether Plaintiff would sign the agreement demanded by the vendor who responded inside the booking facility or remain in custody.[115] A coerced condition of release does not become voluntary merely because it is documented in a private contract, and the nominal availability of Nationwide did not create a meaningful alternative where Plaintiff's only way to explore that option was to remain in custody and hope that another vendor would respond or offer materially different terms.[116] Nor can a private vendor avoid constitutional scrutiny by requiring an arrestee to sign liability waivers and extra-judicial restrictions before permitting release from custody.[117] At minimum, whether

[108] *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).
[109] ECF No. 33 ¶¶ 35–36, 209–211, 260.
[110] ECF No. 33 ¶¶ 36, 260.
[111] ECF No. 33 ¶¶ 37, 210–211, 259–261.
[112] ECF No. 33 ¶ 260.
[113] ECF No. 33 ¶¶ 36–37, 209–212, 259–261.
[114] ECF No. 33 ¶¶ 36, 260.
[115] ECF No. 33 ¶¶ 36–37, 209–212, 259–261.
[116] ECF No. 33 ¶¶ 36–37, 209–212, 259–261.
[117] ECF No. 33 ¶¶ 37, 210–212, 259–262.

Plaintiff had a meaningful voluntary alternative is a factual issue that cannot be resolved on a Rule 12(b)(6) motion.[118]

### d) COUNTS IV AND VI PLAUSIBLY ALLEGE CONSTITUTIONAL DEPRIVATIONS CAUSED BY TRACKING SOLUTIONS.

#### i) Count IV plausibly alleges an unreasonable Fourth Amendment search.

40. The Fourth Amendment prohibits unreasonable searches and seizures.[119] Attaching a GPS device to a person's body and using that device to track the person's movements constitutes a search.[120] The Supreme Court has likewise held that physical installation and use of a GPS device to monitor movements constitutes a Fourth Amendment search.[121] Long-term location tracking is especially intrusive because it can reveal the privacies of life.[122]

41. The First Amended Complaint alleges that Tracking Solutions attached a GPS device to Plaintiff's body and continuously monitored his location as a condition of pretrial release.[123] The First Amended Complaint alleges that the GPS monitoring occurred without individualized judicial findings, without defined exclusion zones, without ability-to-pay findings, without disclosure of the governing restrictions, and through vendor-created operational restrictions not contained in the judicial order.[124] The First Amended Complaint alleges that Tracking Solutions imposed or enforced undefined exclusion zones and that Plaintiff first learned of those alleged restrictions during Withers's testimony at the preliminary hearing.[125] Those allegations plausibly state that Tracking Solutions participated in an unreasonable GPS search by

---

[118] *Keys*, 684 F.3d at 608; *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).
[119] U.S. Const. amend. IV.
[120] *Grady*, 575 U.S. at 309–10.
[121] *United States v. Jones*, 565 U.S. 400, 404–05 (2012).
[122] *Carpenter v. United States*, 585 U.S. 296, 310–11 (2018).
[123] ECF No. 33 ¶¶ 35–37, 147, 155, 159.
[124] ECF No. 33 ¶¶ 35, 37–42, 147–156, 159–163.
[125] ECF No. 33 ¶¶ 37–39, 152, 155, 259–262.

17

administering continuous electronic surveillance without individualized findings, defined parameters, notice, or adequate safeguards.[126]

### ii) *Count VI plausibly alleges deprivation of liberty without due process.*

42.     The Fourteenth Amendment prohibits the deprivation of liberty without due process of law.[127] Pretrial liberty is a protected constitutional interest.[128] The amount of process required before a liberty deprivation depends on the private interest affected, the risk of erroneous deprivation, the probable value of additional safeguards, and the government's interest.[129] The First Amended Complaint alleges that Plaintiff was subjected to continuous electronic monitoring, movement restrictions, financial obligations, and risk of arrest for alleged violations of restrictions that were not disclosed to him.[130] The First Amended Complaint alleges that the judicial order did not define the monitoring terms, identify exclusion zones, or provide Plaintiff meaningful notice of the conditions governing his liberty.[131] The First Amended Complaint alleges that Tracking Solutions filled that gap by requiring Plaintiff to sign an agreement imposing additional restrictions and obligations not contained in the judicial order.[132] The First Amended Complaint alleges that Tracking Solutions created and enforced operational rules governing Plaintiff's liberty and conditioned release on acceptance of those terms.[133] Those allegations plausibly state a procedural due process claim because they allege a substantial

