IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MARTIN SCOTT,<br>　　　Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 3:25-cv-01393 |
| METROPOLITAN GOVERNMENT OF<br>NASHVILLE AND DAVIDSON<br>COUNTY, *et al.*,<br>　　　Defendants. | ) ) ) ) ) | Judge Trauger<br><br>JURY DEMAND |

**<u>METRO NASHVILLE'S REPLY IN SUPPORT<br>OF ITS MOTION TO DISMISS</u>**

Plaintiff does not challenge any Metro Nashville custom, policy, or practice. Instead, he challenges the practices of judicial commissioners that are performing a state function. The state law framework establishes that the night court commissioners are administrating a state process, not a county process that Metro Nashville controls. Because judicial commissioners perform a state function that Metro Nashville does not control, it cannot be liable. Thus, Plaintiff's claims fail at the pleading stage.

**I.　　Plaintiff cannot connect his injuries to any Metro Nashville policy.**

"The plaintiff must identify the policy, connect the policy to the county itself, and show that the particular injury was incurred because of the execution of that policy." *Johnson v. Turner*, 125 F.3d 324, 335 (6th Cir. 1997) (cleaned up). Here, every action identified by Plaintiff that caused his constitutional injuries cannot be connected to Metro Nashville. Start with imposing enhanced bail conditions, like GPS monitoring, without individualized fact finding or analyzing the ability to pay. While Plaintiff claims "Metro Nashville" is responsible, state law puts that responsibility squarely in the judicial commissioners' hands. *See* Tenn. Code Ann. § 40-11-150(a), (b) (requiring commissioners to review facts to determine whether criminal defendant is a threat and then requiring

commissioners to choose between enhanced bail options). Similarly, if judicial commissioners are not identifying exclusion zones, Metro Nashville cannot be responsible because state law also empowers commissioners to make that determination. *Id.* § 40-11-150(b)(3). And Plaintiff has not pled or attempted to explain how Metro Nashville did, or even could, influence these decisions. Because Plaintiff has failed to identify any policy connected to Metro Nashville, his municipal liability claim fails.

The other actions identified by Plaintiff do not change the outcome because they did not actually cause the constitutional violation. *Overstreet v. Ontonagon Cnty.*, 175 F.4th 680, 691 (6th Cir. 2026) (explaining that the custom or policy must actually cause the complained of harm). There must be a direct causal link between the challenged municipal action and the constitutional violation to show that the municipality's deliberate conduct is the moving force of the violation. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009).

Here, there is no link between: 1) being required to enroll with a private vendor, 2) being forced to sign a GPS agreement, and 3) Metro Nashville not having a written contract with Tracking Solutions, and a violation of Plaintiff's Fourth, Sixth, or Fourteenth Amendment rights. The requirement that Plaintiff enroll with a private vendor and being forced to sign the GPS agreement happened *after* the GPS monitoring was ordered and he was denied counsel.[1] Thus, neither act could be the moving force of Plaintiff's claimed constitutional violations. And whether Metro Nashville had a written contract with Tracking Solutions has no bearing on a judicial commissioner's decision to select GPS monitoring from the options that state law provides. Thus, Plaintiff has failed to establish a

---

[1] Tenn. Code Ann. § 40-11-150(e) authorizes a commissioner to make these determinations without a hearing and, by extension, without counsel present. It then authorizes the criminal defendant to request a hearing to review the charges. *Id.* This further illustrates that Plaintiff's claimed injuries result from the commissioner's applying state law, and not any policy of Metro Nashville.

direct causal link between any action of Metro Nashville and his alleged constitutional violations. So his claims fail and must be dismissed.

## II. Plaintiff's claims rest on a commissioner's decision, not a Metro Nashville policy.

Plaintiff also concedes that *Johnson v. Turner*, 125 F.3d 324 (6th Cir. 1997), bars a claim that "[t]he commissioner made a bad judicial decision, therefore Metro is liable." (Resp. at 9, Doc. No. 47.) That resolves this case. Without the judicial decision to impose GPS monitoring, there is no Fourth, Sixth, or Fourteenth Amendment claim. A point that Plaintiff's Amended Complaint confirms.

For his Fourth Amendment claim, he pleads:

> 144. This claim challenges the imposition and enforcement of continuous, 24-hour GPS monitoring as a condition of Plaintiff's pretrial release where the monitoring was imposed without individualized judicial findings, without compliance with statutory requirements governing pretrial conditions, and through a system that effectively delegated the implementation of liberty-restricting conditions to a private vendor acting jointly with Metro.

(Am. Compl. ¶ 144, Doc. No. 33.) Similar allegations support his Sixth Amendment claim:

> 176. This claim alleges that Metro deprived Plaintiff of his Sixth Amendment right to counsel at a critical stage of the criminal proceedings—his initial appearance and the imposition of pretrial GPS monitoring—when the State imposed substantial liberty restrictions and altered Plaintiff's legal relationship with the State without allowing his attorney to participate.

(*Id.* ¶ 176.) And the focus of the imposition of GPS monitoring is echoed for his Fourteenth Amendment claim:

> 200. This count challenges the deprivation of Plaintiff's Fourteenth Amendment right to procedural due process before substantial restraints were imposed on his liberty through continuous GPS monitoring. Plaintiff alleges that Metro and Tracking Solutions jointly subjected him to a system of pretrial monitoring that imposed significant liberty restrictions without meaningful procedural safeguards, without individualized findings, without disclosure of the monitoring terms governing his conduct, and without any meaningful opportunity to challenge the restrictions before they were enforced.

(*Id.* ¶ 200.)

Plaintiff's own pleadings confirm that without the commissioner's decision, then there is no Fourth, Sixth, or Fourteenth Amendment claim, since each violation flows directly from the judicial commissioner's actions. Metro Nashville had no authority to direct, review, or alter the commissioner's decision, and thus cannot be held responsible for constitutional injuries alleged to stem from that decision. *Johnson*, 125 F.3d at 335–36 (holding that county government cannot be liable under Section 1983 when it lacks the means to change how a judge carries out state law). Because the commissioner's decision is the sole source of the alleged harm, and Metro had no power over that decision, municipal liability cannot attach.

## CONCLUSION

Plaintiff's claims must be dismissed because his constitutional injuries can only be traced back to a decision of a judicial commissioner, and not Metro Nashville.

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY

WALLACE W. DIETZ (#9949)
DIRECTOR OF LAW

*/s/ Melissa S. Roberge*
Melissa S. Roberge (#26230)
  SENIOR COUNSEL
Michael R. Dohn (#37535)
  ASSISTANT METROPOLITAN ATTORNEY
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
melissa.roberge@nashville.gov
michael.dohn@nashville.gov
*Counsel for the Metropolitan Government*