# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARTIN SCOTT,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:25-cv-01393** |
| | ) | |
| **METROPOLITAN GOVERNMENT OF** | ) | **Judge Trauger** |
| **NASHVILLE AND DAVIDSON** | ) | |
| **COUNTY,** *et al.*, | ) | **JURY DEMAND** |
| | ) | |
| **Defendants.** | ) | |

## METRO DEFENDANTS' RESPONSE OPPOSING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff Martin Scott should not be permitted a third bite at the apple. Detective Tyler Lewis, Detective Brian Cavaliere, and the Metropolitan Government of Nashville and Davidson County ("Metro Nashville") (together, the "Metro Defendants") oppose Plaintiff's request for leave to amend his complaint yet again. His proposed amendment fails to cure the deficiencies of his first amended complaint and still cannot withstand the Metro Defendants' motions to dismiss. And none of the allegations concerning the proposed new defendant, Detective Eric Cunningham, would survive a Rule 12 motion. Accordingly, Plaintiff's proposed amendment is futile, and because the detectives' motion to dismiss (Doc. No. 34) and Metro Nashville's motion to dismiss (Doc. No. 39) are fully briefed and ripe for review, Plaintiff's motion for leave to amend his claims against the Metro Defendants and to add Det. Cunningham as a defendant should be denied.[1]

---

[1] This Court previously denied leave to amend for certain claims and/or defendants while also granting such a motion as it relates to other claims and/or defendants. *See, e.g.*, *Clayton v. Hogan*, No. 3:22-CV-00936, 2023 WL 7930052, at \*32 (M.D. Tenn. Nov. 16, 2023) (Trauger, J.) (granting plaintiff's motion for leave to amend existing claims against some defendants, and denying the motion as to other defendants). Here, the Metro Defendants make no assertions as to the propriety of Plaintiff's proposed amendment as it pertains to other defendants and only respond in opposition to Plaintiff's motion for leave to amend his claims against the Metro Defendants and Det. Cunningham.

On December 2, 2025, Plaintiff filed a 65-page, 219-paragraph complaint, naming as defendants the Metro Defendants, Mallory Withers, and Tracking Solutions, Inc., lodging a variety of claims stemming from his arrests for harassment and stalking of Ms. Withers. (Doc. No. 1.) Tracking Solutions and Metro Nashville moved to dismiss the complaint, (Doc. Nos. 10, 20), and Ms. Withers filed an answer, (Doc. No. 22). Plaintiff filed responses to both motions, (Doc. Nos. 14, 27), and then moved for leave to amend his complaint, (Doc. No. 30). His First Amended Complaint was docketed on April 6, 2026. (Doc. No. 33.)

Dets. Lewis and Cavaliere, Metro Nashville, and Tracking Solutions all moved to dismiss the amended complaint, (Doc. Nos. 34, 39, 40), and Ms. Withers filed an answer, (Doc. No. 37). Plaintiff responded to the motions. (Doc. Nos. 38, 47, 48.) In his response to the detectives' motion, Plaintiff requested that he "be permitted to seek leave to file a targeted Second Amended Complaint" to add "any additional public-record facts the Court deems necessary." (Doc. No. 38 at 19, 22.) The next day, the Court requested that Plaintiff file a motion to amend with a proposed second amended complaint attached. (Doc. No. 42.) Plaintiff waited over three weeks to do so, (Doc. No. 50), and only after Dets. Lewis and Cavaliere filed their reply, (Doc. No. 46).

## LEGAL STANDARD

Rule 15 of the Federal Rules of Civil Procedure permits a district court to grant a Plaintiff leave to amend her complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). That said, the Rule "is not a *carte blanche*, allowing parties to amend their pleadings at any time." *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 874 (6th Cir. 1973). In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of

---

[2] The factual allegations are detailed in the Metro Defendants' motions to dismiss. (Doc. Nos. 34, 39.)

Case 3:25-cv-01393    Document 53    Filed 06/10/26    Page 2 of 13 PageID #: 995

notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Brumbalough v. Camelot Care Centers, Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005). Because a proposed amendment is futile if it could not withstand a motion to dismiss, a motion to amend will not be granted if the opposing party demonstrates futility. *Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993).

## I. Plaintiff's Proposed Amendments Would Not Withstand a Motion to Dismiss by the Metro Defendants

The motion for leave should be denied because Plaintiff's proposed amended complaint still fails to state a claim. Accordingly, his proposed amendments are futile, and his motion for leave should be denied.

