# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARTIN SCOTT,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:25-cv-01393 |
| | ) | Judge Trauger |
| **METRO. GOV'T. OF NASHVILLE** | ) | **JURY DEMAND** |
| **AND DAVIDSON COUNTY, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

---

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

---

Plaintiff respectfully submits this reply in support of his Motion for Leave to File Second Amended Complaint. Metro Defendants' opposition largely reargues their pending Rule 12 motions by recasting Plaintiff's claims as theories he does not plead—liability for Lewis's grand-jury testimony, municipal liability for an isolated judicial bail decision, and liability against Cunningham for a neutral "heads up." The Proposed Second Amended Complaint ("PSAC") alleges materially different theories supported by additional facts as detailed below. Therefore, Rule 15 favors amendment, and Metro has not carried its burden to show futility or unfair prejudice. The motion should be granted.

### I. The claims against Lewis are not based on grand-jury testimony.

Metro first argues that "[t]he only additional allegation concerning Det. Lewis is that he provided testimony to the grand jury," and then invokes *Rehberg v. Paulk*, 566 U.S. 356 (2012). That characterization materially misstates the PSAC. Plaintiff's allegations concerning Lewis are

not limited to grand-jury testimony. The PSAC alleges, among other things, that Cunningham briefed or routed the 1099 issue to Lewis before Lewis swore the January 17 affidavit, despite Cunningham's prior knowledge of the timing problems, source problems, and uncertainty concerning whether receipt of the Form 1099 could lawfully be treated as prohibited contact.[1] Plaintiff further alleges that Lewis then proceeded with a materially incomplete affidavit based on that same 1099 narrative. Those are pre-grand-jury allegations concerning the warrant-affidavit process, not claims based on grand-jury testimony.[2]

Count II expressly states that Plaintiff "does not base this claim on grand-jury testimony" and instead bases the claim on "pre-grand-jury conduct," including warrant-related communications, investigative materials, and sworn affidavits.[3] The actionable conduct is Lewis's January 17, 2025 affidavit and the materially incomplete 1099 narrative used to obtain legal process. The PSAC alleges that Lewis swore the January 17 affidavit based on Withers's receipt of the second Form 1099 while omitting that the form was vendor-generated and mailed before any no-contact bond condition existed, contained no threat, demand, message, or direct communication, and was unsupported by any verified fact showing Plaintiff knowingly initiated post-bond contact.[4] *Rehberg* does not bar such a claim. *King v. Harwood*, 852 F.3d 568, 587–89 (6th Cir. 2017), recognizes that a malicious-prosecution claim may proceed where it rests on false or misleading warrant materials and investigative conduct independent of grand-jury testimony.

Metro's reliance on *Ahlers* is likewise misplaced because *Ahlers* presupposes that probable cause existed. Plaintiff alleges the opposite: once corrected for omitted facts, Lewis's

---

[1] PSAC ¶¶ 38–41, 89, 92, 106, 108.
[2] PSAC ¶¶ 42–45, 89, 96–97, 107–10.
[3] PSAC ¶ 104.
[4] PSAC ¶¶ 42–45, 96–97, 107–10.

affidavit did not establish probable cause. An officer may not create probable cause through material omissions and then invoke the "no duty to investigate further" rule as a shield. The corrected affidavit would show only that Withers received an already-mailed, vendor-generated tax form after bond conditions attached, with no threat, message, demand, or verified post-bond act by Plaintiff. That is sufficient at the pleading stage.

## II. The allegations against Cunningham plausibly allege more than passive assistance.

Metro next characterizes Cunningham as a passive scribe and reduces his later involvement to a neutral "heads up." That characterization ignores the alleged sequence. The PSAC alleges that Withers described Cunningham as the detective with whom she was "with" when "we created the warrants" on December 3.[5] It further alleges that Cunningham later discussed the 1099 issue with Withers, knew Withers was uncertain whether the tax paperwork had been mailed before Plaintiff was served, knew responding officers had questioned whether the first 1099 mailing would "hold up in court," asked whether the letter was dated, and stated he was "not really sure" police could do anything about it.[6] Despite those known defects, Cunningham later told Withers that Plaintiff would "at minimum" be in violation for the second Form 1099, said he would give the assisting detective a "heads up," identified Lewis as the detective who would help her, and communicated with Lewis before Lewis swore the January 17 affidavit.[7]

That is not passive clerical conduct. It is knowing participation in routing and escalating a materially incomplete 1099 theory into the warrant process. Nor is it dispositive that Cunningham did not personally swear the January 17 affidavit. He influenced the prosecution by

---

[5] PSAC ¶ 28.
[6] PSAC ¶¶ 30–31, 38–39.
[7] PSAC ¶¶ 39–41, 89, 92, 106, 108.

3

supplying, transmitting, or routing materially misleading information later used to secure legal process.[8]

### III.    The *Monell* claims challenge Metro's own system, not an isolated judicial decision.

Metro mischaracterizes Plaintiff's Monell claims as an attempt to hold Metro liable merely because a judicial commissioner made a bad bail decision. Plaintiff does not pursue that theory. The PSAC instead alleges direct municipal liability based on Metro's own initial-appearance, pretrial-supervision, and GPS-monitoring system. Specifically, Plaintiff alleges that Metro uses standardized checkbox procedures that do not require or document individualized findings, less restrictive alternatives, ability to pay, victim consultation, defined exclusion zones, or minimum distances; that public records show approximately 1,300 GPS-monitoring orders between July 2024 and September 2025, only approximately 35 of which identified exclusion zones; that Metro's procedures do not provide adequate counsel participation; that Metro permits private vendors such as Tracking Solutions to maintain and enforce undefined zones; and that Tracking Solutions administered court-connected GPS monitoring without a written governmental agreement.[9] Those allegations do not seek respondeat-superior liability for a commissioner's judicial act. They allege that Metro's own policies, customs, training failures, and vendor-delegation practices caused the challenged constitutional deprivations.[10] *Johnson v. Turner* therefore does not bar the claims.

### IV.    Metro identifies no undue prejudice.

Metro's prejudice argument also fails. Metro emphasizes that Plaintiff filed the motion for leave 23 days after the Court requested a proposed amended complaint. That period was not tactical delay. Around that time, Metro released additional body-worn-camera footage

---

[8] See *King*, 852 F.3d at 587–89; *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).
[9] PSAC ¶¶ 50–57, 68–80, 132, 135–38, 145–48, 152–56.
[10] PSAC ¶¶ 135–38, 148, 156.

concerning Withers's complaints, and Plaintiff reviewed that footage before finalizing the PSAC. That review was appropriate and necessary to ensure the pleading was accurate, targeted, and grounded in the public-record evidence.

Nor has Metro shown prejudice of the kind required to deny leave under Rule 15. There is no trial date, no completed discovery period that must be reopened, and no showing that amendment would require Metro to redo substantial discovery. Metro has already responded to the proposed amendment on futility grounds. The fact that a defendant must respond to an amended pleading is not undue prejudice, particularly where the Court requested a motion with a proposed amended complaint after Plaintiff sought leave to add targeted public-record facts. The PSAC does not sandbag Metro with unrelated new claims. Rule 15 favors resolving claims on their merits, and Metro has not shown futility, bad faith, undue delay, or unfair prejudice.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court grant his Motion for Leave to File Second Amended Complaint.

Respectfully submitted,

s/Cody Johnson/
Cody Johnson, Esq., No. 037568
Turklay Law, PLLC
Attorney for Plaintiff
102 E Main Street Suite A
Lebanon, TN 37087
P: (629) 200-7774
Cody@TurklayLaw.com