RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0184p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

    *v.*

AUSTIN EUGENE LINEBACK,

       *Defendant-Appellant.*

No. 25-5687

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:24-cr-20043-1—Jon Phipps McCalla, District Judge.

Decided and Filed:  June 26, 2026

Before:  SUTTON, Chief Judge; McKEAGUE; and BUSH, Circuit Judges.

─────────────────

**COUNSEL**

─────────────────

**ON BRIEF:**  Ruchee J. Patel, DONATI LAW, PLLC, Memphis, Tennessee, for Appellant. Lauren Delery, Lynn Crum, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

─────────────────

**OPINION**

─────────────────

JOHN K. BUSH, Circuit Judge.  A jury convicted Austin Lineback of a single count of knowingly possessing child pornography.  He now brings two challenges to his conviction: (1) the evidence against him should have been excluded because the warrant to search his home was not supported by probable cause, and (2) the government did not present sufficient evidence to convict.  We disagree on both fronts and **AFFIRM**.

# I.

A 17-year-old male was working a shift at a grocery store in Tipton County, Tennessee. He was approached by Lineback, a regular customer who would sometimes do magic tricks while in the store. Lineback suggested they exchange phone numbers so Lineback could send the boy photos of deer. Lineback also took a photo of the minor while they were in the store, and, at the time, the young worker thought nothing of it. Not long after this encounter, Lineback texted the juvenile three edited photos, but not of deer. The first two depicted the boy's face, with lipstick added, superimposed on top of photos of women wearing dresses and pantyhose. The third depicted the seventeen-year-old at work with his work pants traded for pantyhose. Along with the photos, Lineback sent texts. Those communications requested a selfie from the boy, told him how cute he looked, and told him that he ought not show the photos around.

Concerned by these messages, the victim and his mother arranged a meeting with Detective Tonia Bruno of the Tipton County Sheriff's Office. Detective Bruno took this information and sought a warrant to search Lineback's home for evidence that Lineback solicited or sexually exploited a minor, both crimes under state law. The warrant application recounted the detective's meeting with the complainants and what happened at the grocery store, including the pictures and texts the young male received from Lineback. Detective Bruno noted the details of only the text telling the victim how cute he looked but added that Lineback had used the boy's image in two TikTok videos and a YouTube video. She also explained that Lineback had invited the victim to come to his house to "be his partner, assist with his work, and continue his work if he dies." R. 27-1, Warrant Aff., PageID 54. As a final detail, Detective Bruno included that Lineback is registered as a violent sex offender for convictions of statutory rape and especially aggravated sexual exploitation of a minor.

A Tennessee circuit court judge issued the warrant, and Detective Bruno and other officers executed it the next day. Lineback lived in a single-wide trailer in a rural part of Tipton County. When officers arrived, Lineback was home and told them that he lived alone at the residence. The subsequent search found the home littered with purported religious writings of Lineback's own creation. We will get into the specifics later. For now, we will just note that all

these writings had a distinct theme: Lineback made statements indicating he could impart "power" to children aged twelve to seventeen by having sexual contact with them.

Along with these writings, Lineback kept other items around the house demonstrating his desire for sex with minors. In one box in his room, he had a photo album full of pictures of suspected minors wearing pantyhose and posing in provocative positions. Also, throughout the residence, he kept other photos of what appeared to be underage persons—including a digitally altered photo of the juvenile from the grocery store grasping an erect penis. In another box, Lineback kept a dildo, an anatomic voodoo doll with a string tied around its part that depicted a penis, a scroll, and some oils. Not far from these in the bedroom was a "My First Explorer" anal experience kit and an "age of consent" form that Lineback created to establish a minor's "consent" to have sex with him. The bottom of the form showed pictures of suspected minors engaged in sex acts. When Detective Bruno interviewed Lineback and asked him about this form, Lineback explained that if the opportunity arose, he would want to have sex with a minor to impart his "power" to them.