---

[126] ECF No. 33 ¶¶ 143–163; *Grady*, 575 U.S. at 309–10; *Jones*, 565 U.S. at 404–05; *Carpenter*, 585 U.S. at 310-11.

[127] U.S. Const. amend. XIV.

[128] *United States v. Salerno*, 481 U.S. 739, 750 (1987).

[129] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[130] ECF No. 33 ¶¶ 37–39, 155, 205–212, 221.

[131] ECF No. 33 ¶¶ 35, 39–41, 205–207.

[132] ECF No. 33 ¶¶ 37, 210–212, 259–262.

[133] ECF No. 33 ¶¶ 209–212, 259–262.

deprivation of pretrial liberty without meaningful notice, hearing, judicial findings, or disclosure of the restrictions governing Plaintiff's conduct.[134]

e) **PLAINTIFF PLAUSIBLY ALLEGES INJURY IN FACT AND DAMAGES.**

43.     Tracking Solutions argues that Plaintiff suffered no actual, concrete injury from Tracking Solutions' alleged conduct because Plaintiff never violated GPS monitoring conditions and no violation was alleged.[135] That argument improperly treats a later zone violation as the only possible injury.[136] The First Amended Complaint alleges completed injuries that occurred regardless of whether a violation was later reported.[137] Those injuries include the physical attachment of a GPS device, continuous electronic surveillance, payment of monitoring fees, loss of liberty, reputational harm, emotional distress, and exposure to perceived violations based on undisclosed restrictions.[138]

44.     Tracking Solutions' no-injury argument depends on artificially separating its conduct from the GPS-monitoring regime it allegedly implemented.[139] Tracking Solutions cannot simultaneously characterize itself as merely carrying out court-ordered monitoring while avoiding responsibility for injuries caused by that monitoring if, as alleged, it acted under color of law in administering the monitoring regime.[140] The First Amended Complaint alleges that Tracking Solutions was not a passive vendor after the fact, but the entity that required the agreement, attached the GPS device, administered the monitoring regime, imposed or enforced undisclosed exclusion zones, and withheld exclusion-zone information.[141] If those allegations are

---

[134] ECF No. 33 ¶¶ 199–223; *Mathews*, 424 U.S. at 335; *Salerno*, 481 U.S. at 750.
[135] ECF No. 40, PageID ## 817–818; ECF No. 40-1, PageID ## 837–839.
[136] ECF No. 40, PageID ## 817–818; ECF No. 40-1, PageID ## 837–839.
[137] ECF No. 33 ¶¶ 37–39, 60, 155, 173, 221, 259–262.
[138] ECF No. 33 ¶¶ 37–39, 60, 155, 173, 221, 259–262.
[139] ECF No. 41, PageID ## 861–863; ECF No. 33 ¶¶ 35–37, 157–160, 209–212.
[140] *Lugar*, 457 U.S. at 937–39; *West*, 487 U.S. at 55–57; ECF No. 33 ¶¶ 157–163, 209–213.
[141] ECF No. 33 ¶¶ 37, 49, 57, 159–160, 209–212, 259–262.