### A. Plaintiff's Allegations Concerning Detectives Lewis and Cavaliere Do Not Save His Claims

Most of the allegations in the proposed complaint concerning Dets. Lewis and Cavaliere simply rephrase and restate allegations found in Plaintiff's prior complaints. And none of the new allegations save his claims.

#### 1. Detective Lewis

The only additional allegation concerning Det. Lewis is that he provided testimony to the grand jury. (Proposed Second Am. Compl. ¶ 84, Doc. No. 50-1.) That cannot be the basis for a new theory of liability because Det. Lewis is immune from a § 1983 claim based on his grand jury testimony. *Rehberg v. Paulk*, 566 U.S. 356, 360 (2012).

Nor can his grand jury testimony support the claims already asserted against him. As outlined extensively in their motion to dismiss and reply, the detectives did not knowingly or recklessly omit facts negating probable cause from their warrant affidavits. (*See* Dets.' Mot. Dismiss, Doc. No. 34; Dets.' Reply, Doc. No. 46.) Both detectives' affidavits

stated that Plaintiff and Ms. Withers had been in a dating relationship; that she had previously obtained multiple warrants against him for harassing and stalking her; that he had been arrested on those warrants; that his bond conditions prohibit him from communicating with or harassing her, either "directly or indirectly"; and that Plaintiff's repeated communications with Ms. Withers caused her significant emotional distress. (Ex. N – Criminal Warrants at 5–6, Doc. No. 30-14.) And from the additional information provided by Ms. Withers, it was reasonable for them to conclude there was probable cause that Plaintiff violated the law. Plaintiff's proposed amended complaint fails to rebut those arguments. That Det. Lewis testified at the grand jury is evidence of nothing. And despite Plaintiff's allegation that his provision of purportedly exculpatory information to Det. Cavaliere "placed MNPD on notice that the 1099 narrative was materially incomplete," (Proposed Second Am. Compl. ¶ 101), "once [Det. Lewis] established probable cause, . . . [he was] under no duty to continue [his] investigation," *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). As a result, the proposed amendments are futile as to Det. Lewis.

### 2. Detective Cavaliere

The additional allegations concerning Det. Cavaliere (1) describe the information Plaintiff presented to the detective in April 2025 concerning his attempt to obtain warrants against Ms. Withers, (Proposed Second Am. Compl. ¶¶ 62–63), and (2) state that the detective generated an incident report that same month for Plaintiff's complaint alleging Ms. Withers filed false reports, (*id.* ¶¶ 64–65). But neither of these allegations relates to Plaintiff's claims against Det. Cavaliere.

First, the events described in those allegations occurred *after* Det. Cavaliere swore out the January 20, 2025, affidavit. (*See id.* ¶¶ 46, 49.) So they could not be the basis for Plaintiff's claim that the detective swore out the affidavit without probable cause, in

support of his malicious prosecution claim, (*id.* ¶ 100), or that he manufactured probable cause, in support of his fabrication-of-evidence claim, (*id.* ¶ 113).

Second, the information Plaintiff presented to Det. Cavaliere largely concerned the 1099 forms Plaintiff sent to Ms. Withers. (*Id.* ¶ 63.) Yet neither of the detectives' affidavits relied solely on Ms. Withers's receipt of the 1099 forms to establish probable cause. (Dets.' Reply at 2–3, Doc. No. 46.) Moreover, as Plaintiff admits, Det. Cavaliere submitted all those materials to the District Attorney's Office, (Proposed Second Am. Compl. ¶ 84), who declined to pursue charges against Ms. Withers at that time, (*id.* ¶ 64; *see also* Ex. X – Snelling & Cavaliere Emails at 2 (Det. Cavaliere: "Is this something you wanted to prosecute?" ADA Snelling: "No this is not something I am interested in prosecuting."), Doc No. 30-24). Thus, Plaintiff's assertion that those materials "placed MNPD on notice that the 1099 narrative was materially incomplete before the grand-jury presentation," (Proposed Second Am. Compl. ¶ 101), is irrelevant.

Third, that Det. Cavaliere generated an incident report for Plaintiff's complaint against Ms. Withers does not negate the detective's finding of probable cause or somehow mean he manufactured probable cause. As Det. Cavaliere informed Plaintiff, the District Attorney's Office declined to prosecute Ms. Withers at that time due to Plaintiff's pending criminal charges, but that Plaintiff could "revisit the situation with the District Attorney once [his] case gets dismissed or heard." (Ex. W – Cavaliere Emails at 2, Doc. No. 30-23.) Accordingly, the purpose of the incident report generated by Det. Cavaliere was to preserve Plaintiff's complaint for a potential later prosecution.