During the search, Detective Bruno and her team also seized several electronic devices capable of storing images. She sought a second warrant to search the contents of these electronic devices, and a state court judge issued it. Detective Bruno turned the devices over to the Federal Bureau of Investigation to execute the search. On an external hard drive that Lineback owned, the FBI uncovered hundreds of photos of children, sixty of which Special Agent Keyotta Sanford believed to be child sexual abuse material (CSAM). These sixty photos were sent to the National Center for Missing and Exploited Children (NCMEC) to verify that the photos were child pornography of known victims. Two images came back with a match. The two images came from a folder on the hard drive titled "Nude Boys," and were labeled there as "Gay Boy Selfie 36" and "Gay Boy Selfie 36B." Although neither the FBI nor NCMEC could verify with certainty that any of the other photos in Lineback's possession were child pornography, Detective Bruno testified that based on her law enforcement experience working in this area, she believed that many of the other photos were CSAM.

Based on the two photographs found in the "Nude Boys" folder, the government charged Lineback with knowingly possessing and knowingly attempting to possess child pornography.

Lineback moved to suppress the images claiming that (1) the warrant to search his home was not based on probable cause and (2) the evidence found from the search of his electronics was fruit of the poisonous tree. The district court found probable cause and denied the motion. The case proceeded to a jury trial. After the close of the government's case, Lineback moved for a judgment of acquittal based on the sufficiency of the evidence. The district court denied the motion. Lineback elected not to present any evidence. The jury returned a guilty verdict on the sole count.

Lineback now appeals the denial of his motion to suppress and the denial of his motion for a judgment of acquittal.

## II.

We review a district court's denial of a motion to suppress de novo and the underlying factual findings for clear error, taking "the evidence in the light most favorable to the government when reviewing a denial of a motion to suppress." *United States v. Wagers*, 452 F.3d 534, 537–38 (6th Cir. 2006) (cleaned up).

Lineback first argues that the evidence against him should have been suppressed because the warrants obtained by Detective Bruno were not supported by probable cause. "Probable cause is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (cleaned up). It "exists where there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Wagers*, 452 F.3d at 538 (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). "A police officer has probable cause to conduct a search when the facts available to [the officer] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (cleaned up). An officer seeking a warrant can rely on all known facts taken together to support probable cause, including noncriminal acts that raise suspicion of criminal activity. *United States v. Tagg*, 886 F.3d 579, 585–86 (6th Cir. 2018); *see also District of Columbia v. R.W.*, 146 S. Ct. 1069, 1072–73 (2026).

We also do not look at probable cause on "a blank slate" when a warrant has issued. *Tagg*, 886 F.3d at 586. We instead pay "great deference" to the determination of the issuing

judge. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citation omitted). In doing so, we evaluate the warrant affidavit based on the "adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

We turn to what the affidavit said. Detective Bruno had an underage victim come to her and complain that he was being solicited. The male juvenile had received texts from Lineback of his face, edited to be wearing lipstick, superimposed onto female bodies wearing pantyhose. In the same series of texts, Lineback told the boy that he looked cute and invited him to come over to Lineback's house. And in the background of these overt acts are Lineback's past convictions that led to his registration as a sex offender, both of which involved sexual crimes against minors. This is enough for probable cause.

To fight this conclusion, Lineback argues that this evidence does not meet the standard because each individual act was not criminal. He notes that the photos sent were not pornographic and the invitation to come to Lineback's house was not in itself solicitous, so neither can independently support probable cause. But whether each isolated act alone supports probable cause is irrelevant: probable cause is based on the totality of the circumstances, *Wagers*, 452 F.3d at 538, and even noncriminal acts can support a probable cause finding when they raise the suspicion of criminal activity, *Tagg*, 886 F.3d at 585–86. The totality of the circumstances here showed a probability "that contraband or evidence of a crime" would be found at Lineback's home. *Id.* at 585 (citation omitted).

Lineback argues that his past convictions should not move the needle on probable cause because his conviction was almost twenty-five years old. He also argues that our past cases recognizing that sex offender status can support probable cause are distinguishable because the other facts in those cases independently supported probable cause.