19

accepted as true, Plaintiff's injuries are fairly traceable to Tracking Solutions' participation in the state-imposed monitoring system, including the physical attachment of the device, continuous location tracking, monitoring fees, liberty restraints, and emotional and reputational harms.[142] The absence of a reported zone violation does not erase those completed injuries; it only means Plaintiff was not additionally arrested or sanctioned for violating the undisclosed restrictions.[143]

**f)** **TRACKING SOLUTIONS' PROSPECTIVE-RELIEF ARGUMENT DOES NOT JUSTIFY DISMISSAL.**

45.     Tracking Solutions argues that Plaintiff lacks standing to seek declaratory or injunctive relief against it.[144] Even if the Court were to limit prospective relief against Tracking Solutions, that would not support dismissal of Counts IV, VI, or VIII.[145] A dispute over the scope of available equitable relief is not a basis to dismiss damages claims for completed constitutional and tort injuries.[146] Plaintiff's damages claims remain live because the First Amended Complaint alleges completed injuries from physical GPS attachment, continuous monitoring, monitoring fees, loss of liberty, reputational harm, emotional distress, and exposure to violation allegations based on undisclosed restrictions.[147]

46.     The First Amended Complaint also alleges that the challenged GPS-monitoring practices remain in effect and are capable of repetition yet evading review because initial-appearance GPS determinations occur rapidly and often terminate before meaningful judicial review can occur.[148] That allegation is reinforced by the First Amended Complaint's allegations that Plaintiff remains exposed to renewed criminal process arising from the same

---

[142] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Grady*, 575 U.S. at 309–10; ECF No. 33 ¶¶ 37–39, 60, 155, 173, 221, 259–262.
[143] *Grady*, 575 U.S. at 309–10; ECF No. 33 ¶¶ 38–39, 60, 173, 221, 262.
[144] ECF No. 40, PageID ## 817–818; ECF No. 40-1, PageID ## 839–840.
[145] *Lujan*, 504 U.S. at 560–61.
[146] *Id.*; ECF No. 33 ¶¶ 173, 221, 223, 250, 262.
[147] ECF No. 33 ¶¶ 37–39, 60, 155, 173, 221, 259–262.
[148] ECF No. 33 ¶¶ 42, 167–172, 196, 222.

underlying dispute: the District Attorney's Office allegedly warned that if Plaintiff continued attempting to seek warrants against Withers, the State would "see about pursuing more warrants" against him, and the State later allegedly conditioned dismissal of the criminal cases on Plaintiff withdrawing his "1099 and tax claims."[149] Those allegations support a plausible, non-speculative risk that Plaintiff could again be subjected to Metro's initial-appearance and GPS-monitoring regime if the same charging machinery is reactivated.[150] At minimum, Tracking Solutions' standing argument concerns the proper scope of prospective relief and does not justify dismissal of Plaintiff's claims for damages arising from completed injuries.[151]

### g) THE COURT HAS SUPPLEMENTAL JURISDICTION OVER COUNT VIII.

47.     Tracking Solutions argues that Count VIII must be dismissed if the federal claims against Tracking Solutions are dismissed.[152] That argument misstates § 1367 because supplemental jurisdiction is determined by reference to the civil action, not defendant-by-defendant.[153] Section 1367(a) provides that, in any civil action in which the district court has original jurisdiction, the district court has supplemental jurisdiction over other claims that are so related to claims within original jurisdiction that they form part of the same Article III case or controversy.[154] Section 1367(a) expressly includes claims involving the joinder or intervention of additional parties.[155] Section 1367(c)(3) permits a court to decline supplemental jurisdiction only when the court "has dismissed all claims over which it has original jurisdiction."[156]

---

[149] ECF No. 33 ¶¶ 47, 55.
[150] ECF No. 33 ¶¶ 35–42, 47, 55, 167–172, 196, 222.
[151] ECF No. 33 ¶¶ 37–39, 60, 155, 173, 221, 259–262.
[152] ECF No. 40, PageID ## 817–818; ECF No. 40-1, PageID ## 821, 835–836.
[153] 28 U.S.C. § 1367(a).

[154] 28 U.S.C. § 1367(a).
[155] 28 U.S.C. § 1367(a).
[156] 28 U.S.C. § 1367(c)(3).