In sum, the majority of the allegations in Plaintiff's proposed amended complaint simply reframe the allegations in his prior complaints. And the few additional allegations concerning Dets. Lewis and Cavaliere do not save his claims from a Rule 12 motion. His motion for leave should be denied.

### B. Plaintiff's Allegations Concerning Metro Nashville Do Not Save His Claims

Like the allegations against the detectives, the proposed amendments do not save Plaintiff's claim against Metro Nashville. Since Plaintiff's original complaint, he has focused on the decision of a judicial commissioner to order him to wear a GPS monitor as a condition of bail. (Compl. ¶ 26, Doc. No. 1; Am. Compl. ¶ 35, Doc. No. 33; Proposed Second Am. Compl. ¶ 50, Doc. No. 50-1.) Based on that act, he extrapolated Fourth, Sixth, and Fourteenth Amendment violations. He then claimed that judicial commissioners in the 20th Judicial District (Metro Nashville's district) routinely made the same failures that the commissioner made in his case. Like using a State-created checklist form and, in his view, failing to make individualized findings that support imposing GPS monitoring.

But judicial commissioners act as agents of the State, not Metro Nashville, when they set bail and impose conditions of release, like GPS monitoring. As explained in Metro Nashville's motion to dismiss, Tennessee statutes govern imposing GPS monitoring for violating an order of protection. (Metro's Mot. Dismiss at 2–3, Doc. No. 39.) And judicial commissioners exercise power given to them by state law when they impose GPS requirements. (*Id.* at 3–5.)

Plaintiff's claims continue to collapse at the pleading stage because the decisions he challenges were made by judicial commissioners acting under state law, and no allegation—old or new—ties his alleged injuries to any Metro Nashville policy or custom. A practice falls outside municipal liability when the actor was acting under state authority rather than municipal authority. *Johnson v. Turner*, 125 F.3d 324, 335–36 (6th Cir. 1997); *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) ("Because he was acting as an agent of the state when prosecuting D'Ambrosio, Marino's conduct cannot have established a county policy, unconstitutional or otherwise."); *see also Burley v. Gagacki*, 729 F.3d 610,

619 (6th Cir. 2013) (federal government's policies were at issue, not county's, when county employ was deputized as a federal agent).

Plaintiff previously conceded that *Johnson*, 125 F.3d at 335–36, bars a claim that "[t]he commissioner made a bad judicial decision, therefore Metro is liable." (Resp. at 9, Doc. No. 47.) That resolves this case and confirms that Plaintiff's proposed amendment is futile. Without the judicial decision to impose GPS monitoring, there is no Fourth, Sixth, or Fourteenth Amendment claim.[3] And Plaintiff's proposed amended complaint does not alter that conclusion. Because the proposed amendment is futile as to Metro Nashville, it should be denied.

## II. Plaintiff's Allegations Concerning Detective Cunningham Fail to State a Claim

Plaintiff seeks to add as a defendant MNPD Detective Eric Cunningham. (Proposed Second Am. Compl. ¶ 10.) He alleges that Det. Cunningham was "the detective with whom Withers had coordinated during the December 3[, 2024,] warrant process." (*Id.* ¶ 28.) The following week, after Ms. Withers reported to MNPD officers that she received the first 1099 form, she and Det. Cunningham exchanged emails discussing whether it violated the order of protection against Plaintiff. (*Id.* ¶¶ 29–31.) They exchanged emails again on December 26 and 27, discussing Ms. Withers's receipt of the second 1099 form, and Det. Cunningham advised that because a no-contact bond order was in place, her receipt of the

---

[3] The other actions identified by Plaintiff do not change the outcome because they did not actually cause the constitutional violation. *Overstreet v. Ontonagon Cnty.*, 175 F.4th 680, 691 (6th Cir. 2026) (explaining that the custom or policy must actually cause the complained of harm). Here, there is no link between: 1) being required to enroll with a private vendor, 2) being forced to sign a GPS agreement, and 3) Metro Nashville not having a written contract with Tracking Solutions, and a violation of Plaintiff's Fourth, Sixth, or Fourteenth Amendment rights. There must be a direct causal link between the challenged municipal action and the constitutional violation to show that the municipality's deliberate conduct is the moving force of the violation. *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009).

second form could be the basis for another warrant. (*Id.* ¶¶ 38–39.). In another email exchange on January 16, 2025, Ms. Withers told Det. Cunningham she wished to pursue a warrant against Plaintiff regarding the second 1099 form. (*Id.* ¶ 40.) Det. Cunningham responded that he would "give the assisting detective a 'heads up,'" which Plaintiff interprets to mean he "informed Lewis before Withers met with Lewis on January 17, 2025 that Withers was seeking warrant assistance based on receipt of another 1099 while Plaintiff's charges and bond conditions were pending." (*Id.* ¶ 41.)