Again, he makes the mistake of isolating the facts. We are not looking at his past conviction by itself; we are viewing it in light of the other evidence included in the affidavit. As much as Lineback wants to portray his conduct as innocent, when a convicted pedophile tells a juvenile he looks cute and invites that victim to his house, the totality of the circumstances

weighs differently than if he had no such conviction. Officers and neutral magistrates need not blind themselves to this reality. A past conviction should weigh into the totality-of-the-circumstances analysis in all cases. We have said as much, but we reiterate it here. *See, e.g.*, *Wagers*, 452 F.3d at 541 ("Instead, a person of reasonable caution would take into account predilections revealed by past crimes or convictions as part of the inquiry into probable cause." (cleaned up)); *United States v. Sullivan*, 751 F. App'x 799, 803 (6th Cir. 2018). This proposition carries even more weight when, as here, the suspect is being investigated for crimes similar to the past conviction. When we look at the facts through the lens of Lineback's past convictions, we have no trouble concluding that Lineback's text messages and invitation were for more than just showing off his magic tricks and deer—Lineback was attempting to solicit the minor for sex. And officers could reasonably expect to find evidence of this at Lineback's residence. Thus, the warrant was properly issued based on probable cause, and the district court correctly denied Lineback's motion to suppress.

## III.

The district court also correctly denied Lineback's motion for judgment of acquittal based on the sufficiency of the evidence. We review the denial of Lineback's motion de novo, *United States v. Blanchard*, 618 F.3d 562, 574 (6th Cir. 2010), asking whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *United States v. Elliott*, 876 F.3d 855, 863 (6th Cir. 2017) (quoting *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009)). "Circumstantial evidence alone is sufficient to sustain a conviction under this deferential standard of review." *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008).

For conviction under 18 U.S.C. § 2252A(a)(5)(B), the prosecution needed to prove beyond a reasonable doubt that (1) "the defendant knowingly possessed any material that contained an image of child pornography," (2) "the defendant knew that the material was child pornography," and (3) "[t]he image of child pornography was produced using materials that had been mailed, or shipped or transported in or affecting interstate commerce by any means, including by computer." R. 77, Jury Instructions, PageID 289; *see United States v. Stout*, 509 F.3d 796, 799–800 (6th Cir. 2007). The district court instructed the jury that "[t]he term

'knowingly' means voluntarily and intentionally, and not because of a mistake or accident." *Id.* at PageID 290. Lineback argues that the government did not introduce sufficient evidence for a jury to conclude that he knew the material was child pornography.

His challenge fails because of the weight of the circumstantial evidence. Start with Lineback's writings that were found throughout his home. After entering the home, Detective Bruno found a "prayer room" with a type-written sex manifesto hanging on the wall. This manifesto said, in part, that "sex sets the devil free by me, pleasure and joy . . . . [S]ex controls me through the youth, pantyhose." R. 111, Trial Tr. Day 2, PageID 492. She also found multiple journals throughout Lineback's bedroom that detailed more of his supposed religious beliefs relating to sex. These beliefs followed a consistent theme—that sex with children ages twelve to seventeen would lead to "empowerment."

A few specific writings are worth mentioning in more detail. The first is from Lineback's "Teen Spirits and Forces" book. In it, he had a section called "Spirit Tabris," in which he wrote, "Controls free will, makes what I want or desire to happen . . . causes teens to serve and please me, to wear pantyhose and gives me control over their souls and powers . . . ." *Id.* at PageID 504.

The second is Lineback's "age of consent" form that he wrote to obtain a minor's "consent" before engaging in sex with him. It says in part, "Federal Government says the age of consent in the U.S. is 12 to 17 years of age. . . . [I]t is important for you to sign this form showing that you are taking full responsibility for your actions . . . and that you are fully aware that you're going to have sex, gay sex." *Id.* at PageID 507. The "contract" only becomes more explicit from there, and includes, under the signature line, photos of what appear to be minors engaged in sex acts. Lineback's statements to Detective Bruno further confirmed his claimed religious beliefs regarding sex with minors. When she asked him about the "age of consent" form, he explained that he would "put it out there" if the opportunity ever arose to have sex with a minor, and through sex, he would transfer "power" to the minor. *Id.* at PageID 508. As Detective Bruno put Lineback's professed belief system, "the younger the person, the more power they would receive, and it would be done through sex." *Id.* at PageID 509.