48.     The First Amended Complaint asserts federal claims against Metro, Withers, Cavaliere, Lewis, and Tracking Solutions.[157] Even if the Court dismissed the federal claims against Tracking Solutions, federal claims would remain pending in the same civil action against other Defendants.[158] Count VIII arises from the same GPS-monitoring facts that support Counts IV and VI because all three claims concern the judicially imposed monitoring condition, Tracking Solutions' role in attaching and administering the device, the absence of judicially defined exclusion zones, the absence of a written agreement, the vendor-created restrictions, and the resulting liberty and financial injuries.[159] Count VIII therefore shares a common nucleus of operative fact with Plaintiff's federal claims.[160] Because all federal claims in the civil action have not been dismissed, § 1367(c)(3) does not require dismissal of Count VIII.[161] Tracking Solutions' cited supplemental-jurisdiction authorities do not require dismissal because they address discretionary treatment of state-law claims after dismissal of federal claims, not a rule that state-law claims must be dismissed defendant-by-defendant while related federal claims remain pending in the same action.[162] The Court should reject Tracking Solutions' Rule 12(b)(1) challenge to Count VIII.[163]

**h) <u>COUNT VIII PLAUSIBLY STATES CLAIMS FOR NEGLIGENCE AND NEGLIGENCE PER SE.</u>**

49.     Tracking Solutions does not substantively challenge the elements of Count VIII. Instead, its Count VIII argument depends on dismissal of the federal claims against Tracking Solutions and the premise that the Court should then decline supplemental jurisdiction over the

---

[157] ECF No. 33 ¶¶ 1, 61–109, 143–223.

[158] ECF No. 33 ¶¶ 61–109, 143–223.

[159] ECF No. 33 ¶¶ 35–42, 49–53, 57, 143–223, 251–262.

[160] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Berrios-Cintron v. Cordero*, 976 F. Supp. 110, 1997 U.S. Dist. LEXIS 13377.

[161] 28 U.S.C. § 1367(c)(3).

[162] 28 U.S.C. § 1367(a), (c)(3); *Gibbs*, 383 U.S. at 725.

[163] 28 U.S.C. § 1367(a), (c)(3).

remaining state-law claim.[164] That argument fails for the reasons stated above because Plaintiff has plausibly stated federal claims against Tracking Solutions, and, in any event, supplemental jurisdiction is assessed by reference to the civil action, not defendant-by-defendant.

50. To the extent Tracking Solutions' general "no injury" argument is intended to reach Count VIII, it still fails. The First Amended Complaint alleges that Tracking Solutions required Plaintiff to sign an agreement imposing undefined exclusion zones, additional restrictions, liability waivers, indemnification provisions, financial obligations, and compliance terms not ordered by any court, and that Tracking Solutions conditioned Plaintiff's release from custody on execution of that agreement.[165] The First Amended Complaint further alleges concrete harms including GPS monitoring fees, loss of liberty, reputational harm, emotional distress, and exposure to perceived violations based on conditions Plaintiff did not know existed.[166] Those allegations are sufficient at the pleading stage, particularly where Tracking Solutions has not separately challenged the duty, breach, causation, or negligence-per-se elements of Count VIII.

### i) **DISMISSAL WITH PREJUDICE WOULD BE IMPROPER IN THE ALTERNATIVE.**

51. If the Court concludes that any allegation is insufficiently pleaded, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice.[167]

### j) **CONCLUSION**

52. For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Tracking Solutions, Inc.'s Motion to Dismiss the First Amended Complaint in its entirety.

---

[164] ECF No. 41, PageID ## 843, 858–859.
[165] ECF No. 33 ¶¶ 37, 209–212, 259–262.
[166] ECF No. 33 ¶¶ 60, 173, 221, 262.
[167] Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Date filed: May 18, 2026.

Respectfully submitted,


s/Cody Johnson/
Cody Johnson, Esq.
BPR No. 037568
Turklay Law, PLLC
Attorney for Plaintiff
102 E Main Street Suite A
Lebanon, TN 37087
P: (629) 200-7774
Cody@TurklayLaw.com

24