Plaintiff asserts (1) a malicious prosecution claim stemming from Det. Cunningham's interaction with Ms. Withers regarding her December 3, 2024, warrants, (*id.* at Count I), and (2) a fabrication-of-evidence claim based on his communication with Det. Lewis before the January 17, 2025, warrant, (*id.* at Count II). But much like his claims against the other detectives, his allegations concerning Det. Cunningham fail to state a claim.

### A.      *Malicious Prosecution*

Plaintiff alleges that Det. Cunningham is liable for malicious prosecution because he "participat[ed] in the December 3 warrant process with Withers, communicat[ed] with Withers about whether the Forms 1099 could be treated as violations, advis[ed] that Plaintiff would 'at minimum' be in violation for sending the second Form 1099, and communicat[ed] with Lewis before Lewis swore the January 17, 2025[,] bond-violation affidavit." (*Id.* ¶ 91.) None of these allegations plausibly state a claim.

First, Ms. Withers—not Det. Cunningham—swore out the December 3 warrants. (*Id.* ¶ 27; *see also* Ex. N – Criminal Warrants at 1–2 (listing "Mallory Withers" as "Prosecutor"), Doc. No. 30-14.) And Plaintiff does not allege that Det. Cunningham knowingly or recklessly included any falsehoods in, or omitted exculpatory information from, Ms. Withers's affidavits. Rather, Det. Cunningham's role as Ms. Withers's scribe was passive

and neutral. Accordingly, Plaintiff's allegation that Ms. Withers "coordinated with Cunningham during the December 3 warrant process," (Proposed Second Am. Compl. ¶ 93), fails to sufficiently allege that the detective participated in the decision to prosecute him, *Sykes v. Anderson*, 625 F.3d 294, 308 n.5 (6th Cir. 2010) ("To be liable for 'participating' in the decision to prosecute, the officer must participate in a way that aids in the decision, as opposed to passively or neutrally participating."); *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015) (to sustain a malicious prosecution claim, "there must be some element of blameworthiness or culpability in the participation").

Second, the remaining allegations all occurred *after* Ms. Withers obtained those warrants. (Proposed Second Am. Compl. ¶¶ 30, 39, 41.) Plaintiff does not allege that Det. Cunningham met with Ms. Withers after December 3 or drafted additional warrants for her. He admits that "Cunningham did not swear the January 17 affidavit," (*id.* ¶ 108), and his communication with Det. Lewis to give him a "heads up" that Ms. Withers was seeking warrant assistance, (*id.* ¶ 41), was again passive and neutral, far short of the "blameworthiness or culpability" required for a malicious prosecution claim. *Moseley*, 790 F.3d at 655.

Plaintiff asserts that "[a] defendant need not personally swear the final affidavit if he sets the prosecution in motion through materially misleading investigative materials or communications that are later used to secure legal process." (*Id.* ¶ 107 (citing *King v. Harwood*, 852 F.3d 568, 587–89 (6th Cir. 2017)).) But he does not allege that Det. Cunningham did any of those things. He only alleges that Det. Cunningham informed Det. Lewis, before his meeting with Ms. Withers, that she "was seeking warrant assistance based on receipt of another 1099 while Plaintiff's charges and bond conditions were pending." (*Id.* ¶ 41.) This is not a situation where Ms. Withers provided information only to

Det. Cunningham, who then passed the information to Det. Lewis. Rather, Ms. Withers personally met with Det. Lewis, who assisted her with the January 17 warrant. (*Id.* ¶¶ 40–41.) Plaintiff does not identify any allegedly "misleading investigative materials or communications" attributable to Det. Cunningham that Ms. Withers did not herself provide directly to Det. Lewis. And Plaintiff does not allege that Det. Lewis relied on Det. Cunningham's communications with him.

Because Plaintiff's proposed amended complaint fails to state a malicious prosecution claim against Det. Cunningham, his motion for leave to add this claim should be denied as futile.