The third, and final, piece of Lineback's writing that we mention here comes from one of Lineback's internet pages. There, he describes his sex rituals as having been ordered by both God and Satan and says that "now sex is [his] weapon and your freedom and deliverance." *Id.* at PageID 522. The screenshot suggests that if a minor "consents" to sex, Lineback can "free" the victim.

Turn next to the other images Lineback possessed. In Lineback's bedroom, officers found two boxes and a photo album. Inside the larger box were other photos of what appeared to be juveniles wearing t-shirts and pantyhose. And in the smaller box, Lineback kept the dildo, the voodoo doll, the scroll, and oils already mentioned. Next, the photo album. On the front cover, Lineback had a writing explaining his asserted religious beliefs relating to sex. Inside, Lineback had a large collection of printed photographs showing what appeared to be minors dressed in pantyhose lying in provocative positions. This was in addition to the other photographs he had around his house, which included the altered photo previously noted of the victim holding an erect penis.

We now come to the most damning circumstantial evidence of Lineback's knowledge— the hard drive found in Lineback's home. From that hard drive the FBI pulled several folders. One included "morphed images" with kids' faces placed on various adult bodies. Some were nude and others were engaged in sex acts. Lineback had titled another folder "Nude Boys," and there the FBI discovered the two images of child pornography that led to Lineback's prosecution. Lineback had labeled these photos "Gay Boy Selfies 36" and "Gay Boy Selfies 36B." *Id.* at PageID 541. This is especially relevant circumstantial evidence because in at least one prior case we found sufficient evidence of knowledge based on the file names alone. *United States v. Gray*, 641 F. App'x 462, 468 (6th Cir. 2016).

To downplay the "Nude Boys" folder, Lineback suggests his label was no different from a strip club's sign saying, "Nude Girls." He argues that no one would take the sign to imply that the dancers inside are underage. Fair enough. But now imagine that the strip club's sign includes a purportedly religious manifesto expressing a desire to have sex with minors, that the strip club distributed an "age of consent" form (that falsely states that the age of consent in the United States is *twelve years old*) asking minors to sign before engaging in sex acts inside, and

that morphed images of minors engaged in sex acts are depicted around the building. In that case, "Nude Girls" takes on a completely different implication that would be readily apparent to any rational trier of fact.

Lineback makes one more attempt to diminish his culpability by pointing out that over 100,000 images were recovered from his home and the government brought charges relating to only two of them. But the government explained this at trial. Although it could not confirm that many of the other images were child sex abuse material because they could not associate the photo with a known victim, the government believed that many of the other images did depict minors engaged in sex acts. Detective Bruno also directly testified that based on her five years of law enforcement experience, she believed many of the other photographs depicted children. And the jury was entitled to make its own determinations relating to the other photographs and weigh their probative value in showing Lineback's knowledge. *See United States v. Mellies*, 329 F. App'x 592, 601, 607 (6th Cir. 2009) (affirming a conviction as supported by sufficient evidence when the jury considered photographic evidence relating to uncharged conduct).

Putting all this together, the government presented evidence that Lineback wrote supposedly religious documents expressing his desire to have sex with children aged twelve to seventeen; that he manipulated photographs of minors to show them engaging in sex acts; that he kept a photo album of what appeared to be minors dressed in pantyhose; that he had a hard drive containing a folder labeled "Nude Boys," and within the folder he had many photos of what appeared to be minors engaged in suggestive poses or sex acts; and that within the "Nude Boys" folder, he had two photos that were verified child pornography labeled as "Gay Boy Selfies 36" and "Gay Boy Selfies 36B." A rational trier of fact could conclude from this evidence that Lineback "voluntarily and intentionally" possessed the child pornography, and it was "not because of a mistake or accident."

## IV.

For the reasons outlined above, we **AFFIRM** the decision of the district court.