### B.  *Fabrication of Evidence*

Plaintiff's fabrication-of-evidence claim against Det. Cunningham is even more tenuous. (*Id.* at Count II.) "This count challenges the manufacture and use of materially misleading probable-cause narratives that resulted in Plaintiff's January 29, 2025[,] arrest, continued prosecution, GPS monitoring, and related liberty restraints." (*Id.* ¶ 106.) Det. Cunningham's role, according to Plaintiff, is that he "participated in the manufacture of probable cause for the January 17 bond-violation warrant" by "rout[ing] the matter to Lewis without verifying the mailing date, vendor source, or existence of any post-bond act by Plaintiff." (*Id.* ¶ 110.) But, again, "Cunningham did not swear the January 17 affidavit." (*Id.* ¶ 108.) And, as noted above, giving Det. Lewis a "heads up" that Ms. Withers was seeking warrant assistance is insufficient to state a claim. Accordingly, Plaintiff's proposed amended complaint fails to state a fabrication-of-evidence claim against Det. Cunningham, and his motion for leave to add this claim should be denied as futile.

### III. Permitting Plaintiff to Amend Would Unfairly Prejudice the Metro Defendants

Not only is Plaintiff's proposed amendment futile, but permitting him to amend his complaint again would unfairly prejudice the Metro Defendants. Both times Plaintiff has sought to amend his complaint, he was facing multiple motions to dismiss. Most recently, in responding to the detectives' motion, he stated that "if the Court concludes that additional specificity is required," he should be permitted leave "to file a targeted Second Amended Complaint" with "any additional public-record facts the Court deems necessary." (Pl.'s Resp. at 19, 22, Doc. No. 38.) The next day, on May 4, 2026, after Metro Nashville and Tracking Solutions filed motions to dismiss, (Doc. Nos. 39, 40), the Court requested that Plaintiff file a motion to amend and a proposed amended complaint, (Order, Doc. No. 42). Plaintiff waited 23 days to seek leave, (Mot. for Leave, Doc. No. 50), which was 9 days after the detectives' motion was fully briefed, (*See* Dets.' Reply, Doc. No. 46).

"[I]n considering the issue of prejudice, the Court must ask whether allowing a party to amend the pleadings would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or cause considerable delay in resolving the dispute." *Continential Bldg. Sys., LLC v. 31-W Insulation Co.*, No. 2:16-CV-811, 2017 WL 3575622, at *1 (S.D. Ohio Jan. 10, 2017) (quoting *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)). Here, Plaintiff's strategy of waiting until dispositive briefing is complete before seeking leave does prejudice the Metro Defendants. Under the Rules of Civil Procedure, Plaintiff must plead enough facts to show that he is entitled to relief. Fed. R. Civ. P. 8(a)(2). But Plaintiff has chosen a different path where he submits a complaint, waits for dispositive briefing, doles out a few more facts, waits for dispositive briefing, and then adds more facts. That is a waste of the Court's and the defendants' resources and is prejudicial to the Metro Defendants. As outlined above, Plaintiff's proposed amendments

are futile, and permitting him to amend his complaint again would only delay the inevitable dismissal. Accordingly, the Metro Defendants should not be unfairly prejudiced by having to respond to yet another amended complaint. Plaintiff's motion should be denied. *See, e.g.*, *Oakstone Cmty. Sch. v. Williams*, No. 2:11-CV-01109, 2012 WL 12896167, at *2 (S.D. Ohio June 8, 2012) (denying plaintiff's motion for leave to amend because plaintiff's failure to promptly amend its pleading "would force defendants to re-brief and re-file their motion to dismiss" and "would unfairly prejudice defendants").

## CONCLUSION

Plaintiff's motion for leave should be denied. It neither cures the deficiencies of his first amended complaint nor adds new information sufficient to withstand the Metro Defendants' pending motions to dismiss. And none of the allegations concerning Det. Cunningham would survive a Rule 12 motion. Accordingly, his proposed amendment as to the Metro Defendants and Det. Cunningham is futile, and Plaintiff should not be permitted to amend his complaint yet again. Plaintiff's motion for leave to amend his claims against the Metro Defendants and to add Det. Cunningham as a defendant should be denied.

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY

WALLACE W. DIETZ (#9949)
DIRECTOR OF LAW

*/s/ Michael R. Dohn*
Melissa S. Roberge (#26230)
  SENIOR COUNSEL
Michael R. Dohn (#37535)
  ASSISTANT METROPOLITAN ATTORNEY
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
melissa.roberge@nashville.gov
michael.dohn@nashville.gov
*Counsel for Tyler Lewis, Brian Cavaliere, and the
Metropolitan Government of Nashville and
Davidson County*

{N0770672.5}

13